# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION AT JACKSON

| | |
|---|---|
| JENNIFER LOUISE JENKINS, ) <br> Administrator *ad Litem* of the ) <br> ESTATE OF STERLING L. HIGGINS, ) <br> ) <br> **Plaintiff,** ) <br> v. ) <br> ) <br> OBION COUNTY SHERIFF'S ) <br> DEPARTMENT, ) <br> OBION COUNTY, TENNESSEE, ) <br> UNION CITY POLICE DEPARTMENT, ) <br> UNION CITY, TENNESSEE, ) <br> ROBERT THOMAS OSBORNE, ) <br> Individually,  MARY BROGLIN, individually, ) <br> WAYLON SPAULDING, individually, and ) <br> BRENDON SANFORD, individually, ) <br> ) <br> **Defendants.** ) | **Jury Demand** <br><br> No. _____ |

## **COMPLAINT**

### I. **INTRODUCTION**

1. This is a civil rights action under 42 U.S.C. § 1983, the Americans with Disabilities Act, and Tennessee law resulting from events that happened during the pre-trial detention of Sterling Lapree Higgins at the Obion County Jail in Union City Tennessee. The events that give rise to this complaint occurred during the early morning hours on March 25, 2019 and culminated in the unnecessary death of Sterling Higgins following his admission to the jail. Defendants caused Mr. Higgins' death by violating his rights guaranteed under the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act, and Tennessee law

2. Defendants' unlawful actions include (a) failing to initially transport Mr. Higgins to a medical or mental health facility when they knew or should have known that he was suffering from a medical or mental health crisis, (b) excessive use of force, (c) failing to provide him adequate medical care or to summon such care, (d) failing to adequately train jail and law enforcement personnel about

the need to secure and provide proper medical care and to avoid the other actions and omissions that caused and/or contributed to his death, (e) ignoring his ongoing serious medical needs, including his obvious paranoid and/or delusional state of mind and his loss of consciousness, and (f) failing to monitor him despite his severe and life-threatening medical condition, otherwise forcing him to endure extreme and needless pain and suffering, and causing his death approximately one hour after being admitted to the jail.

## II.   JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights) since the claims arise as a result of violations of certain federal civil rights, including the right to be free from the excessive use of force and the right to adequate medical care guaranteed by the United States Constitution, and are actionable under 42 U.S.C. § 1983. This Court further has jurisdiction over the claims asserted under the ADA Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*. The Court has supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367(a).

4. This Court has personal jurisdiction over each of the named defendants because they either (1) reside in this judicial district, or (2) they have sufficient minimum contacts in the State of Tennessee and within this judicial district, and the exercise of personal jurisdiction over the named defendants would not offend traditional notions of fair play and substantial justice.

5. Venue is proper in this Court since the allegations which give rise to the cause of action occurred in Union City and Obion County, Tennessee.

## III.   PARTIES

6. Plaintiff Jennifer Louise Jenkins is the Administrator *ad Litem* and was appointed by the Gibson County Chancery Court by Order entered on February 11, 2020 to administer the Estate of Sterling Lapree Higgins, Case No. 23374P (hereinafter referred to as "Plaintiff," "Mr. Higgins" or "The Estate"). The Estate asserts all claims on its behalf, and all claims actionable by it on behalf of

2

Mr. Higgins' two minor daughters, Gabriella LouEllen Higgins and Marlee Grace Blalock.

7. Mr. Higgins was a United States citizen and a resident of Gibson County, Tennessee. Mr. Higgins was 37 years old when he died on March 25, 2019 following his detention at the Obion County Jail ("the jail") in Union City, Tennessee. Throughout the period of his confinement, Mr. Higgins was a pre-trial detainee entitled to all of the protections guaranteed to him under the Fourteenth Amendment of the United States Constitution, the ADAAA and under Tennessee law.

8. Defendant Obion County Sheriff's Department is a law enforcement agency organized under the laws of Obion County, Tennessee, and the State of Tennessee. Defendant Obion Sheriff's Department is subject to service through Sheriff Karl Jackson, Law Enforcement Complex, 1 Law Lane, Union City, Tennessee 38281.

9. The Obion County Sheriff's Department is considered a "person" for purposes of 42 U.S.C. § 1983 and is a public entity under 42 U.S.C. 12131(1). Among other things, the Sheriff's Department operates or makes regular and systematic use of the Obion County Jail—a public facility located in Obion County that confines and houses pretrial detainees and convicted inmates. The Sheriff's Department acted under color of state law in confining pre-trial detainees and was legally responsible to provide medical services to them. The Sheriff's Department was responsible for hiring, training, disciplining, and supervising correctional officers at the jail, including the individual defendants named in this action. The Sheriff's Department was also responsible for adopting, implementing, and enforcing policies and practices pertaining to the use of force, providing medical care for inmates, and ensuring that jail conditions comport with the United States Constitution and other federal and state laws.

10. Defendant Obion County, Tennessee is a governmental entity formed and existing under the laws of the State of Tennessee. Defendant Obion County can be served through the County Mayor, Benny McGuire, Chief Executive Officer for Obion County, Obion County Courthouse, 7 Bill Burnett Circle, Union City, Tennessee 38281. Together with and/or independently of the Obion County Sheriff's Department, Defendant Obion County owns and/or operates the jail where Mr. Higgins was confined as

a pre-trial detainee. Defendant Obion County is considered a "person" for purposes of 42 U.S.C. § 1983 and is a public entity under 42 U.S.C. 12131(1). Defendant Obion County acted under color of state law in confining and housing pre-trial detainees and inmates and was legally responsible to provide medical services to them. Defendant Obion County, together with and/or independently of the Obion County Sheriff's Department, was responsible for hiring, training, disciplining, and supervising correctional officers at the jail, including the individual defendants named in this action. Defendant Obion County was also responsible for adopting, implementing, and enforcing policies and practices pertaining to the use of force, providing medical care for inmates, and ensuring that jail conditions comport complies with the United States Constitution and other federal and state laws.

11.     Defendant Union City Police Department is a law enforcement agency organized and existing under the laws of the State of Tennessee and performing traditional law enforcement functions and activities in and around Union City, Tennessee. Defendant Union City Police Department can be served through the Police Chief Perry Barfield, 221 Harrison Street, Union City, Tennessee 38281. Defendant Union City Police Department is considered a "person" for purposes of 42 U.S.C. § 1983 and is a public entity under 42 U.S.C. 12131(1)

12.     Defendant Union City, Tennessee is a governmental entity formed and existing under the laws of the State of Tennessee. Defendant Union City can be served through the City Mayor, James M. Glasgow, Jr., Chief Executive Officer for Union City, 408 South Depot Street, Union City, Tennessee 38281. Defendant Union City operates the Union City Police Department. Through its operation of the Union City Police Department, Union City is considered a "person" for purposes of 42 U.S.C. § 1983 and is a public entity under 42 U.S.C. 12131(1).

13.     Defendant Robert Thomas Osborne is a citizen of the State of Tennessee and a police officer who, at all relevant times, was employed with Defendant Union City Police Department and Defendant Union City, Tennessee. At all relevant times, Defendant Osborne was acting under color of

state law and is sued in his individual capacity for his excessive force, failure to intervene, failure to provide medical care, and for otherwise violating Mr. Higgins' rights under federal and state law.

14.   Defendant Mary Broglin is a citizen of the State of Tennessee and a jail officer who, at all relevant times, was employed by the Obion County Sheriff's Department and/or Obion County to work at the Obion County Jail. At all relevant times, Defendant Broglin was acting under color of law and is sued in her individual capacity for her failure to intervene, failure to provide medical care, and for otherwise violating Mr. Higgins' rights under federal and state law. Defendant Broglin may be served through the Obion County Sheriff's Department, Law Enforcement Complex, 1 Law Lane, Union City, Tennessee 38281.

15.   Defendant Waylon Spaulding ("Defendant Spaulding") is a citizen of the State of Tennessee and jail officer who, at all relevant times, was employed by the Obion County Sheriff's Department and/or Obion County to work at the Obion County Jail. At all relevant times, Defendant Spaulding was acting under color of law and is sued in his individual capacity for excessive force, failure to intervene, and/or failure to provide medical care, and for otherwise violating Mr. Higgins' rights under federal and state law. Defendant Spaulding may be served through the Obion County Sheriff's Department, Law Enforcement Complex, 1 Law Lane, Union City, Tennessee 38281.

16.   Defendant Brendon Sanford ("Defendant Sanford") is a citizen of the State of Tennessee and jail officer who, at all relevant times was employed by the Obion County Sheriff's Department and/or Obion County to work at the Obion County Jail. At all relevant times, Defendant Sanford was acting under color of law and is sued in his individual capacity as a correctional officer with the Sheriff's Department, and as an employee of Obion County, Tennessee for his failure to intervene, failure to provide medical care, and for otherwise violating Mr. Higgins rights under federal and state law. Defendant Sanford may be served through the Obion County Sheriff's Department, Law Enforcement Complex, 1 Law Lane, Union City, Tennessee 38281.

## IV.  STATEMENT OF FACTS

17. On Sunday night, March 24, 2019, a 911 call was made to the Obion County Dispatcher involving an incident at Pocket's Market in Union City, Tennessee.

18. The call was from Mr. Higgins who was complaining that someone was "following him, trying to kill him, and had stolen his money."

19. Officers with the Union City Police Department, including Defendant Osborne, were dispatched to Pocket's Market where they discovered Mr. Higgins in the parking lot arguing with a female who had apparently driven him to the market.

20. Two other officers were dispatched to Pocket's Market with Defendant Osborne: Union City Police Patrol Sgt. Talmaledge Simmons and Officer Scott Duncan.

21. Defendant Osborne and the other two officers contacted Mr. Higgins and spoke with him about the reason he called the 911 operator. Throughout the course of the conversation, Mr. Higgins insisted that someone was after him and was trying to steal his money. Mr. Higgins's demeanor throughout the course of the conversation suggested that he suffered from an existing mental disability. Among other things, his speech patterns were jumbled, his thought process was not tangential, he was sometimes nonsensical, he displayed signs of hyperactivity and paranoia, and he was otherwise acting in such a way that it would have been clear to any reasonable police officer that he was mentally impaired.

22. At one point, Sgt. Simmons suggested to Mr. Higgins that he probably needed to go to hospital because of the rambling nature of his statements, his hyperactivity, and his non-sensical statements about someone trying to harm him and/or steal money from debit cards that he was holding in his hands, among other obvious signs and symptoms of mental disability

23. Near the conclusion of the conversation with the officers, Mr. Higgins agreed to leave Pocket's Market, and the officers thereafter left the scene to perform other patrol duties.

24. Within a short period of time, the 911 dispatcher received a call from an employee at Pocket's Market explaining that Mr. Higgins had returned and was in a storage locker in the back room of the market that was not supposed to be accessed by the general public

25. Defendant Osborne and the other two officers returned to Pocket's Market where they found Mr. Higgins hiding in a cooler in the rear of the store. Consistent with their interaction with him earlier, Mr. Higgins displayed signs of paranoia, non-tangential speech, difficulty communicating coherent and sensical thoughts, hyperactivity, and other signs that would have informed any reasonable police officer that Mr. Higgins was suffering from a mental disability. Mr. Higgins was arrested, handcuffed behind his back, and taken into custody without incident.

26. Defendant Osborne took custody of Mr. Higgins. Although Mr. Higgins was clearly in need of being evaluated by medical and/or mental health professionals in response to his clear signs and symptoms of mental disability, Defendant Osborne did not take him to be evaluated or make any effort to secure such an evaluation for him. Instead, Defendant Osborne arrested him on a misdemeanor charge of criminal trespass and took him to the Obion County Jail for criminal confinement.

27. Although he was not fit for confinement, Mr. Higgins was taken to the Obion County Jail at approximately 1:43 a.m. on Monday, March 25, 2019.

28. When Defendant Osborne arrived at the jail and parked inside the sally-port, he opened the patrol car rear door for Mr. Higgins, who began to run around the patrol car while continuing to say that people were out to harm him. This continued demonstration of illogical and paranoid behavior, combined with the previous signs and symptoms about which Defendant Osborne was aware, should have further alerted Defendant Osborne that Mr. Higgins needed to be evaluated by medical and/or mental health professionals and that he was unfit for confinement. However, Defendant Osborne made no effort have Mr. Higgins evaluated.

29. Defendant Osborne escorted Mr. Higgins through a door from the sally port into the jail where they were met by Defendant Broglin, who was engaged in her normal job duties when she heard over the radio that Mr. Higgins was being brought into the jail.

30. When Mr. Higgins saw Defendant Broglin, he illogically stated that she was out to harm him. He then briefly took hold of some of her hair. Mr. Higgins was handcuffed and posed no true threat to Defendant Broglin, and she was able to pull free from his grasp.

31. Defendant Spaulding was also present when Defendant Osborne entered the jail with Mr. Higgins.

32. When Mr. Higgins grasped Defendant Broglin's hair, Defendant Spaulding used force to take him to the floor. Defendant Osborne assisted Defendant Spaulding in the takedown. Almost immediately, Mr. Higgins was on the floor, handcuffed, with Defendants Spaulding and Osborne on top of him. Any reasonable threat posed by Mr. Higgins to the safety or wellbeing of any officer or other person was then ended. Mr. Higgins was handcuffed behind his back, on the ground, with trained officers on top of him and other officers in the immediate vicinity. Mr. Higgins posed no further threat to the safety or well-being of any person.

33. Despite the lack of any threat posed by Mr. Higgins, Defendant Spaulding used his hands to firmly grip Mr. Higgins around his face and throat, applying extreme pressure in such a way that impaired Mr. Higgins' ability to breathe.

34. Defendants Sanford and Broglin were present in the hallway of the jail in the immediate vicinity of where this incident was taking place. These two defendants then applied shackles on Mr. Higgins's legs and ankles.

35. After Mr. Higgins's legs and ankles were shackled, and while still handcuffed behind his back, Defendant Spaulding continued to grip Mr. Higgins's face and throat in such a way that impaired his breathing.

36. Thereafter, while Mr. Higgins's legs and ankles were shackled, while still handcuffed behind his back, and while Defendant Spaulding continued to grip Mr. Higgins's face and throat in such a way that impaired his breathing, Defendant Osborne walked over and literally began standing on top of Mr. Higgins's body. In so doing, Defendant Osborne placed his entire bodyweight on Mr. Higgins, further impairing his ability to breath. Defendant Osborne maintained this position on top of Mr. Higgins for several minutes, while Defendant Spaulding continued to forcefully grip Mr. Higgins's face and throat with his hands.

37. While Mr. Higgins was lying on the floor with Defendant Spaulding gripping his face and chin, and Defendant Osborne still standing on either his legs or torso, Defendants Sanford and Broglin remained in the immediate vicinity. Although the collective force then being used on Mr. Higgins was clearly excessive and posed an immediate and substantial danger to Mr. Higgins (including the danger of death by suffocation), neither Defendants Sanford nor Broglin intervened to prevent the continued use of such force. At some point during the force described above, Mr. Higgins stopped moving and went limp. Only then did Defendant Osborne step off of Mr. Higgins and only then did Defendant Spaulding release his grip on Mr. Higgins's throat and/or face.

38. When Mr. Higgins stopped moving and went limp, it was clear that he was suffering a life-threatening medical emergency. Any reasonable officer who observed Mr. Higgins stop moving and go limp under the conditions in which he had been restrained would have realized that Mr. Higgins had asphyxiated or suffocated and was in immediate need of medical assistance, triggering a duty to secure such assistance for him. However, none of the individual defendants took any action to summon medical assistance for Mr. Higgins when he stopped moving and went limp.

39. Instead of securing medical assistance for Mr. Higgins, the individual defendants decided to strap Mr. Higgins' limp body into a mobile restraint chair. Defendant Broglin retrieved the chair. Defendants Spaulding and Sanford then dragged Mr. Higgins from the floor to the restraint chair where they secured the straps to his hands and legs. The individual defendants at times shook Mr. Higgins as

9

if to try and wake him up, but there was no voluntary movement of Mr. Higgins's body. He was unconscious.

40. Even after Mr. Higgins's limp body was placed into the restraint chair, and even though it was profoundly obvious that he needed immediate emergency medical attention, the individual defendants still made no effort to secure medical assistance for him. Instead, the individual defendants rolled Mr. Higgins down the hallway a short distance and placed inside Cell No. 15. Mr. Higgins remained limp and unconscious during this entire time.

41. The individual defendants removed the mattress from Cell No. 15 to make room for Mr. Higgins. Then, still without making any effort to secure medical care for Mr. Higgins, they left him in the cell and closed the cell door. Mr. Higgins remained immobile and unconscious in the restraint chair and was now all alone in the cell.

42. At approximately 2:05 a.m., Defendants Osborne, Spaulding, and Sanford entered Cell No. 15. The Defendants checked Mr. Higgins for a pulse and continued to mingle around inside the cell, taking no action to secure medical care for his serious medical needs.

43. At approximately 2:07 a.m., Defendant Broglin entered Cell No. 15 and again left without taking any measures to help or assist Mr. Higgins or secure medical care for his serious medical needs.

44. At approximately 2:08 a.m., Defendant Osborne left Cell No. 15 to use the telephone and pace in the hallway of the jail. Defendant Osborne went in and out of Cell No. 15 a number of times without helping or assisting with Mr. Higgins.

45. At approximately 2:12 a.m., Sgt. Simmons of the Union City Police Department arrived at the jail, entered Cell No. 15 and proceeded to inspect Mr. Higgins, who was still in the restraint chair, unconscious.

46. Upon information and belief, there was no trained medical personnel at the Obion County Jail on the morning of March 25, 2019 to assist Mr. Higgins, who had apparently stopped breathing and gone limp and was in immediate need of medical assistance to address his serious medical needs.

47. Defendants Broglin, Spaulding, and Sanford were not trained by Defendant Sheriff's Department in the proper use of CPR, the need to secure prompt medical care for inmates and/or detainees like Mr. Higgins who were suffering from immediate life-threatening conditions, the proper uses of force, and the need to intervene to prevent the use of excessive force.

48. At approximately 2:14 a.m., the individual defendants began to remove the restraints from Mr. Higgins, who was still in the chair and unresponsive.

49. At approximately 2:15 a.m., Fire/EMS personnel arrived at the jail and entered Cell No. 15.

50. Fire/EMS personnel lifted Mr. Higgins from the restraint chair, laid him down in the hallway outside Cell No. 15, and immediately began emergency medical treatment, including CPR.

51. Mr. Higgins was rushed to Baptist Memorial Hospital in Union City where he was pronounced dead at approximately 2:53 a.m.

52. At all material times, the individual defendants were acting in the course and scope of their employment with their respective law enforcement employers. In particular, Defendant Osborne was acting in the course and scope of his employment with Union City and/or the Union City Police Department, and Defendants Spaulding, Broglin, and Sanford were acting in the course and scope of their employment with Obion County and/or the Obion County Sheriff's Department. The actions and omissions of the individual defendants as alleged herein violated the applicable law enforcement and correctional standards of care.

53. The force used against Mr. Higgins as described herein was unreasonable amounted to the excessive use of force. In addition, by failing to intervene to prevent the continued use of excessive force by their co-officers and thereby acquiescing in it, Defendants Sanford and Broglin are also responsible for the use of such force even if they did not use excessive force themselves.

54. The individual defendants' failure to timely secure medical care for Mr. Higgins as described herein was done with deliberate indifference to his serious medical needs.

55. The failure by Defendant Osborne to accommodate Mr. Higgins' disability by transporting him directly to the Obion County Jail instead of securing a medical and/or mental health evaluation for him was done with deliberate indifference to Mr. Higgins' right to have his disabilities reasonably accommodated.

56. All acts and omissions committed by each of the individual defendants were committed with intent, malice, and/or with reckless disregard for Mr. Higgins' federal constitutional rights. Moreover, the individual defendants either (a) intentionally pursued a course of conduct for the purpose of causing injury, or (b) knew or should have known that their conduct would naturally and probably result in injury or damage and, nevertheless, continued the conduct with malice or in reckless disregard of the consequences.

57. The unconstitutional conduct alleged herein was carried out in accordance with the official policies, procedures, practices, and customs of the law enforcement departments and municipalities named in this complaint as defendants. In particular, the Obion County Sheriff's Department, Obion County Tennessee, the Union City Police Department and Union City, Tennessee engaged in and permitted to exist a pattern, practice or custom of unconstitutional conduct toward inmates or detainees by: (1) failing to train their officers against the use of excessive force such as the force visited on Mr. Higgins described herein; (2) failing to train their officers to intervene when they see other officers engaging in the use of excessive force such as the force visited on Mr. Higgins described herein; (3) failing to train their officers to promptly secure medical care for persons who exhibit serious medical conditions such as the signs exhibited by Mr. Higgins when he went limp and stopped moving following the use of force described herein; and (4) failing to train officers on the use of CPR and the need to initiate CPR when a person goes limp and stops moving such as occurred with Mr. Higgins. The need for such training was obvious, and it was foreseeable that the lack of such training would cause harm to inmates and detainees.

58. In addition, it was the unconstitutional policy, procedure and practice, for the Obion County Sheriff's Department and/or Obion County Tennessee not to have a trained medical person on site at the jail in order to respond to medical emergencies such as that experienced by Mr. Higgins when he stopped moving and went limp. It was foreseeable that this constitutionally inadequate staffing would result in a delay of medical care in situations where inmates and detainees were in need of immediate medical attention.

59. Union City and/or the Union City Police Department failed to train its officers to reasonably accommodate disabilities of arrestees exhibiting signs of mental illness by securing evaluation for such disabled arrestees by mental health or medical professionals before transporting them to the Obion County Jail for confinement.

60. On information and believe, the municipal and law enforcement department defendants—Obion County, the Obion County Sheriff's Department, Union City, and the Union City Police Department—ratified the unconstitutional conduct of their employees and agents with respect to their actions and omissions alleged herein. Despite clear video evidence of unconstitutional misconduct, these defendants approved the constitutionally deficient actions and omissions of their personnel by failing to discipline them or take other corrective action, thereby affirming that their actions and omissions were done in accordance with the policies, procedures, customs and practices of their respective employers and/or departments.

61. The actions and omissions of the individual defendants caused the death of Mr. Higgins and caused him to experience substantial and significant predeath pain and suffering. In addition, the policies, practices, procedures, and customs of the municipal and law enforcement department defendants as alleged herein were a moving force behind Mr. Higgins' suffering and death and the constitutional violations alleged herein.

62. Alternative to the allegations plead elsewhere in this complaint, the actions and omissions of all defendants named herein were negligent. The defendants had a duty to summon medical care for Mr. Higgins, and they breached this duty. This breach caused his death.

63. As a result of the allegations in this complaint, Mr. Higgins's two minor daughters, Gabriella LouEllen Higgins and Marlee Grace Blalock were unconstitutionally deprived of their liberty interest in their relationship and companionship with Mr. Higgins and their right to a future relationship with him.

## V. CAUSES OF ACTION

### A. Count I - Obion County Defendants: 42 U.S.C. § 1983

64. Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

65. As a result of the allegations contained in this complaint, the Obion County Sheriff's Department and Obion County are liable under 42 U.S.C. § 1983 for maintaining unconstitutional policies and customs that resulted in the violation of Mr. Higgins's clearly established Fourteenth Amendment right to adequate medical care and to be free from objectively unreasonable force. As a direct and proximate result of the Defendants' unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with him.

### Count II - Union City Defendants: 42 U.S.C. § 1983

66. Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

67. As a result of the allegations contained in this complaint, the Union City Police Department and Union City, Tennessee Defendants are liable under 42 U.S.C. § 1983 for maintaining unconstitutional policies and customs that resulted in the violation of Mr. Higgins's clearly established

Fourteenth Amendment right to adequate medical care and to be free from objectively unreasonable force. As a direct and proximate result of the Defendants' unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with him.

### Count III - Individual Defendants: 42 U.S.C. § 1983

68. Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

69. As a result of the allegations contained in this complaint, the individual defendants are liable under 42 U.S.C. § 1983 for the violation of Mr. Higgins's clearly established rights under the Fourteenth Amendment to the United States Constitution as more specifically set forth in the paragraphs below.

70. Defendant Osborne violated Mr. Higgins's Fourteenth Amendment rights by engaging in acts of excessive force, failing to intervene to prevent excessive force, acting with deliberate indifference to his serious medical needs, and otherwise subjecting him to inhumane conditions of confinement. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with him.

71. Defendant Broglin violated Mr. Higgins's Fourteenth Amendment rights by failing to intervene to prevent excessive force, acting with deliberate indifference to his serious medical needs, and otherwise subjecting him to inhumane conditions of confinement. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with him.

72. Defendant Spaulding violated Mr. Higgins's Fourteenth Amendment rights by engaging in acts of excessive force, failing to intervene to prevent excessive force, acting with deliberate indifference to his serious medical needs, and otherwise subjecting him to inhumane conditions of confinement. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with him.

73. Defendant Sanford violated Mr. Higgins's Fourteenth Amendment rights by failing to intervene as to acts of excessive force, acting with deliberate indifference to his serious medical needs, and otherwise subjecting him to inhumane conditions of confinement. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death and, his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with him.

**Count IV – State Law Claims Against Municipal Defendants: GTLA**

74. Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

75. Based on the allegations set forth in the complaint, the Municipal Defendants (Obion County and Union City) are liable under the Tennessee Wrongful Death and Survival laws, codified at T. C. A. §§ 20-5-106 & 107, for tortuously causing the death and pre-death pain and suffering of Mr. Higgins by violating the applicable correctional and medical standards of care.

76. The Municipal Defendants are liable to the Plaintiff under a theory of *respondeat superior* for the negligent acts or omission of their employees in causing the death of Mr. Higgins and his pre-death pain and suffering and other damages alleged in this complaint pursuant to the Governmental Tort Liability Act ("GTLA"), codified at T.C.A. § 29-20-205.

### Count V – State Law Claims Against Individual Defendants

77. Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

78. Based on the allegations set forth in the complaint, Defendants Osborne, Spaulding, Broglin, and Sanford are liable under the Tennessee Wrongful Death and Survival laws, codified at T.C.A. §§ 20-5-106 & 107, for intentionally, recklessly, or otherwise unlawfully causing the death and pre-death pain and suffering of Mr. Higgins and other damages alleged in this complaint, by violating the applicable correctional and medical standards of care.

### Count VI – ADA and Rehabilitation Act Claims Against Defendants Osborne, Union City and Union City Police Department

79. Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

80. Mr. Higgins was a qualified individual with a disability under Title II of the Americans with Disabilities Act and was entitled to the protections afforded by that act and by the Rehabilitation Act of 1973.

81. As a result of the events described herein, Mr. Higgins was denied a reasonable accommodation for his disability by defendants Osborne, Union City and the Union City Police Department in violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

82. As a direct and proximate result of this denial of a reasonable accommodation, Mr. Higgins suffered damages and other injuries, including his death, and his minor children were denied their right to society and companionship with him in violation of the Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

### VII.   JURY DEMAND

83. Plaintiff hereby demands a trial by jury.

## VIII. **CLAIMS OF DAMAGES**

84. Plaintiff asks that the Court award the following relief:

A. Compensatory damages up to $10,000,000.00 for damages to the decedent for his mental and physical pain and suffering and the loss of the value of his life; damages to any eligible surviving family members for their loss of society and companionship, loss of love and affection, loss of financial support, loss of household services, and loss of care, comfort, and guidance; and all compensatory damages available under applicable state and federal law;

B. Punitive damages against all individual defendants;

C. Attorneys' fees and costs;

D. Prejudgment interest as appropriate; and

E. Any such other relief that this Court deems just and equitable.

Respectfully submitted this 12th day of March 2020.


| BUDGE & HEIPT, PLLC | THE LAW OFFICE OF DAVID L. COOPER, PC |
|---|---|
| *s/ Edwin S. Budge* | *s/ David L. Cooper* |
| **EDWIN S. BUDGE** | **DAVID L. COOPER, BPR # 11445** |
| Washington State Bar No. 24182 | Third Avenue North Building |
| **ERIK J. HEIPT** | 208 Third Avenue, North, Suite 300 |
| Washington State Bar No. 28113 | Nashville, TN 37201 |
| 808 E. Roy St. | dcooper@cooperlawfirm.com |
| Seattle, Washington 98102 | (615) 256-1008 |
| ed@budgeandheipt.com | |
| erik@budgeandheipt.com | *Attorney for Plaintiff* |
| (206) 624-3060 | |
| *Attorneys for Plaintiff* | |