**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION AT JACKSON**

| | |
|---|---|
| **JENNIFER LOUISE JENKINS,** ) <br> **Administrator** *ad Litem* **of the** ) <br> **ESTATE OF STERLING L. HIGGINS,** ) <br> ) <br> **Plaintiff,** ) <br> **v.** ) <br> ) <br> ) <br> **OBION COUNTY, TENNESSEE,** ) <br> **UNION CITY, TENNESSEE,** ) <br> **ROBERT THOMAS OSBORNE,** ) <br> **Individually, MARY BROGLIN, individually,** ) <br> **WAYLON SPAULDING, individually, and** ) <br> **BRENDON SANFORD, individually,** ) <br> ) <br> ) <br> **Defendants.** ) | **Jury Demand** <br><br><br><br> **No. 20-cv-01056 STA-dkv** |

# FIRST AMENDED COMPLAINT

## I. INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983, the ADA Amendments Act, and Tennessee law resulting from events that happened during the pretrial detention of Sterling Lapree Higgins at the Obion County Jail in Union City, Tennessee. The events that give rise to this first amended complaint occurred during the early morning hours on March 25, 2019 and culminated in the unnecessary death of Sterling Higgins following his admission to the jail. Defendants caused Mr. Higgins' death by violating his rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution, the ADA Amendments Act, and Tennessee law

2. Defendants' unlawful actions include (a) failing to initially transport Mr. Higgins to a medical or mental health facility when they knew or should have known that he was suffering from a medical or mental health crisis, (b) excessive use of force, (c) failing to provide him adequate medical care or to summon such care, (d) failing to adequately train jail and law enforcement personnel about the dangers of restraint-related asphyxia, (e) failing to adequately train jail and law enforcement

personnel about the need to secure and provide proper medical care and to avoid the other actions and omissions that caused and/or contributed to his death, (f) ignoring his ongoing serious medical needs, including his obvious paranoid and/or delusional state of mind and his loss of consciousness, (g) failing to monitor him despite his severe and life-threatening medical condition, and (h) otherwise forcing him to endure extreme and needless pain and suffering and causing his death approximately one hour after being admitted to the jail.

## II.  JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights) since the claims arise as a result of violations of certain federal civil rights, including the right to be free from the excessive use of force and the right to adequate medical care guaranteed by the United States Constitution, and are actionable under 42 U.S.C. § 1983. This Court further has jurisdiction over the claims asserted under the ADA Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4. This Court has personal jurisdiction over each of the named defendants because they either (1) reside in this judicial district, or (2) they have sufficient minimum contacts in the State of Tennessee and within this judicial district and the exercise of personal jurisdiction over the named defendants would not offend traditional notions of fair play and substantial justice.

5. Venue is proper in this Court since the allegations which give rise to the cause of action occurred in Union City and Obion County, Tennessee.

## III.  PARTIES

6. Plaintiff Jennifer Louise Jenkins is the Administrator *ad Litem* and was appointed by the Gibson County Chancery Court by Order entered on February 11, 2020 to administer the Estate of Sterling Lapree Higgins, Case No. 23374P. The Estate asserts all claims on its behalf and all claims actionable by it on behalf of Mr. Higgins' two minor daughters, Gabriella LouEllen Higgins and Marlee

Grace Blalock.

7.     Mr. Higgins was a United States citizen and a resident of Gibson County, Tennessee. Mr. Higgins was 37 years old when he died on March 25, 2019 during his detention at the Obion County Jail in Union City, Tennessee. Throughout the period of his confinement, Mr. Higgins was a pretrial detainee entitled to all of the protections guaranteed to him under the United States Constitution, the ADAAA, and Tennessee law.

8.     Defendant Obion County, Tennessee is a governmental entity formed and existing under the laws of the State of Tennessee. Defendant Obion County can be served through the County Mayor, Benny McGuire, Chief Executive Officer for Obion County, Obion County Courthouse, 7 Bill Burnett Circle, Union City, Tennessee 38281. Together with and/or independently of the Obion County Sheriff's Department, Defendant Obion County owns and/or operates the jail where Mr. Higgins was confined as a pretrial detainee. Defendant Obion County is considered a "person" for purposes of 42 U.S.C. § 1983 and is a public entity under 42 U.S.C. 12131(1). Defendant Obion County acted under color of state law in confining and housing pretrial detainees and inmates and was legally responsible to provide medical services to them. Defendant Obion County, together with and/or independently of the Obion County Sheriff's Department, was responsible for hiring, training, disciplining, and supervising correctional officers at the jail, including the individual defendants named in this action. Defendant Obion County was also responsible for adopting, implementing, and enforcing policies and practices pertaining to the use of force, providing medical care for inmates, and ensuring that jail conditions comport with the United States Constitution and other federal and state laws.

9.     Defendant Union City, Tennessee is a governmental entity formed and existing under the laws of the State of Tennessee. Defendant Union City can be served through the City Mayor, Terry L. Hailey, Chief Executive Officer for Union City, 408 South Depot Street, Union City, Tennessee 38281. Defendant Union City operates the Union City Police Department and, independently or through that department, performs traditional law enforcement functions and activities in and around Union City,

3

Tennessee. Through its operation of the Union City Police Department and otherwise, Union City is considered a "person" for purposes of 42 U.S.C. § 1983 and is a public entity under 42 U.S.C. 12131(1).

10. Defendant Robert Thomas Osborne is a citizen of the State of Tennessee and a police officer who, at all relevant times, was employed by Defendant Union City, Tennessee at and for the Union City Police Department. At all relevant times, Defendant Osborne was acting under color of state law and is sued in his individual capacity for his excessive force, failure to intervene, failure to provide medical care, and for otherwise violating Mr. Higgins' rights under federal and state law.

11. Defendant Mary Brogglin is a citizen of the State of Tennessee and a jail officer who, at all relevant times, was employed by Defendant Obion County at and for the Obion County Sheriff's Department to work at the Obion County Jail. At all relevant times, Defendant Brogglin was acting under color of law and is sued in her individual capacity for her failure to intervene, failure to provide medical care, and for otherwise violating Mr. Higgins' rights under federal and state law. Defendant Brogglin may be served through the Obion County Sheriff's Department, Law Enforcement Complex, 1 Law Lane, Union City, Tennessee 38281.

12. Defendant Waylon Spaulding is a citizen of the State of Tennessee and jail officer who, at all relevant times, was employed by Defendant Obion County at and for the Obion County Sheriff's Department to work at the Obion County Jail. At all relevant times, Defendant Spaulding was acting under color of law and is sued in his individual capacity for excessive force, failure to intervene, failure to provide medical care, and for otherwise violating Mr. Higgins' rights under federal and state law. Defendant Spaulding may be served through the Obion County Sheriff's Department, Law Enforcement Complex, 1 Law Lane, Union City, Tennessee 38281.

13. Defendant Brendon Sanford is a citizen of the State of Tennessee and jail officer who, at all relevant times was employed by the Defendant Obion County at and for the Obion County Sheriff's Department to work at the Obion County Jail. At all relevant times, Defendant Sanford was acting under color of law and is sued in his individual capacity as a correctional officer with the Sheriff's Department

and as an employee of Obion County, Tennessee for his failure to intervene, failure to provide medical care, and for otherwise violating Mr. Higgins rights under federal and state law. Defendant Sanford may be served through the Obion County Sheriff's Department, Law Enforcement Complex, 1 Law Lane, Union City, Tennessee 38281.

### IV.  STATEMENT OF FACTS

14.  On Sunday night, March 24, 2019, a 911 call was made to the Obion County Dispatcher involving an incident at Pocket's Market in Union City, Tennessee.

15.  The call was from Mr. Higgins who was complaining that someone was following him, trying to kill him, and had stolen his money.

16.  Officers with the Union City Police Department, including Defendant Osborne, were dispatched to Pocket's Market where they discovered Mr. Higgins in the parking lot arguing with a female who had apparently driven him to the market.

17.   Two other officers were dispatched to Pocket's Market with Defendant Osborne: Union City Police Patrol Sgt. Talmaledge Simmons and Officer Scott Duncan.

18.  Defendant Osborne and the other two officers contacted Mr. Higgins and spoke with him about the reason he called the 911 operator. Throughout the course of the conversation, Mr. Higgins insisted that someone was after him and was trying to steal his money. Mr. Higgins's demeanor throughout the course of the conversation suggested that he suffered from an existing mental disability. Among other things, his speech patterns were jumbled, his thought process was tangential, he was sometimes nonsensical, he displayed signs of paranoia, and he was otherwise acting in such a way that it would have been clear to any reasonable police officer that he was mentally impaired.

19.  At one point, Sgt. Simmons suggested to Mr. Higgins that he probably needed to go to a hospital because of the rambling nature of his statements and his non-sensical statements about someone trying to harm him and/or steal money from debit cards that he was holding in his hands, among other obvious signs and symptoms of mental disability.

20. Near the conclusion of the conversation with the officers, Mr. Higgins agreed to leave Pocket's Market, and the officers left the scene to perform other patrol duties.

21. Within a short period of time, the 911 dispatcher received a call from an employee at Pocket's Market explaining that Mr. Higgins had returned and was in a storage locker in the back room of the market that was not supposed to be accessed by the general public

22. Defendant Osborne and the other two officers returned to Pocket's Market where they found Mr. Higgins hiding in a cooler in the rear of the store. Consistent with their interaction with him earlier, Mr. Higgins displayed signs of paranoia, tangential speech, difficulty communicating coherent and sensical thoughts, and other signs that would have informed any reasonable police officer that Mr. Higgins was suffering from a mental disability. Mr. Higgins was arrested, handcuffed behind his back, and taken into custody without incident.

23. Defendant Osborne took custody of Mr. Higgins. Although Mr. Higgins was clearly in need of being evaluated by medical and/or mental health professionals in response to his clear signs and symptoms of mental disability, Defendant Osborne did not take him to be evaluated or make any effort to secure such an evaluation for him. Instead, Defendant Osborne arrested him on a misdemeanor charge of criminal trespass and took him to the Obion County Jail for criminal confinement.

24. Although he was not fit for confinement, Mr. Higgins was taken to the Obion County Jail at approximately 1:43 a.m. on Monday, March 25, 2019.

25. When Defendant Osborne arrived at the jail and parked inside the sally-port, he opened the patrol car rear door for Mr. Higgins, who began to run around the patrol car while continuing to say that people were out to harm him. This continued demonstration of illogical and paranoid behavior, combined with the previous signs and symptoms about which Defendant Osborne was aware, should have further alerted Defendant Osborne that Mr. Higgins needed to be evaluated by medical and/or mental health professionals and that he was unfit for confinement. However, Defendant Osborne made

no effort have Mr. Higgins evaluated by transporting him to an appropriate medical facility, but instead walked him into the jail.

26. Defendant Osborne escorted Mr. Higgins through a door from the sally-port into the jail where they were met by Defendant Brogglin, who was engaged in her normal job duties when she heard over the radio that Mr. Higgins was being brought into the jail.

27. When Mr. Higgins saw Defendant Brogglin, he illogically stated that she was out to harm him. As he was walking past her, Defendant Brogglin shoved Mr. Higgins. He then briefly took hold of her hair. Mr. Higgins was handcuffed and posed no true threat to Defendant Brogglin, and she was able to pull free from his grasp.

28. Defendant Spaulding was also present when Defendant Osborne entered the jail with Mr. Higgins.

29. When Mr. Higgins grasped Defendant Brogglin's hair, Defendant Spaulding used force to take him to the floor. Defendant Osborne assisted Defendant Spaulding in the takedown. Almost immediately, Mr. Higgins was on the floor, handcuffed, with Defendants Spaulding and Osborne on top of him. Any reasonable threat posed by Mr. Higgins to the safety or wellbeing of any officer or other person had ended by then. Mr. Higgins was handcuffed behind his back, on the ground, with trained officers on top of him and other officers in the immediate vicinity. Mr. Higgins posed no further threat to the safety or well-being of any person.

30. Despite the lack of any threat posed by Mr. Higgins, Defendant Spaulding used his hands to firmly grip Mr. Higgins neck or throat, applying extreme pressure in such a way that impaired Mr. Higgins' ability to breathe and/or allow blood to flow to his brain.

31. Defendants Sanford and Brogglin were present in the hallway of the jail in the immediate vicinity of where this incident was taking place. These two defendants then applied shackles on Mr. Higgins's legs and ankles.

32. After Mr. Higgins's legs and ankles were shackled, and while still handcuffed behind his back, Defendant Spaulding continued to grip Mr. Higgins's throat in such a way that impaired his breathing and/or circulation.

33. Thereafter, while Mr. Higgins's legs and ankles were shackled, while still handcuffed behind his back, and while Defendant Spaulding continued to grip Mr. Higgins's neck or throat in such a way that impaired his breathing and/or circulation, Defendant Osborne walked over and literally began standing on top of Mr. Higgins's body. In so doing, Defendant Osborne placed his entire bodyweight on Mr. Higgins, further impairing his ability to breath. Defendant Osborne maintained this position on top of Mr. Higgins for several minutes, while Defendant Spaulding continued to forcefully grip Mr. Higgins's neck or throat with his hands. Upon information and belief, none of the defendants at the scene had received adequate training on the well-known dangers of restraint-related asphyxia.

34. While Mr. Higgins was lying on the floor with Defendant Spaulding gripping his throat, and Defendant Osborne still standing on either his legs or torso, Defendants Sanford and Brogglin remained in the immediate vicinity. Although the collective force then being used on Mr. Higgins was clearly excessive and posed an immediate and substantial danger to Mr. Higgins (including the danger of death by suffocation, asphyxia, or strangulation), neither Defendants Sanford nor Brogglin intervened to prevent the continued use of such force. At some point during the force described above, Mr. Higgins stopped moving and went limp. Only then did Defendant Osborne step off of Mr. Higgins, but Defendant Spaulding continue press his hands on Mr. Higgins's neck area for another two minutes.

35. When Mr. Higgins stopped moving and went limp, it was clear that he was suffering a life-threatening medical emergency. Any reasonable officer who observed Mr. Higgins stop moving and lose consciousness under the conditions in which he had been restrained would have realized that he had asphyxiated or suffocated and was in immediate need of medical assistance, triggering a duty to secure such assistance for him. However, none of the individual defendants took any action to summon medical assistance for Mr. Higgins when he stopped moving and went limp.

36. Instead of securing medical assistance for Mr. Higgins, the individual defendants decided to strap Mr. Higgins' limp body into a mobile restraint chair. Defendant Brogglin retrieved the chair. Defendants Spaulding and Sanford then dragged Mr. Higgins from the floor to the restraint chair where they secured the straps to his hands and legs. White foam was emanating from Mr. Higgins' mouth or nose, further indicating a medical emergency. The individual defendants at times shook Mr. Higgins as if to try and wake him up, but there was no voluntary movement of Mr. Higgins's body. He was not conscious and in obvious need of urgent medical treatment.

37. Even after Mr. Higgins's limp body was placed into the restraint chair, and even though it was profoundly obvious that he needed immediate emergency medical attention, the individual defendants still made no effort to secure medical assistance for him. Instead, the individual defendants wheeled Mr. Higgins down the hallway a short distance and placed him inside Cell No. 15. Mr. Higgins remained limp and unconscious during this entire time.

38. The individual defendants removed the mattress from Cell No. 15 to make room for Mr. Higgins. Then, still without making any effort to secure medical care for Mr. Higgins, they left him in the cell and closed the cell door. Mr. Higgins remained immobile and unconscious in the restraint chair and was now all alone in the cell.

39. At approximately 2:05 a.m., Defendants Osborne, Spaulding, and Sanford entered Cell No. 15. The defendants checked Mr. Higgins for a pulse and continued to mingle around inside the cell, taking no action to secure medical care for his serious medical needs.

40. At approximately 2:07 a.m., Defendant Brogglin entered Cell No. 15 and again left without taking any measures to help or assist Mr. Higgins or secure medical care for his serious medical needs.

41. At approximately 2:08 a.m., Defendant Osborne left Cell No. 15 to use the telephone and pace in the hallway of the jail. Defendant Osborne went in and out of Cell No. 15 multiple times without helping or assisting with Mr. Higgins.

42. At approximately 2:12 a.m., Sgt. Simmons of the Union City Police Department arrived at the jail, entered Cell No. 15, and proceeded to inspect Mr. Higgins, who was still in the restraint chair, unconscious.

43. Upon information and belief, there was no trained medical personnel at the Obion County Jail on the morning of March 25, 2019 to assist Mr. Higgins, who had apparently stopped breathing and gone limp and was in immediate need of medical assistance to address his serious medical needs.

44. Defendants Brogglin, Spaulding, and Sanford were not trained by Defendant Sheriff's Department in the proper use of CPR, the need to secure prompt medical care for inmates and/or detainees like Mr. Higgins who were suffering from immediate life-threatening conditions, the proper uses of force, the dangers of restraint-related asphyxia, and the need to intervene to prevent the use of excessive force.

45. At approximately 2:14 a.m., the individual defendants began to remove the restraints from Mr. Higgins, who was still in the chair and unresponsive.

46. At approximately 2:15 a.m., Fire/EMS personnel arrived at the jail and entered Cell No. 15.

47. Fire/EMS personnel lifted Mr. Higgins from the restraint chair, laid him down in the hallway outside Cell No. 15, and immediately began emergency medical treatment, including CPR.

48. Surveillance video from the jail captured the foregoing events. Relevant sections and segments of the jail surveillance videos, which are hereby incorporated into this first amended complaint, graphically show the events as they unfolded. One such video is this one: https://budgeandheipt-2.wistia.com/medias/7imvnq3bbc. The video is approximately 20 minutes in length and captures the majority of the events in question as indicated by the running time in the lower right-hand corner of the video. In this video, Mr. Higgins can be seen entering the jail at approximately 1:46 a.m. Shortly thereafter, Defendant Brogglin shoved Mr. Higgins, and then he briefly grasped her hair with one of his handcuffed hands behind his back. He was then quickly taken to the floor of the jail hallway and ended

up lying supine on the floor, still handcuffed, with his hands behind his back. At approximately 1:49 a.m., the officers shackled his legs. He was now lying supine on the floor, with his hands cuffed behind his back, his legs shackled, and physically unable to pose a threat.

49. Beginning at approximately 1:48:50 a.m., the video shows Defendant Spaulding grasping the area of Mr. Higgins' neck or throat and pressing down on these vital areas with his hands and continuing to do so continuously for approximately five and ½ additional minutes. The video also shows Defendant Osborne standing upon Mr. Higgins' body—even though he is handcuffed, even though his legs are shackled, and even though Defendant Spaulding has his hands grasped around Mr. Higgins' neck or throat. Defendant Spaulding continued to grasp and press into Mr. Higgins' neck and throat area. At approximately 1:52:22 a.m., Mr. Higgins stopped moving. Nevertheless, Defendant Spaulding continued to grasp and press into Mr. Higgins' neck and throat area. It was not until approximately 1:54:27 a.m., more than two minutes after all movement had ceased from Mr. Higgins, that Defendant Spaulding finally released his grasp on Mr. Higgins' neck and/or throat area.

50. The individual defendants then dragged Mr. Higgins' limp and apparently lifeless body from the floor to the restraint chair. While dragging him to the restraint chair, the video shows a white substance coming from the area of Mr. Higgins' nose, which was likely pulmonary fluid and which clearly indicated Mr. Higgins was in dire need of immediate medical attention. Ignoring this sign and others, the defendants heaved Mr. Higgins into the restraint chair at approximately 1:54:30 a.m. Mr. Higgins is not moving and is limp and apparently lifeless as they do so. Despite this, the defendants spent approximately seven entire minutes strapping Mr. Higgins into the restraint chair, during which time he displayed no apparent signs of movement or life.

51. At approximately 2:01:40 a.m., Defendant Spaulding wheeled Mr. Higgins' lifeless body, which was now strapped into the restraint chair, into Cell #15. The door to Cell No.15 was closed at approximately 2:02:01 and Mr. Higgins was left inside the cell, unmoving, by himself, and still strapped into the restraint chair. He remained by himself inside the cell for more than three additional minutes.

11

At approximately 2:05:34, the individual defendants entered the cell, but did not begin removing the restraints from Mr. Higgins' limp and lifeless body for many minutes thereafter, as indicated by video from the interior of Cell No. 15 referenced below.

52.  Closeups and excerpts of the foregoing video shed further light on the foregoing events. In this excerpted video, Defendant Spaulding can be seen in closeup, grasping and pressing into the area of Mr. Higgins' neck and throat for minutes on end until Mr. Higgins became lifeless and limp in his grasp, and then continuing to do so for more than two minutes after Mr. Higgins stopped moving and went limp: https://budgeandheipt-2.wistia.com/medias/l0dy6e2hzc.

53.  In this next excerpted video, the individual defendants drag Mr. Higgins' limp and lifeless body across the hall and heave his body into the restraint chair: https://budgeandheipt-2.wistia.com/medias/v7pkol3c8m.  The white substance coming from the areas of Mr. Higgins' nose, as described above, is visible as they are dragging him to the chair. The white substance is further visible in this slow motion excerpt of the same series of events: https://budgeandheipt-2.wistia.com/medias/qv3nz01qoh.

54.  Video of the interior of Cell No. 15 shows Mr. Higgins' limp and lifeless in the restraint chair for the entire time he was in the cell and clearly shows the white substance in the area of Mr. Higgins' nose. *See* https://budgeandheipt-2.wistia.com/medias/5338yjtrbw. In this video, Defendant Spaulding wheels Mr. Higgins' lifeless body into Cell No. 15 at approximately 2:01:48 a.m., and Mr. Higgins remains strapped into the chair inside the cell for many minutes on end. During this time, the individual defendants repeatedly enter and try to detect a pulse or any signs of life. Medics do not enter the cell until approximately 2:15 a.m.

55.  Mr. Higgins was rushed to Baptist Memorial Hospital in Union City where he was pronounced dead at approximately 2:53 a.m.

56.  At all material times, the individual defendants were acting in the course and scope of their employment with their respective law enforcement employers. In particular, Defendant Osborne

was acting in the course and scope of his employment with Union City and/or the Union City Police Department, and Defendants Spaulding, Brogglin, and Sanford were acting in the course and scope of their employment with Obion County and/or the Obion County Sheriff's Department. The actions and omissions of the individual defendants as alleged herein violated the applicable law enforcement and correctional standards of care.

57. The force used against Mr. Higgins as described herein was unreasonable and amounted to the excessive use of force. In addition, by failing to intervene to prevent the continued use of excessive force by their co-officers and thereby acquiescing in it, Defendants Sanford and Brogglin are also responsible for the use of such force even if they did not directly use the force themselves.

58. The individual defendants' failure to timely secure medical care for Mr. Higgins as described herein was done with deliberate indifference to his serious medical needs. His serious medical needs would have been obvious to any lay person, and the failure to secure immediate medical care put him at substantial risk of serious harm or death.

59. The failure by Defendant Osborne to accommodate Mr. Higgins' disability by transporting him directly to the Obion County Jail instead of securing a medical and/or mental health evaluation for him was done with deliberate indifference to Mr. Higgins' right to have his disabilities reasonably accommodated.

60. All acts and omissions committed by each of the individual defendants were committed with intent, malice, and/or with reckless disregard for Mr. Higgins' federal constitutional rights. Moreover, the individual defendants either (a) intentionally pursued a course of conduct for the purpose of causing injury, or (b) knew or should have known that their conduct would naturally and probably result in injury or damage and, nevertheless, continued the conduct with malice or in reckless disregard of the consequences.

61. The unconstitutional conduct alleged herein was carried out in accordance with the official policies, procedures, practices, and customs of the law enforcement departments which are part

of the municipalities named in this first amended complaint as defendants. In particular, the Obion County Sheriff's Department, Obion County, Tennessee, the Union City Police Department and Union City, Tennessee engaged in an unconstitutional policy, practice, or custom by: (1) failing to train their officers about the well-known dangers of restraint-related asphyxia; (2) failing to train their officers to intervene when they see other officers engaging in the use of excessive force such as the force visited on Mr. Higgins described herein; (3) failing to train their officers to promptly secure medical care for persons who exhibit serious medical conditions such as the signs exhibited by Mr. Higgins when he went limp and stopped moving following the use of force described herein; and (4) failing to train officers on the use of CPR and the need to initiate CPR when a person goes limp and stops moving such as occurred with Mr. Higgins. The need for such training was obvious, and it was foreseeable that the lack of such training would cause harm to inmates and detainees, including Mr. Higgins.

62. In addition, it was the unconstitutional policy, procedure and practice, for the Obion County Sheriff's Department and/or Obion County, Tennessee not to have a trained medical person on site at the jail in order to respond to medical emergencies such as that experienced by Mr. Higgins when he stopped moving and went limp. It was foreseeable that this constitutionally inadequate staffing would result in a delay of medical care in situations where inmates and detainees were in need of immediate medical attention.

63. Union City and/or the Union City Police Department failed to train its officers to reasonably accommodate disabilities of arrestees exhibiting signs of mental illness by securing evaluation for such disabled arrestees by mental health or medical professionals before transporting them to the Obion County Jail for confinement.

64. On information and belief, the municipal defendants—Obion County (which operates the Obion County Sheriff's Department) and, Union City (which operates the Union City Police Department)—ratified the unconstitutional conduct of their employees and agents with respect to their actions and omissions alleged herein. Despite clear video evidence of unconstitutional misconduct, these

municipal defendants approved the constitutionally deficient actions and omissions of their personnel by failing to discipline them or take other corrective action, thereby affirming that their actions and omissions were done in accordance with the policies, procedures, customs and practices of their respective employers and/or departments.

65. The actions and omissions of the individual defendants caused the death of Mr. Higgins and caused him to experience substantial and significant predeath pain and suffering. In addition, the policies, practices, procedures, and customs of the municipal and law enforcement department defendants as alleged herein were a moving force behind Mr. Higgins' suffering and death and the constitutional violations alleged herein.

66. Alternative to the allegations plead elsewhere in this first amended complaint, the actions and omissions of all defendants named herein were negligent. The defendants had a duty to summon medical care for Mr. Higgins, and they breached this duty. This breach caused his death.

67. As a result of the allegations in this complaint, Mr. Higgins' two minor daughters, Gabriella LouEllen Higgins and Marlee Grace Blalock, were unconstitutionally deprived of their liberty interest in their relationship and companionship with Mr. Higgins and their right to a future relationship with him.

## V.  CAUSES OF ACTION

### A.  Count I - Obion County Defendant: 42 U.S.C. § 1983

68. Plaintiff repeats, realleges, and incorporates all other paragraphs of this first amended complaint as if fully set forth herein.

69. As a result of the allegations contained in this first amended complaint, Obion County is liable under 42 U.S.C. § 1983 for maintaining unconstitutional policies and customs that resulted in the violation of Mr. Higgins' clearly established Fourth and Fourteenth Amendment rights to be free from objectively unreasonable force and his Fourteenth Amendment right to adequate medical care. As a direct and proximate result of the Defendants' unconstitutional acts and omissions, Mr. Higgins

experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with him.

### Count II - Union City, Tennessee Defendant: 42 U.S.C. § 1983

70. Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

71. As a result of the allegations contained in this first amended complaint, Union City, Tennessee is liable under 42 U.S.C. § 1983 for maintaining unconstitutional policies and customs that resulted in the violation of Mr. Higgins' clearly established Fourth and Fourteenth Amendment rights to be free from objectively unreasonable force and his Fourteenth Amendment right to adequate medical care. As a direct and proximate result of the Defendants' unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with him.

### Count III - Individual Defendants: 42 U.S.C. § 1983

72. Plaintiff repeats, realleges, and incorporates all other paragraphs of this first amended complaint as if fully set forth herein.

73. As a result of the allegations contained in this first amended complaint, the individual defendants are liable under 42 U.S.C. § 1983 for the violation of Mr. Higgins' clearly established rights under the Fourth and Fourteenth Amendment to the United States Constitution as more specifically set forth in the paragraphs below.

74. Defendant Osborne violated Mr. Higgins' Fourth and Fourteenth Amendment rights by engaging in acts of excessive force, failing to intervene to prevent excessive force, acting with deliberate indifference to his serious medical needs, and otherwise subjecting him to inhumane conditions of confinement. As a direct and proximate result of this defendant's unconstitutional acts and omissions,

Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with their father.

75. Defendant Brogglin violated Mr. Higgins' Fourth and Fourteenth Amendment rights by failing to intervene to prevent excessive force, acting with deliberate indifference to his serious medical needs, and otherwise subjecting him to inhumane conditions of confinement. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with their father.

76. Defendant Spaulding violated Mr. Higgins' Fourth and Fourteenth Amendment rights by engaging in acts of excessive force, failing to intervene to prevent excessive force, acting with deliberate indifference to his serious medical needs, and otherwise subjecting him to inhumane conditions of confinement. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death, and his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with their father.

77. Defendant Sanford violated Mr. Higgins' Fourth and Fourteenth Amendment rights by failing to intervene as to acts of excessive force, acting with deliberate indifference to his serious medical needs, and otherwise subjecting him to inhumane conditions of confinement. As a direct and proximate result of this defendant's unconstitutional acts and omissions, Mr. Higgins experienced extreme physical pain and suffering, severe mental anguish, and death and, his minor children were deprived of their constitutionally protected liberty interest in their relationship and companionship with their father.

**Count IV – State Law Claims Against Individual Defendants**

78. Plaintiff repeats, realleges, and incorporates all other paragraphs of this first amended complaint as if fully set forth herein.

79. Based on the allegations set forth in this first amended complaint, Defendants Osborne, Spaulding, Brogglin, and Sanford are liable under the Tennessee Wrongful Death and Survival laws, codified at T.C.A. §§ 20-5-106 & 107, for intentionally, recklessly, or otherwise unlawfully causing the death and pre-death pain and suffering of Mr. Higgins and other damages alleged in this complaint, by violating the applicable correctional and medical standards of care.

### Count V – ADA and Rehabilitation Act Claims Against Defendant Osborne and Defendant Union City

80. Plaintiff repeats, realleges, and incorporates all other paragraphs of this first amended complaint as if fully set forth herein.

81. Mr. Higgins was a qualified individual with a disability under Title II of the Americans with Disabilities Act and was entitled to the protections afforded by that act, as amended, and/or by the Rehabilitation Act of 1973.

82. As a result of the events described herein, Mr. Higgins was denied a reasonable accommodation for his disability by Defendants Osborne and Union City in violation of Title II of the Americans with Disabilities Act, as amended, and/or the Rehabilitation Act of 1973.

83. As a direct and proximate result of this denial of a reasonable accommodation, Mr. Higgins suffered damages and other injuries, including his death, and his minor children were denied their right to society and companionship with him in violation of the Title II of the Americans with Disabilities Act, as amended, and/or the Rehabilitation Act of 1973.

### VI.   JURY DEMAND

84. Plaintiff hereby demands a trial by jury.

### VII.   CLAIMS OF DAMAGES

85. Plaintiff asks that the Court award the following relief:

A. Compensatory damages up to $10,000,000.00 for damages to the decedent for his mental and physical pain and suffering and the loss of the value of his life; damages to any eligible surviving

family members for their loss of society and companionship, loss of love and affection, loss of financial support, loss of household services, and loss of care, comfort, and guidance; and all compensatory damages available under applicable state and federal law;

      B.      Punitive damages against all individual defendants;

      C.      Attorneys' fees and costs;

      D.      Prejudgment interest as appropriate; and

      E.      Any such other relief that this Court deems just and equitable.

Respectfully submitted this 12th day of June, 2020.

| | |
|---|---|
| **BUDGE & HEIPT, PLLC** | **THE LAW OFFICE OF DAVID L. COOPER, PC** |
| *s/ Edwin S. Budge* | *s/ David L. Cooper* |
| **EDWIN S. BUDGE** | **DAVID L. COOPER, BPR # 11445** |
| *Washington State Bar No. 24182* | Third Avenue North Building |
| **ERIK J. HEIPT** | 208 Third Avenue, North, Suite 300 |
| *Washington State Bar No. 28113* | Nashville, TN 37201 |
| 808 E. Roy St. | dcooper@cooperlawfirm.com |
| Seattle, Washington 98102 | (615) 256-1008 |
| ed@budgeandheipt.com | |
| erik@budgeandheipt.com | *Attorney for Plaintiff* |
| (206) 624-3060 | |
| *Attorneys for Plaintiff* | |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the date stated below this document was filed with the Clerk of the Court for the United States District Court for the Western District of Tennessee, Eastern Division, via the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Michael R. Hill (#17409)
W. Michael Varnell, II (#33602)
Flippin, Collins & Hill, PLLC
P.O. Box 679
Milan, TN 38358-0679
Telephone: (731) 686-8355
mh_fch@bellsouth.net
wmv_fch@bellsouth.net
Attorneys for Union City Police Department and Union City, Tennessee

John D. Burleson - #010400
Dale Conder, Jr., #15419
Rainey, Kizer, Reviere & Bell, PLC
209 East Main Street
P. O. Box 1147
Jackson, TN 38302-1147
(731) 423-2414
jburleson@raineykizer.com
dconder@raineykizer.com
Attorneys for Robert Thomas Osborne, Individually

William B. Mauldin (#022912)
Nathan D. Tilly (#031318)
Pentecost, Glenn & Mauldin, PLLC
162 Murray Guard Drive, Suite B
Jackson, TN 38305
Phone: (731) 668-5995
Fax: (731) 668-7163
wmauldin@pgmfirm.com
ntilly@pgmfirm.com
Attorneys for Obion County Sheriff's Department, Mary Brogglin, Waylon Spaulding, and Brendon Sanford

Dated this 12th day of June, 2020.

*/s Edwin S. Budge*
Edwin S. Budge