**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| **JENNIFER LOUISE JENKINS,** *Administrator ad Litem of the* **ESTATE OF STERLING L. HIGGINS,** | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| vs. | NO. 20-cv-01056 STA-atc |
| **OBION COUNTY, TENNESSEE,** *et al.*, | )<br>)<br>) |
| **Defendants.** | )<br>) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO "DEFENDANTS' 'JOINT' MOTION TO AMEND THE SCHEDULING ORDER AND TO CONTINUE TRIAL" (ECF 71)**

## I.  INTRODUCTION

When a party demonstrates that it cannot meet the case schedule despite diligent attempts to do so, a court may find good cause to continue scheduling order deadlines. This is not one of those times.

Adhering to scheduling orders promotes case resolution, allows predictability, and rewards diligence. Without a showing of true need and demonstrated diligence, continuances punish the conscientious party, encourage apathy, and hinder case resolution. Here, Defendants[1] seek relief from the Court's deadlines—*not* because anything happened to warrant a continuance but, rather,

---

[1] The Defendants' "Joint" Motion to Amend the Scheduling Order and to Continue Trial is not, in fact, entirely "joint." Defendant Union City has not joined the motion.

because they have inexplicably neglected their case. Their request would turn that neglect into an unfair advantage and upend Plaintiff's careful planning, to the prejudice of Plaintiff and the minor beneficiaries. And instead of acknowledging their inattention to the case, they rely on several misrepresentations. They also ignore the applicable legal standard for making such a request and fail to support their motion with a declaration of counsel—or, indeed, with any factual detail of the kind needed to grant the requested relief.

In short, while Plaintiff recognizes that the Covid pandemic may eventually put the trial date itself beyond the Court's control, there is no just cause for extending the pretrial deadlines. Defendants' motion should be denied.

## II.    FACTS

This case involves the in-custody death of Sterling Higgins at the Obion County Jail. *See* ECF 1. The Plaintiff is Jennifer Louise Jenkins, the court-appointed Administrator *ad Litem*. *Id*. at ¶ 6. The parties in interest also include Mr. Higgins's two surviving daughters, both young minors, on whose behalf the Administrator brings this case. *Id*.

This case was filed nearly one year ago, and Defendants were quickly served with the summons and complaint. *See* ECF Nos. 9-16. All promptly appeared through experienced counsel. *See* ECF Nos. 17, 18 and 21-24. Later, within the requisite time, Plaintiff filed her First Amended Complaint—in which she subtracted certain legal claims rather than adding any new ones. *See* ECF 37.

While the case was still young, counsel for all parties met and conferred to plan the litigation pursuant to Federal Rule of Civil Procedure 26(f). *See* ECF 44. During that conference (held at a time when the coronavirus pandemic was a known reality), and as subsequently confirmed in the parties' Joint Discovery Plan and Report pursuant to Rule 26(f), counsel agreed

that the case should proceed pursuant to a Standard Track Scheduling Order. *Id*. Immediately following that conference, on May 28, 2020, Plaintiff served Defendants with written discovery requests, which was the first permitted date for doing so under Rule 26(d)(1). Declaration of Edwin S. Budge, ¶ 3.

On June 25, 2020, Plaintiff duly served Defendants with her comprehensive Initial Disclosures pursuant to Rule 26(a)(1). *See* ECF 39. *See also* Budge Decl., ¶ 4, Ex. A. These disclosures clearly identified possible witnesses. They described relevant documents in the possession of Plaintiff's counsel. And they disclosed the fact that Plaintiff sought significant general damages, punitive damages, and attorneys' fees. *Id*.

The Court held a scheduling conference on August 6, 2020. *See* ECF 46. All parties appeared through counsel. *Id*. Pursuant to the agreement of all counsel, the parties proposed a scheduling order to the Court on August 10, 2020. It was entered by the Court the same day. *See* ECF 48. By that time, the case was well underway, and the parties knew what needed to be done and by when.

The Court's scheduling order is standard. It set the final deadlines in the case and concluded by stating that it was entered "after consultation with the parties" and that "[a]bsent good cause shown, the deadlines set by this order will not be modified or extended." ECF 48 at p. 4. Notably, the Court's order required Plaintiff to disclose her expert witnesses by February 18, 2021. *Id*. at 2. It allowed Defendants an *additional* thirty days after that—until March 18, 2021—to disclose their experts. *Id*. And it provided plenty of time for discovery—all the way until March 18, 2021 for the completion of written discovery and until April 18, 2021 for the completion of depositions. Given that the opportunity for discovery was open immediately following the parties' Rule 26(f) conference in late May 2020, the Court's order provided nearly 10 months to complete written

discovery and nearly 11 months to complete depositions. These were the dates proposed by the parties, through their counsel with eyes wide open. And these were the dates ordered by the Court.

Plaintiff is represented by two small law firms—solo practitioner David Cooper and the two-lawyer firm of Budge & Heipt, PLLC. Budge Decl., ¶ 2. Plaintiff's counsel relied on the scheduling order. *Id*. at ¶ 5. As a small firm with a national concentration on in-custody death litigation, Plaintiff's out-of-state counsel carefully budgeted their time and planned their litigation obligations in other cases accordingly. *Id*. Plaintiff's counsel relied on the scheduling order's April 18, 2021 discovery cutoff and delayed the filing of other cases by several months and put off discovery in other cases to devote attention to the deadlines in this case. *Id*.

By the Fall of 2020, Plaintiff was in receipt of Defendants' responses to written discovery. Budge Decl., ¶ 6. Plaintiff's counsel then diligently proceeded with deposition discovery. *Id*. Recognizing that scheduling orders mean what they say and budgeting the requisite time, Plaintiff's counsel promptly took all the depositions they deemed necessary. *Id*. In October 2020, Plaintiff's counsel deposed the six primary fact witnesses in the case. *Id*. In Defendants' motion to continue the case schedule, they state: "During the week of October 26, 2020 *the parties* took six (6) party and fact witness depositions." ECF 71 at ¶ 7 (emphasis added). Wrong. Plaintiff took these depositions. Defendants took none. Budge Decl. at ¶ 7.

In fact, inexplicably, Defendants have thus far failed to take even a *single* deposition. Budge Decl. at ¶ 7. They've not taken a single deposition even though they've had Plaintiff's Initial Disclosures for approximately eight months and have long been aware of the universe of witnesses. It's not just that Defendants haven't deposed anyone—they haven't even ***tried*** to depose anyone. They haven't noted the deposition of the Plaintiff or any other witness. *Id*. at ¶ 8. They've issued no third-party deposition subpoenas. *Id*. at ¶¶ 7-8. And other than once asking for the

4

deposition of the Plaintiff, who was promptly made available—and then unilaterally cancelling that deposition on their own accord and never endeavoring to reschedule it in the following months—Defendants' counsel have not asked Plaintiff's counsel to set aside dates, help arrange for witness attendance, confer about a deposition schedule, or taken any other action consistent with a desire to depose any witnesses. *Id*. at ¶¶ 7-8. In short, though their moving papers now vaguely say that "Defendants anticipate conducting a total of at least ten (10) more (sic) fact witness depositions," ECF 71 at ¶ 7, this motion is the first Plaintiff's counsel has heard of such a plan. Budge Decl. at ¶ 8. Defendants have not informed the Court or counsel who these supposed ten witnesses might be, why they need to be deposed, or, more importantly, why they haven't taken any prior action to seek the depositions of these unidentified people. *Id*. at ¶ 8. We are left to guess—not just who they are, but why Defendants haven't made any effort to depose them before (or even now). *Id*. Nothing has ever stood in their way.

Regarding written discovery, Plaintiff has been diligent, timely, and as thorough as possible in responding to all Defendants' written discovery requests, which were first issued in August of 2020. Budge Decl., ¶ 9. Defendants make no contrary accusation.[2] In fact, just as they have been apathetic in taking depositions, they have been inattentive to paper discovery. They could have issued written discovery requests in May. But they waited until August. Then, when they asked for Plaintiff to sign and return multiple releases for third-party information, which she did, they inexplicably delayed for months before using those releases to request information from third parties.

---

[2] Defendants imply that Plaintiff's written discovery responses were "limited," though they stop short of claiming they were deficient. *See* ECF 71 at ¶ 4. In fact, Plaintiff was prompt and as thorough as possible in responding to Defendants' requests, and when defense counsel asked for supplementation of written responses that supplementation was provided within the agreed time—to the Defendants' apparent satisfaction. Budge Decl., at ¶ 9. Were it otherwise, Defendants would have moved to compel. They never did.

5

Specifically, on October 14, 2020, at the request of defense counsel, Plaintiff's counsel provided defense counsel with numerous requested releases for information, executed by the Plaintiff at their request, to allow Defendants' attorneys to send request for information to third parties. Budge Decl., ¶ 10. These included requested releases drafted by defense counsel for the decedent's employment records, social security records, medical records, and other records they wanted to gather. *Id*. In short, Plaintiff's counsel provided the Defense with *every* requested release—and did so despite the highly tenuous relevance of the information sought (given that Plaintiff has consistently and specifically disclaimed economic damages in the form of lost earnings). *Id*. at ¶ 11, Ex. A. But rather than diligently use these signed releases to request the desired information, Defendants apparently sat on many of them for up to *three months* before they even sent them out. *Id*. at ¶ 10, Exs. B-D. If there's been a delay in getting information back, that's the cause of it. And the information Defendants have been requesting with these releases is at the far reaches of potential relevance and probably beyond—e.g., high school transcripts from 20 years ago, old tax records, records from old employers and the like—in a case where they know economic damages are not being sought. *Id*. at ¶ 11.

Regarding expert witnesses, Plaintiff has no way of knowing what defense counsel have been doing with their time. Plaintiff's counsel, however, worked diligently to retain experts early, provide them with the requisite case information, and obtain Rule 26-compliant reports (and accompanying materials) for disclosure to Defendants by the Court's deadline. This involved great effort, particularly in January and early February of this year, and ultimately resulted in comprehensive reports that were disclosed to Defendants slightly *in advance* of the deadline. Budge Decl. at ¶ 14. Plaintiff's reports include two of the country's most well-regarded forensic pathologists, an emergency physician, a correctional/police practices expert, a correctional nursing

expert, and a forensic video analyst. *Id*. at Exs. G-L. Plaintiff duly disclosed these experts to Defendants on February 11, 2021. *Id*. at ¶ 14. The subject matter of their reports cannot possibly be a surprise given the subject of this case. Yet, Defendants' motion offers no reason why they can't do the same; indeed, they don't claim an inability to do so. And if they haven't started working with experts up to now, the case schedule has always allowed yet an additional 30 days for them to respond with their own disclosures. In short, the Defendants have had almost a full year to retain their own experts, and under the existing case schedule they have the built-in advantage of an additional five weeks from the time Plaintiff disclosed her own.

There are other misstatements in Defendants' motion that should be corrected here. For instance, Defendants state that "it is likely *the parties* will need to conduct at least twelve, if not more, expert depositions." ECF 71 at ¶ 8 (emphasis added). That's incorrect. Plaintiff's counsel is unlikely to need to take the depositions of any of the Defendants' retained experts, and we don't know why Defendants would represent that we do. Budge Decl. at ¶ 15. (Defendants can, of course depose Plaintiff's experts if they want to.) Defendants' motion also states that "*the parties* will not practically be able to complete discovery by the current deadlines." ECF 71 at ¶ 11 (emphasis added). That's also incorrect. Plaintiff has already completed written discovery, anticipates no further fact depositions, and is unlikely to depose experts retained by the defense. Budge Decl. at ¶¶ 15-16. In the unlikely event Plaintiff does decide to depose a defense expert or two following Defendants' disclosure, that can easily be done within the current schedule. *Id*. at ¶ 15.

Finally, regarding Defendants' "Certificate of Consultation," here are the facts: On February 5, 2021, Defense counsel telephoned Plaintiff's counsel. Budge Decl. ¶ 13. Most of the conversation was devoted the matters surrounding possible settlement. *Id.* At the end of the conversation, Defense counsel asked Plaintiff's counsel how he would feel about the possibility of

7

putting off some existing deadlines. *Id*. Plaintiff's counsel asked for specifics—which deadlines, what length, etc. *Id*. The defense had no specifics to provide. *Id*. Plaintiff's counsel stated that he couldn't respond without some specifics. *Id*. Defendants' counsel understood this and said he would call back after thinking about it. *Id*. On February 11th, Defense counsel sent an email to Plaintiff's counsel attaching a copy of a draft motion to continue all deadlines by 120 days (not the current 90 being requested) and asking for a response by the end of the day "so we can complete our certificate of consultation." *Id*. at ¶ 14 Plaintiff's counsel responded that day, declining to consent and serving Plaintiff's expert reports, the last of which had just been completed that morning. *Id*. Five days later, and without further consultation, Defendants filed the instant motion. *Id*.

### III.    LEGAL STANDARDS

Case scheduling "orders and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just and certain manner." *New Falls Corp. v. Soni*, No. 18-2768, 2020 U.S. Dis. LEXIS 94735 *13-14 (S.D.N.Y. May 29, 2020) (quoting *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988)). Scheduling orders at the heart of case management and are intended to move cases along a predictable forward path towards resolution on a level playing field. Therefore, a codified legal standard governs a party's request for a continuance—one Defendants don't even bother to mention. Specifically, the modification of case management scheduling orders is governed by Fed. R. Civ. P. 16(b)(4), which mandates that a "schedule may only be modified for good cause." That's an important phrase, and it means something.

The Sixth Circuit Court of Appeals directs that "a court choosing to modify the schedule upon a showing of good cause may only do so 'if it cannot reasonably be met despite the *diligence*

of the party seeking the extension.'" *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (quoting Fed. R. Civ. P. 16 1983 advisory committee notes) (emphasis added). Indeed, a party seeking to modify the case schedule must demonstrate to the Court "that despite [its] diligence [it] could not meet the original deadline." *Id*. at 907. "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management orders' requirements." *Bank of Am., N.A. v. Corporex Realty & Investment Corp.*, 661 F. Appx. 305, 317 (6th Cir. 2016) (quoting *Igne v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). A party opposing a continuance need not show prejudice, but prejudice may also be considered as an additional factor weighing against a continuance. *Leary*, 349 F.3d at 905-06. *See also*, *Fabery v. Mid-South Ob-Gyn, PLLC*, No. 06-2136 D/P, 2008 U.S. Dist. LEXIS 39679, *6 (W.D. Tenn. May 15, 2008) (good cause requires demonstrated inability to meet case schedule after diligent effort to do so by moving party); *Haley v. Kundu*, No. 1:11-cv-265, 2013 U.S. Dist. LEXIS 58597, *7 (E.D. Tenn. April 24, 2013) ("Although courts consider the potential for prejudice to the opposing party when entertaining motions to modify a scheduling order, a court asked to modify a scheduling order may only do so if the deadline could not 'reasonably be met despite the diligence of the party seeking the extension.'") (quoting *Marcilis v. Twp. Of Redford*, 693 F.3d 589, 597 (6th Cir. 2012)).

      Since Defendants also seek to put the trial off to some future, undefined date, it's worth pointing out that our local rules also address requested modifications to the trial date and contain the same "good cause" standard. *See* LR 16.5. And the local rule imposes an additional requirement: such continuances "shall be requested at the earliest time that the necessity for continuance appears to counsel."

## IV.  ARGUMENT

Defendants' motion should be denied because it doesn't demonstrate good cause. Defendants haven't shown diligence. Indeed, the evidence shows the opposite. Nor have they met their burden of showing that they can't reasonably meet the current case schedule's deadlines in the time remaining—their motion is devoid of any specifics and unsupported by the required facts. Likewise, Defendants failed to move for a trial continuance in a timely manner. And granting their requested relief would prejudice the Plaintiff.

### A.  Defendants Have Not Demonstrated Diligence and Cannot Do So

Defendants' motion is devoid of any showing of diligence. To support a motion of this nature, especially given that it's opposed by Plaintiff (and not even supported by all defense counsel), one would expect that Defendants would at least try to show that they have diligently attempted to meet the case schedule. Ideally, such as motion would be supported by a declaration of counsel explaining their diligent attempts to meet the required deadlines. At a bare minimum, the motion itself would attempt to demonstrate the ways in which the Defendants have been diligent. But they make no real attempt to do so.

Defendants' motion is unsupported by any declaration of counsel or other evidence. The motion itself is sparse. Regarding their written discovery requests, Defendants do not allege that Plaintiff was anything less than appropriately responsive—nor could they. Indeed, if Defendants had been able to make such an accusation, they would have filed a motion to compel. They never did so.

Regarding their claim to have been "forced" to make numerous records requests to third parties, such records requests are standard in most tort litigation and especially in wrongful death litigation. Conveniently, however, Defendants avoid telling the Court *when* they made these third-

10

party requests and avoid the fact that they waited months from their receipt of executed releases before even seeking records. Concerning the supposed lack of response from the Social Security Administration or other third parties, Defendants have not shown any evidence that they followed up on their tardy requests for information or, indeed, that the claimed delay was due to the Covid pandemic. And Defendants' motion is wholly devoid of any demonstration as to why this information is the slightest bit relevant to their defense—particularly because Plaintiff has specifically disclaimed economic damages in the form of lost earnings. It would defy logic to modify a scheduling order just so a party could gather evidence that will likely be excluded at trial.

Regarding depositions, Defendants' motion is similarly devoid of evidence demonstrating diligence. Rather than admit to the Court that they've simply failed to note even a single deposition or make any discernable effort to schedule depositions, they incorrectly state that "the parties" have taken depositions when, in fact, they've taken none. They've submitted not an ounce of evidence that their ability to take depositions was thwarted in any way, shape, or form. In fact, the only evidence is that they simply haven't bothered to try.

As to the expert disclosure deadline, Defendants motion is also strikingly lacking in information suggesting that they have been inhibited in any way whatsoever. The issues in this case have been well-defined from the start. Plaintiffs' counsel worked hard to retain experts, supply them with information, obtain reports, and disclose them in a timely way—even early. Defendants offer not a shred of information to suggest that they couldn't do the same. Indeed, the case schedule, which they submitted for the Court's approval, gave them many months to complete this task, and they still have time to do so (as of the date of this filing).

In short, Defendants haven't come close to demonstrating that their ability to adhere to the case schedule has been encumbered or obstructed in any way. They haven't shown diligence. The only evidence is that they've been unusually passive in trying to adhere to the deadlines.

### B.     Defendants Have Not Shown an Inability to Meet the Current Case Schedule

Just as Defendants have not shown diligence in trying to meet the case schedule, they've not shown a practical inability to do so. With regard to depositions, Defendants vaguely state that they "anticipate conducting a total of at least ten (10) more (sic) fact witness depositions."[3] Who are these people? Why don't they tell us who they want to depose and why they need to do so? And most importantly, why can't they take the depositions of whomever they wish in the weeks that remain? What's holding them up? Defendants provide no answers whatsoever.

Regarding experts, Defendants' motion is likewise empty of information. Defendants amorphously contend that they "anticipate disclosing at least [six] if not more experts." Fine. Why can't they do that between now and their longstanding March 18th deadline? They offer zero reason, even though the deadline was agreed to by them and has been in place for many months. They certainly don't suggest that their efforts to retain experts (which they should have been making months ago) have been obstructed in any way. And they still have several weeks left, with the added advantage of having received Plaintiffs' expert reports early. Indeed, the fact that they seek an extension for disclosing all experts rather than just one or two suggests that their problem is not one of inability but one of inattention.

Regarding third party records requests, even putting aside Defendants' unexplainable delay in seeking this information, Defendants do not contend that they won't get the information they've been asking for in coming weeks. They provide the Court with no anticipated schedule for when

---

[3]     Fed. R. Civ. P. 30(a)(2)(A)(i) only allows ten depositions unless leave of court is given to take more.

they might receive it. Though they reference a single example of not having yet obtained Social Security records due to "complications created by the COVID-19 pandemic," they make no effort whatsoever to explain why the records they're seeking are even relevant. And they overlook the fact that just because third-party information comes in after the discovery cutoff doesn't necessarily mean they can't use it.

In support of their motion to continue all deadlines, Defendants make representations that are simply false. They suggest, for example, that their remaining time will be partially consumed with *Plaintiff* conducting more discovery—stating that "at least twelve, if not more" experts will have to be deposed. But that's simply not correct. Defendants also imply that Plaintiff has more fact discovery to do and that their time will be consumed with defending these efforts. False again. Plaintiff is essentially finished with fact discovery, and her expert discovery will be exceedingly minimal if any.

Indeed, the simple fact that Defendants are seeking a continuance of *all* deadlines for *all* pretrial tasks, as well as the trial itself, shows that Defendants are not seeking relief due to their inability to complete any specific task within the time remaining but, rather, simply because they've largely neglected the case.

### C. A Continuance of Deadlines Would Prejudice Plaintiff

Plaintiff need not show prejudice—Defendants' failure to show good cause is enough to deny their motion. However, the fact is that Plaintiff would be prejudiced by the delay Defendants seek.

First, it should not be overlooked that the beneficiaries of this case include two young minors. Those children have a right to a timely resolution of the case. Thus far, the parties' efforts to settle the case have not been successful despite the efforts of a professional mediator. *See* ECF

13

67. Those efforts will likely resume, but continuing the deadlines will only encourage delay instead of reengagement. And, if the parties still can't settle, then the timeliest possible trial is the next-best thing (understanding the realities of the Covid pandemic).

More directly, Plaintiff and her counsel will be disadvantaged by the continuance Defendants seek. It would be grossly unfair to give Defendants the unwarranted luxury of three *additional* months to disclose experts—*after* having seen Plaintiff's expert reports. This would give them a major strategic advantage. Plaintiff's counsel worked exceedingly hard to obtain and disclose the required reports by the deadline and provided them slightly early. It is ironic that Defendants would only mention the possibility of a continuance of *their* deadlines on the very cusp of Plaintiff's expert disclosure deadline and then file for a continuance only after Plaintiff disclosed her experts.

Moreover, Defendants' motion ignores the reality of legal practice—particularly small firm practice. This is not the only in-custody death case being handled by Plaintiff's boutique firm. Plaintiff's counsel has other active in-custody death litigation. Budge Decl., ¶ 5. Plaintiff's counsel carefully budgeted their time and coordinated their obligations in other litigation in reliance on the scheduling order in this case. *Id*. Those other cases—one in particular—are set to heat up significantly with depositions in mid-to-late Spring at almost the same time discovery is set to close in this case. *Id.* That was deliberately planned out. Continuing the deadlines in this case would interfere with the delicately-planned calendar of Plaintiff's counsel—unfairly shifting the burden of balancing counsel's caseload and interfering with counsel's obligation to other clients.

### D. Defendants Did Not Move in a Timely Manner

Finally, Defendants provide no information to suggest that their motion for a continuance was made "at the earliest time that the necessity for continuance appears to counsel." In fact, if

Defendants had reason to think they needed more time they could have moved much earlier—certainly before Plaintiff's expert report deadline was on the doorstep.

## V. CONCLUSION

For the reasons stated above, this Court should deny Defendants' motion for a continuance.

DATED this 18th day of February, 2021.

**THE LAW OFFICE OF DAVID L. COOPER, PC**

 /s/ David L. Cooper
**DAVID L. COOPER, BPR # 11445**
Third Avenue North Building
208 Third Avenue, North, Suite 300
Nashville, TN 37201
dcooper@cooperlawfirm.com
(615) 256-1008


**BUDGE & HEIPT, PLLC**

 /s/ Edwin S. Budge
**EDWIN S. BUDGE**
*Washington State Bar No.* 24182
**ERIK J. HEIPT**
*Washington State Bar No.* 28113
808 E. Roy St.
Seattle, Washington 98102
ed@budgeandheipt.com
erik@budgeandheipt.com
(206) 624-3060

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the date stated below this document was filed with the Clerk of the Court for the United States District Court for the Western District of Tennessee, Eastern Division, via the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Michael R. Hill (#17409)
W. Michael Varnell, II (#33602)
Flippin, Collins & Hill, PLLC
P.O. Box 679
Milan, TN 38358-0679
Telephone: (731) 686-8355
mh_fch@bellsouth.net
wmv_fch@bellsouth.net
Attorneys for Union City Police Department and Union City, Tennessee

John D. Burleson - #010400
Dale Conder, Jr., #15419
Rainey, Kizer, Reviere & Bell, PLC
209 East Main Street
P. O. Box 1147
Jackson, TN 38302-1147
(731) 423-2414
jburleson@raineykizer.com
dconder@raineykizer.com
mcourtner@raineykizer.com
Attorneys for Robert Thomas Osborne, Individually

William B. Mauldin (#022912)
Nathan D. Tilly (#031318)
Pentecost, Glenn & Mauldin, PLLC
162 Murray Guard Drive, Suite B
Jackson, TN 38305
Phone: (731) 668-5995
Fax: (731) 668-7163
wmauldin@pgmfirm.com
ntilly@pgmfirm.com
Attorneys for Obion County Sheriff's Department, Mary Brogglin, Waylon Spaulding, and Brendon Sanford

Dated this 18th day of February, 2021.

*/s Edwin S. Budge*
Edwin S. Budge