# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| **JENNIFER LOUISE JENKINS,** *Administrator ad Litem of the* **ESTATE OF STERLING L. HIGGINS,** | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| **OBION COUNTY, TENNESSEE,** *et al.*, | ) ) |
| Defendants. | ) ) ) |

NO. 20-cv-01056 STA-atc

## DECLARATION OF EDWIN S. BUDGE

EDWIN S. BUDGE declares as follows:

1.  I am over the age of 18. I have personal knowledge of the facts in this declaration and am competent to testify about them.

2.  I am one of the attorneys representing the plaintiff in this case, along with my Tennessee co-counsel, David L. Cooper. Mr. Cooper is a sole practitioner. I am a member of a two-attorney law firm, Budge & Heipt, PLLC. I have been practicing law continuously for approximately 27 years. For the last 20 years or so, my firm and I have focused almost exclusively on litigation of in-custody death claims under 42 U.S.C. § 1983. I have litigated numerous such cases from start to finish in at least ten federal district courts around the country. Most of our cases involve deaths that occur in county jails and other correctional facilities, and the vast majority are federal court actions governed by a case schedule pursuant to Fed. R. Civ. P. 16.

3. On May 28, 2020, I participated in the parties' discovery conference pursuant to Rule 26(f). During that conference, counsel for all parties agreed that the case should proceed according to this Court's Standard Track Scheduling Order. Following that conference, also on May 28th, I served Defendants' counsel with Plaintiff's First Discovery Requests.

4. On June 25, 2020, I served defense counsel with Plaintiff's Initial Disclosures pursuant to Rule 26(a)(1). A true and correct copy of Plaintiff's Initial Disclosures is attached hereto as Exhibit A.

5. Due to the small size of my law firm and my extensive experience in federal court litigation, I find it necessary to rely on Rule 16 case schedules to carefully budget my time and meet my clients' various litigation obligations. I use each case schedule to plan my time and arrange my calendar to meet every deadline in every case I handle. The Court's case schedule in this case was issued on August 10, 2020. *See* ECF 48. Upon receipt of that case schedule, I calendared every deadline and relied on those deadlines as being firm. Of particular importance were the deadline for expert disclosures (February 18, 2021 for Plaintiff and March 18, 2021 for Defendants) and the final discovery cutoff of April 18, 2021. Recognizing that a very substantial portion of our firm's work would be devoted to the instant case between the time of the case schedule's issuance and the close of discovery, my law partner and I arranged our other cases accordingly. We held off filing and serving two other in-custody wrongful death cases by a period of several months so I could devote my attention to this case. On a separate in-custody death case, I delayed aggressively pursuing discovery by several months to focus on meeting this Court's expert disclosure deadline and completing discovery in the time allotted. In that separate case, I recently began efforts to schedule depositions for the time after discovery in this case was set to

close. I expect to be occupied with many depositions in that case from approximately mid-April to late May of 2021.

6. I gave full attention to the instant case throughout the fall months of 2020 and into the first months of this year. By October 2020, I was in receipt of Defendants' responses to written discovery, given to us after we agreed, out of professional courtesy, to extensions requested by Defendants. With my co-counsel, I identified fact witnesses whose depositions we regarded as necessary. In October of 2020, my co-counsel and I deposed the six primary fact witnesses in this case, which included each of the individual defendants.

7. No defendant in this case has ever taken a single deposition. Defense counsel has never formally noted a single deposition. Defense counsel has issued no third-party deposition subpoenas.

8. The only deposition defense counsel has ever attempted to set with Plaintiff's counsel is that of the Plaintiff—the Administrator *ad litem*, Jennifer Jenkins. Defense counsel asked us to make our client, Ms. Jenkins, available for a deposition on November 5, 2020. We indicated that we would. We held the date. Ms. Jenkins was prepared to appear and give her deposition on that date. However, on October 23, 2020, Defense counsel told me via email that they did not want to take Ms. Jenkin's deposition on that date and that they would "reschedule that deposition with [us] in the near future." In the nearly four months since, they have never attempted to reschedule it. And other than that single aborted effort, defense counsel has never asked us to hold dates for depositions, coordinate depositions with witnesses, or coordinate depositions with us. In February of this month, defense counsel suggested to me in a phone call that they might want to depose Mr. Higgins's estranged wife and the mother of one of his children. I said that would be fine but never heard back. I have no other idea who defense counsel might want to depose

3

or why they have not taken any depositions to date. I have never been informed by defense counsel that they wanted to depose anywhere near ten fact witnesses, and, if they do, I do not know who these witnesses might be.

9. Plaintiff has been diligent, timely, and thorough in responding to Defendants' written discovery requests, which were first issued to us by Defendants in August 2020. When defense counsel asked for supplementation of those responses, we gave them the supplemental information within the agreed time.

10. At the request of defense counsel, my co-counsel obtained and provided signed releases so that that Defendants could gather information about the decedent from third parties. On October 14, 2020, my co-counsel provided defense counsel with all the executed releases Defendants asked for, including Medicare releases, medical releases, employment records releases, and every other requested release. I know from subsequent correspondence that defense counsel did not use some of these releases for approximately three months. For example, Exhibit B is a true and correct copy of a records request sent by the offices of defense counsel to one of the decedent's former employers. The letter is dated January 15, 2021—about three months after the release was given to defense counsel. As another example, Exhibit C is a true and correct copy of a letter sent by the office of defense counsel to one of the decedent's former behavioral health providers. That letter is also dated January 15, 2021—also about three months after the release was given to defense counsel. Exhibit D is a true and correct copy of a subpoena served by the office of defense counsel to the decedent's high school from about 20 years before his death. The subpoena was not served until January 21, 2021—more than three months after we returned the requested releases to defense counsel. When I first saw Defendants' proposed motion for continuance, I became interested in learning more about when defense counsel requested other

4

records using the releases we provided. On February 12, 2020 and again on February 15, 2021, I emailed defense counsel asking them to provide me with copies of all the records requests they sent using the releases we provided months earlier so that I could see how long they waited to send all their records requests and to whom those requests were sent. True and correct copies of my emails are attached hereto as Exhibits E and F. To date, defense counsel has not responded.

11. Plaintiff has formally disclaimed any recovery in this case for purely economic damages such as lost future earnings to the estate of the decedent. For example, in Plaintiff's Initial Disclosures, Plaintiff stated that "lost future earnings will not be sought by the estate." *See* Exhibit A at p. 8. Plaintiff is not seeking lost earnings, lost net accumulation, or other purely economic damages of that sort. We have given releases to the defendants despite this and despite our belief that the decedent's past earnings, high school grades, old tax records, and similar information is irrelevant.

12. I retained expert witnesses on behalf of the Plaintiff and did so early in the case. In the fall of 2020 and in January and early February of 2021, I worked exceedingly hard to obtain Plaintiff's Rule 26-compliant expert reports and accompanying information for disclosure to defense counsel. Plaintiff's experts include two highly regarded forensic pathologists (including one of the forensic pathologists involved in the investigation into the cause of George Floyd's death), a police and correctional practices expert, a correctional nursing expert, an emergency physician, and a forensic video analyst. These reports were generally completed in January 2021 and the last one was completed on February 11, 2021. Attached hereto are true and correct copies of those reports. Exhibit G is the report of Michael Leonesio and accompanying disclosure information. Exhibit H is the report of J.C. Upshaw Downs, M.D. (in partially redacted form to remove autopsy photos that some people might find disturbing) and accompanying disclosure

information. Exhibit I is the report of Allecia Wilson, M.D. and accompanying disclosure information. Exhibit J is the report of Lori Roscoe, Ph.D., and accompanying disclosure information. Exhibit K is the report of Conor McCourt and accompanying disclosure information. Exhibit L is the report of Matthew DeLaney, M.D., and accompanying disclosure information.

13. On February 5, 2021, I received a phone call from defense counsel, William Mauldin and Nathan Tilly. Most of the conversation was devoted to matters surrounding possible settlement. At the end of the conversation, counsel asked me how I would feel about the possibility of putting off some existing deadlines. I responded by asking for specifics, such as which deadlines and what length. Counsel had no specifics to provide in response to my inquiry. I stated that I could not respond to the idea because it was too general and that I would need to know specifics. Counsel said they would call back another time once they thought about it. They have never called me back.

14. On February 11th, defense counsel sent me an email attaching a copy of a draft motion to continue all deadlines by 120 days (not the current 90 being requested) and asking for a response by the end of the day "so we can complete our certificate of consultation." I responded that day, declining to consent. Given that our last expert report had just been completed that morning, and given that the deadline was imminent anyway, I served Plaintiff's expert reports at that time. I did so by emailing each report (Exhibits G through L) to all defense counsel along with Plaintiff's Disclosure of Primary Expert Witnesses (a true and correct copy of which is attached hereto as Exhibit M). That same day, I also mailed flash drives to each office of defense counsel containing the work product of our video forensic analyst. Five days later, without further consultation, Defendants filed their motion for continuance.

15. Defendants' motion states: "[I]t is likely *the parties* will need to conduct at least twelve, if not more, expert depositions." ECF 71 at ¶ 8 (emphasis added). That is not true. In my federal court practice, I typically forego taking expert depositions due to the comprehensive disclosure requirements already mandated by Rule 26, which, by design, reduces the need for them. I do not anticipate the need to take the depositions of any of the Defendants' retained experts, and I have never indicated to defense counsel that I intend to do so. There is an outside chance I will want to depose a defense expert or two following Defendants' disclosures, but if I make that decision, I can easily complete them by the close of discovery as currently set. Defendants can, of course, depose Plaintiff's experts if they want to.

16. Defendants' motion also states that "the *parties* will not practically be able to complete discovery by the current deadlines." ECF 71 at ¶ 11 (emphasis added). That is also incorrect. Plaintiff has already completed written discovery, and I anticipate no further fact depositions.

I swear under penalty of perjury under the laws of the United States that the above is true and correct.

DATED this 18th day of February, 2021 at Seattle, Washington.

                                                            */s/ Edwin S. Budge*
                                                            Edwin S. Budge

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the date stated below this document was filed with the Clerk of the Court for the United States District Court for the Western District of Tennessee, Eastern Division, via the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Michael R. Hill (#17409)
W. Michael Varnell, II (#33602)
Flippin, Collins & Hill, PLLC
P.O. Box 679
Milan, TN 38358-0679
Telephone: (731) 686-8355
mh_fch@bellsouth.net
wmv_fch@bellsouth.net
Attorneys for Union City Police Department and Union City, Tennessee

John D. Burleson - #010400
Dale Conder, Jr., #15419
Rainey, Kizer, Reviere & Bell, PLC
209 East Main Street
P. O. Box 1147
Jackson, TN 38302-1147
(731) 423-2414
jburleson@raineykizer.com
dconder@raineykizer.com
mcourtner@raineykizer.com
Attorneys for Robert Thomas Osborne, Individually

William B. Mauldin (#022912)
Nathan D. Tilly (#031318)
Pentecost, Glenn & Mauldin, PLLC
162 Murray Guard Drive, Suite B
Jackson, TN 38305
Phone: (731) 668-5995
Fax: (731) 668-7163
wmauldin@pgmfirm.com
ntilly@pgmfirm.com
Attorneys for Obion County Sheriff's Department, Mary Brogglin, Waylon Spaulding, and Brendon Sanford

Dated this 18th day of February, 2021.

*/s Edwin S. Budge*
Edwin S. Budge