*Jennifer Louise Jenkins, Administrator ad Litem of the Estate of Sterling L. Higgins*
*v. Obion County, Tennessee, et al.*

No. 20-cv-01056 STA-atc

Declaration of Edwin S. Budge

Exhibit H



# *forensX*, LLC *"To strive, to seek, to find – and not to yield."*

Medicolegal Consultants
Forensic Pathology & Lab Services
Courtroom Illustrations & Exhibits
Training & Continuing Education

**forensX**@comcast.net
www.**forensX**pert.com
**912-507-1008**

### CONSULTATION REPORT

**DATE:** 24 January 2021

**Attn:** Edwin S. Budge, Esq.
Budge & Heipt, PLLC
808 E. Roy St.
Seattle, WA 98102
206.624.3060
www.budgeandheipt.com

**CASE:** WTRFC #20-19-0508

**SUBJECT:**
**HIGGINS, Sterling**

Mr. Budge

Thank you for asking me to conduct this review. I have completed my evaluation of the case materials. Please see my attached report.

Should you have any questions and/or should I be able to be of any further assistance in this matter, please do not hesitate to contact me.

**J.C. Upshaw Downs, M.D.**
ABP-AP/CP/FP, FCAP, FASCP
F-AAFS, F-NAME, D-ABMDI

**EXPERT REPORT**

**A. Statement of observations and opinions expressed and the basis and reasons for them:**

1. **The autopsy and toxicology findings document multiple anatomic and laboratory findings.**

   The subject was a 37 year-old male, 68 inches & 169 pounds[1] (body mass index = 25.7 kg/m$^2$).

   The physical examination[2] documented "multiple blunt force injuries" on multiple body surfaces:

   > 3/4 inch red-brown abrasion right upper back
   > 1/4 inch red-brown abrasion right upper back
   > focal pale midsternal contusions
   > 1/2 inch red-brown linear abrasion lateral right wrist
   > multiple up to 1 inch linear red-brown abrasions lateral left forearm
   > multiple 1/4 inch red-brown abrasions right elbow
   > several up to 3/4 inch red-brown abrasions bilateral knees
   > several up to 1/2 inch red-brown abrasions dorsal bilateral feet
   > multiple up to 1/8 inch red-brown abrasions lateral distal right leg
   > 1 cm bleed left omohyoid muscle (internal)



   The subject was described[4] as having bilateral "hemorrhagic sclera" with a suggestion of petechial bleeds.



Indicia of therapy ("consistent with resuscitative efforts") were reported[9] to include:

    1 inch pink to purple contusions (X2) central chest

    pericardial hemorrhage

The cardiac examination[10] documented:

    345 gm weight

    myocardial bridging anterior descending artery

        begins 4 cm distal to aorta

        extends inferiorly for 3 cm

        up to 0.2 cm deep

valvular circumferences (cm)

    11 tricuspid

    7 pulmonic

    10 mitral

    5 aortic

ventricular wall thicknesses (cm):

    0.4 right

    1.2 left

    1.2 interventricular septum

        no histologic pathology diagnosis

The remaining respiratory system examination[11] documented:

    nasopharyngeal airways – no foreign material

    larynx & vocal cords – intact & unremarkable

    hyoid – intact

    lungs 890 gm combined (480 right/410 left)

        upper airway & bronchi unobstructed

        clear of debris & foreign material

        parenchymae

            red-purple & congested

            mild edema

            no focal lesions

The head & brain examination (fresh)[12] documented a weight of 1405 gm and found no lesion.

The remainder of the examination[13] was notable for a 2 by 2 cm right adrenal cortical adenoma.

Toxicology[14] on hospital blood was reported positive for:

    methamphetamine – 0.62 mg/L (therapeutic 0.01-0.3/toxic 0.12-5/lethal 0.09-64)[15]

    amphetamine – 0.039 mg/L (therapeutic 0.02-0.2/toxic 0.2-3/lethal 0.5-41)[16]

    delta-9-THC – 0.0056 mg/L

    11-hydroxy-delta-9-THC – 0.0015 mg/L

delta-9-carboxy-THC – 0.0011 mg/L

caffeine – not quantified

cotinine – not quantified

naloxone – not quantified

Postmortem vitreous analysis[17] documented:

    sodium – 143 meq/L

    chloride – 127 meq/L

    potassium – 14 meq/L

    urea nitrogen – 14 mg/dL

creatinine – 0.82 mg/dL
glucose – none detected

Tolerance is an important consideration with methamphetamine/amphetamine use.[18]

**Several points arise in review of the documentation.**

The examination was conducted by a Fellow in Forensic Pathology who was still in training and was *not* board certified in Forensic Pathology when the examination was conducted. Several routine steps for performance in in custody/police use of force cases were not described as performed or photodocumented as performed. This includes flaying of the anterior and posterior body surfaces to document the conditions there. Deep soft tissue injuries – particularly those in darkly pigmented subjects – may not be externally apparent and require extensive dissection to find and document any such subcutaneous soft tissue injuries. A complete, step-by-step photodocumentation of the anterior layered neck dissection and the posterior neck dissection is preferred. Similarly, inclusion of post-evisceration photography of the neck tissue block is ideal.

The higher neck structures (greater thyroid cornua and the hyoid) are not clearly visible in the existing photos.

The photodocumentation in the case is adequate but could be better, both in quality and quantity.

Many photos were taken in a forced "washed out mode" with the exposure adjustment up to +1.7 stops. These photos were purposefully changed, as the metadata indicates some were taken with no exposure bias change.[19]

The autopsy examination time reported is discordant with the photo metadata, as the report indicates a start time of 1000 hours[20] while the photos of the body were taken at varying times on 3/26/2019[21]

0643-0645 hours (#2-11)
0744-0757 hours (#12-100)
1040-1058 hours (#108-117)
1147-1157 hours (#120-126)
1235-1248 hours (#127-134)
1334-1350 hours (#135-142)

The left superolateral neck appears to have a possible small abrasion.



Redacted Due To Graphic Nature

Redacted Due To Graphic Nature

[22]

An additional indeterminate finding is photodocumented on the left posterolateral mandible.



At least one photo appears to document additional, unreported blood in the neck musculature.

2. **Documentation of the medicolegal death investigation investigative data is sparse and lacking clear enumeration of the data considered in formulating an opinion regarding cause and manner of death. It is unclear if the video evidence was viewed and to what (if any) extent these were considered in formulating the opinions expressed.**

The circumstances documented in the medical examiner investigation[25] indicated that the subject

> *…was found hiding in a freezer at a store…. [He] didn't resist arrest initially but got more paranoid and agitated in the police car and at the Obion County Jail. The victim had to be restrained and was held on the floor with an officer lying across*

> *him until he stopped resisting. The officers picked the victim up and he was unresponsive and called 911…. [D]eath was pronounced at 0252 hours….*

The autopsy summarized the circumstances:

> *While in custody, the decedent … [was] subdued by two male officers. He was placed in a holding cell and was found unresponsive shortly after.[26]*

The case summary further opined that

> *Based on the autopsy findings, reported circumstances, toxicology results and available investigative information, death was caused by excited delirium due to methamphetamine toxicity. Reports of the death scene investigation, circumstances surrounding and leading up to the death, and autopsy findings indicate the manner of death to be accident.[27]*

The assignment of cause and manner of death are medical opinions intended to convey the mechanism (cause) and circumstances (manner) surrounding death.

> *…[T]he mechanism of death[is] the physiologic and/or biochemical process by which the death came about.[28]*
>
> *Proper death certification begins with a fundamental understanding of cause and manner of death. The cause of death is the injury, disease, or combination of the two that initiates a train of physiological disturbances that, no matter how brief or prolonged, resulted in the fatal termination of an individual's life…. The immediate cause of death is the disease or injury present at the time of death that caused the person's death. The proximate cause of death is the original natural disease process, injury, or event that led to a string of unbroken train of events over an unlimited time that eventually led to the individual's death. The manner of death refers to the fashion in which the cause of death arose, and can be listed as natural, accident, suicide, or homicide…. [or] undetermined. The cause of death statement and the designation of the manner of death are opinions generated based on the total case investigation with careful synthesis and analysis of the available information.[29]*

The Pathologist must be cautious in over-interpretation of evidence and substituting opinion for fact for danger of Pygmalion effect. In cases where manner of death is questioned, all the case circumstances should be considered and not just the fatal mechanism, since different manners of death may present with identical anatomic findings.

> *The word accident … is commonly represented as "an event occurring by chance or from unknown causes, … especially one resulting in loss or injury"….[30]*
>
> *The term homicide commonly means "the killing of one human being by another" and encompasses every mode of violent death by which one person's life is taken by another. It has been legally defined as "the destruction of human life by the act, agency, procurement or culpable omission of some other person or persons." Homicide can result from either an act or the failure to perform an act. When the designation "homicide" is made, it does not necessarily mean that "murder" has been committed…. The medical examiner definition of homicide is simply that a person (or persons) killed another person…. The certification of a death as a homicide is purely a medical diagnosis.[31]*

In the context of this case, "intent" is irrelevant is determining a manner as homicide.. If the act(s) of (an)other(s) contributed to causing the death, the manner is properly designated as homicide – regardless of the relative amount of such contribution. "But for"

the act(s), the subject would not have died at that moment in time. Deference is given to the most unnatural element in assigning manner of death.[32]

> … [T]he fact that a police officer was applying force to the man's back and another was applying a choke hold, cannot and should not be ignored and it is reasonable to conclude that the forcible restraint contributed to this man's death.[33]
>
> If, in the forensic pathologist's opinion, any of the procedures/maneuvers involved in the restraint of the individual contributed to death, then the actions of another person or persons contributed to death, and an appropriate manner of death ruling is "homicide."[34]
>
> … [T]he "cause of death" section wherein a man was forcibly restrained by police officers, if the restraint is considered contributory to death, even if underlying cocaine-induced excited delirium is considered the major factor in death, it is appropriate to rule such a death a "homicide."[35]

There appears to have been minimal, if any, contemporaneous effort made to correlate scene circumstances and history with anatomic findings at autopsy.

In this case, critical import appears completely mis-assigned to the body, rather than the scene and to evidence evaluation, where the focus should have been.

> …[V]irtually every death investigation begins at the scene of the death, not in the laboratory. The scene and the circumstances found there are essential elements to the accuracy of the death investigation process. Without the information and evidence found at the death scene and in the story accompanying the death, the forensic pathologist is left with a dead body and perhaps little else.[36]
>
> In cases such as these, it is imperative that forensic pathologists are provided with all available information regarding the death, including witness statements, videotapes of the incident, detailed time lines of what happened and when it happened, etc.[37]

The timeline of behavior and outcome is clearly documented in the multiple case videos. The subject exhibited paranoid behavior and was alive. Minutes later, following the start of and during the uninterrupted continuation of restraint involving two officers – one of whom grabbed the subject's neck and one of whom stood on the subject's lower body – the subject died. The unresponsive subject received no immediate medical attention, which assured the subsequent outcome. Any opportunity to revive the subject was lost, since ideally trained medical help would have already been summoned prior to the fatal events, however, the second chance to summon medical aide was lost when no assistance was sought when the subject became limp following the restraint activities.

Since professionals recognize that death investigation clearly begins with the incident scene, there are national guidelines for how a scene investigation should be conducted.[38]

> The importance of a skilled investigation of the scene of death cannot be overestimated. Crucial information such as subject behavior, drug use history, a history or presence of psychosis, or the presence of hyperthermia, can facilitate the determination of whether the clinical features of ExDS [excited delirium syndrome] were present.[39]
>
> In summary, many factors need to be considered that either alone or in combination may lead to the death of a person either during or, more commonly, shortly after a violent struggle. These factors include drug toxicity, the physiologic effects of stress, mechanical, positional, or other forms of asphyxia ("restraint asphyxia"), trauma, natural disease, and occasionally psychiatric illness. Every situation is unique, and classification depends on a thorough investigation that

*includes a detailed, complete autopsy and toxicology. Depending on the circumstances of the case, the death may be attributed to the effects of asphyxia, drug toxicity, natural disease, or another factor. However, most of the time, the situation is more complex, involving different factors in combination, and the challenge lies in identifying which factors are significant and how they cumulatively resulted in the death of an individual.[40]*

The well-documented association between the entity of excited delirium (also called Excited Delirium Syndrome or ExDS/EDS) and sudden death in custody seems to have been applied to establish a cause of death opinion in this case without a sufficient foundation. The totality of this subject's death investigation findings lacks sufficient data to reasonably make a diagnosis of excited delirium, let alone reach a final conclusion of EDS as the cause of death.

*The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fifth edition (DSM-5) lists five key features that characterize delirium:*

*• Disturbance in attention (reduced ability to direct, focus, sustain, and shift attention) and awareness.*

*• The disturbance develops over a short period of time (usually hours to days), represents a change from baseline, and tends to fluctuate during the course of the day.*

*• An additional disturbance in cognition (memory deficit, disorientation, language, visuospatial ability, or perception).*

*• The disturbances are not better explained by another preexisting, evolving, or established neurocognitive disorder, and do not occur in the context of a severely reduced level of arousal, such as coma.*

*• There is evidence from the history, physical examination, or laboratory findings that the disturbance is caused by a medical condition, substance intoxication or withdrawal, or medication side effect.[41]*

While some of these features of delirium (not the subtype *excited* delirium) may have been present, the final criterion is not fulfilled in that no medical history, physical, or laboratory examination was conducted prior to death.

The subject lacked documented evidence of autonomic nervous system overload.

*… [D]elirium is a special type of confusional state characterized by increased vigilance, with psychomotor and autonomic overactivity; the delirious patient displays agitation, excitement, tremulousness, hallucinations, fantasies, and delusions. [42]*

The subject lacked hyperthermia and unusual strength. The subject appears to better fit the criteria of acute confusional state," as his only major observable behavioral change is paranoia.

*The term "acute confusional state" refers to an acute state of altered consciousness characterized by disordered attention along with diminished speed, clarity, and coherence of thought.[43]*

*Excited delirium is a distinct disorder and is characterized by the acute onset of violent and bizarre behavior such as incoherent shouting, paranoia, combativeness, hyperactivity, aggression, and the demonstration of extreme strength that is quickly followed by sudden death.[44]*

> *"Excited delirium" … [is] characterized by hyperthermia, superhuman strength, agitation, paranoia, delirium, and often sudden death. Many in-custody deaths have excited delirium as a major contributing factor.[45]*

The hallmarks of EDS are bizarre behavior and adrenergic overload.

> *…[D]elirium [is] characterized by autonomic nervous system activation (tachycardia, sweating, flushing, dilated pupils)[46]*

> *…[D]elirium is a special type of confusional state characterized by increased vigilance, with psychomotor and autonomic overactivity; the delirious patient displays agitation, excitement, tremulousness, hallucinations, fantasies, and delusions.[47]*

> *Victims of excited delirium are in an extremely heightened emotional state exhibiting marked paranoia and mounting irrational fear.[48]*

> *The clinical picture is one of an agitated and delirious state with autonomic dysregulation. It manifests through sympathetic hyper-arousal with frequent hyperthermia, vital sign abnormalities, and metabolic acidosis. For some, the clinical syndrome progresses to death.[49]*

> *These subjects are hyperaggressive with bizarre behavior, and are impervious to pain, combative, hyperthermic and tachycardic. There is typically a struggle with law enforcement that involves physical [force]….[50]*

> *…[E]xcited delirium, [is] a condition of acute agitated delirium and adrenergic excess….[51]*

> *… [Typical EDS cases have] a body temperature of around 104 degrees Fahrenheit and a heart weight of 405 grams. Many victims have rectal temperatures higher than 104 degrees Fahrenheit. Rhabdomyolysis may develop, and it is believed that hyperthermia and hyperactivity have important roles in its development.[52]*

> *The condition is characterized by agitation, hyperthermia (elevated body temperature), increased blood pressure, heart rate, and respiration, superhuman strength, paranoia, and various other psychiatric disturbances.[53]*

Although a repeated and important indicator of excited delirium, documented hyperthermia is *absent* here. In cases where hyperthermia actually does exist (again not the case here), a medical differential diagnosis process is invoked, indicating the dynamic process of medicolegal death investigation.

> *The differential diagnosis of such a hyperthermic condition includes environmental heatstroke and malignant hyperthermia. The diagnosis of heatstroke will usually be apparent from the environmental circumstances surrounding the death.[54]*

Significantly, the subject's behaviors are well documented and primarily limited to paranoid and confused behavior. The contemporaneously documented case data do not support a diagnosis of *Excited Delirium*. In fact, the unusual behaviors reported are limited and lack most of the key features reported in Excited Delirium.

> *To appropriately address these issues, as in any death investigation, detailed descriptions of the decedent and others involved in the incident are essential. A second-by-second account of the incident including the locations, actions, and effects of the actions of each of the participants is critical to properly evaluating the incident. Evidence of consciousness and volitional activity of the decedent following the release of any restraint hold or removal of weight from the chest is important to ascertain.[55]*

> *…[R]espiratory muscle fatigue resulting from exertion and struggle against restraints (exertion vs. position asphyxia) cannot be excluded….[56]*

The investigative and video evidence in this case is compelling. The subject initiated contact with law enforcement with a 911 call to which officers responded.[57]

The investigative information[58] documented unusual behavior on the subject's part prior to and following his being taken into custody. This included his presence in the freezer, actions, statements, and other behaviors. Throughout the subsequent interactions, the subject repeatedly displayed unusual behaviors which would be reasonably concerning for mental aberration. At one point, the officer(s) indicated that the subject might benefit from medical evaluation.[59] If EDS were present, it is well-established as a medical emergency and should have triggered a mandated medical workup.

> *ExDS is a unique syndrome which may be identified by the presence of a distinctive group of clinical and behavioral characteristics that can be recognized in the pre-mortem state. ExDS, while potentially fatal, may be amenable to early therapeutic intervention....[60]*

Behaviors typical in EDS cases are such that law enforcement officers should recognize and appropriately respond to cases.

> *...[T]he possibility of resultant sudden death renders it a medical emergency, requiring immediate attention. This necessitates a coordinated response among the criminal justice and medical communities.[61]*
>
> *It is important for LEOs to recognize that ExDS subjects are persons with an acute, potentially life-threatening medical condition.[62]*
>
> *Some of the goals of LEOs in these situations should be to 1) recognize possible ExDS, contain the subject, and call for EMS; 2) take the subject into custody quickly, safely, and efficiently if necessary; and 3) then immediately turn the care of the subject over to EMS personnel when they arrive for treatment and transport to definitive medical care. LEOs should be trained to recognize and manage subjects with ExDS.[63]*

Several law enforcement training issues have been identified regarding EDS cases.

- *Law enforcement officers [should] receive regular training in the use of authorized restraint tools to maintain an appropriate skill level;*
- *... [use] the least restrictive means of bringing the subject under control in the shortest period...;*
- *Individuals subject to restraint be moved from a prone handcuffing position to a sidelying or seated position as soon as possible;*
- *Law enforcement officers be cognizant of the potential for injury due to the use of restraints;*
- *Individuals displaying AHS symptoms are at risk of sudden death and such persons who must be restrained by any method should be considered as a medical emergency; vital signs must be closely monitored while awaiting medical care; and EHS should be called to the scene immediately, if possible before restraints are applied[64]*

The officer visibly engages with the subject with his hands both visible at the subject's neck area over a period of at least ~4 minutes, 30 seconds. During this time, the subject remains visibly without self-motion on camera for at least ~60 seconds during the interaction with the officer, until he is dragged away from the wall and towards the restraint chair.[65]




This occurred while another officer was positioned at the subject's lower body, as confirmed by the Officer in question (Osborne) in his interview with TBI wherein he acknowledged standing on the subject's lower body. This is visually confirmed during this portion of the video.





The subject remains visibly without self-motion on camera from transfer from the floor to and positioned in the restraint chair in the hallway for at least ~6 minutes, 30 seconds. The subject remains visibly without self-motion on camera seated in the restraint chair and transport to the hallway for at least ~20 minutes.[66,67]






During the course of the videos, the subject can be seen with apparent pulmonary edema fluid emanating from his airway. This is consistent with sudden death, specifically including those from asphyxia.

3. **The immediate cause of the subject's death was asphyxiation, involving neck compression (manually compromising the neck vasculature structures) combined with the physical interaction with another individual, resulting in increased autonomic nervous system stimulation.**

   **The mechanism by which this death occurred was asphyxiation (oxygen deprivation to the brain)compounded by an autonomic nervous system overload.**

   **The manner of death was homicide.**

   **Although horizontal restraint (supine) was present here, that feature in and of itself did not cause death.**

   The subject sustained significant neck trauma with significant bleeding into the muscle layers within the neck, near the airway. Additional reported physical stigmata of asphyxiation by strangulation (including conjunctival and mucosal petechial bleeds) were absent, as is not uncommon in strangulation case.

   Asphyxiation is a broad term indicating a lack of sufficient oxygen delivery to sustain life. There are several categories of asphyxia, depending upon how the brain's oxygen delivery/use is interrupted. Circulatory collapse resulting in failed delivery of sufficient oxygenated blood (via the carotid arteries) occurs in fatal strangulation. In this case, manual neck compression resulted in asphyxiation by carotid body stimulation and vascular compression with the net result of lack of sufficient oxygenated blood flowing to the brain. Such deaths are commonly encountered in Forensic Pathology practice and the mechanisms involved are well understood. Deaths involving strangulation, as in this case, are typically of a neurovascular (blood supply – vessels and barorecptors) phenomenon and not an airway issue. Such deaths involve compression of the superficial blood vessels in the (jugular vein and carotid artery) neck which provide blood circulation to the brain.

> *The carotid arteries, by virtue of their location, are easily compressed by direct pressure to the front of the neck. In contrast, the vertebral arteries are resistant to direct pressure....[68]*
>
> *Jugular veins and carotid arteries are more prone to occlusion by neck compression than the more deeply located vertebral arteries.[69]*
>
> *Occlusion of the vertebral arteries by neck compression seems virtually impossible despite some claims to the contrary.[70]*

Such instances can leave minimal to negligible anatomic evidence of trauma, as in this case.

The video[71] documents the officer gripping the subject's neck area/underside of the chin for an extended period of time. This compression can easily result in vascular compromise with as little as five pounds of pressure to compromise the jugular vein and complete cessation of arterial blood supply via the carotid artery with some six additional pounds of pressure (eleven pounds total).

> *The amount of force required to compress neck structures has been determined experimentally: jugular vein, 2 kg (4.5 lb); carotid artery, 5 kg (11 lb); trachea, 9 kg (20 lb); and vertebral artery, 30 kg (66 lb).[72]*

Here, the pressure to the anterolateral sides of the subject's neck compromised the corresponding subjacent jugular veins and carotid arteries as these lie close to the skin surface.



73

> *Compression of the neck causes vascular constriction. Narrowing of the carotid and vertebral arteries decreases flow of oxygenated blood to the brain; compression of the jugular veins diminishes flow of carbon dioxide and waste metabolites from the brain (stagnant hypoxia).[74]*
>
> *Occlusion of the neck veins... is almost solely responsible for the appearance of the 'classic' signs of congestion, cyanosis, oedema and petechiae above the line of constriction. The external jugular system is most vulnerable, but any significant pressure encircling the neck will also obliterate the lumen of the internal jugular system, causing a rapid rise in venous pressure in the head, especially if the carotid arteries are still patent....[75]*



*…[F]ive or six pounds of pressure per square inch suffice to occlude the carotid arteries and jugular veins. Thirty-two pounds are required to block the airway.[49]*

*The amount of pressure necessary to occlude the carotid arteries is approximately 11 lb; for the vertebral arteries it is 66 lb.[76]*

*The pressure necessary to compress and totally occlude the jugular veins is said to be around 4–5 pounds, compared to about 9–11 pounds for the carotid arteries, around 33 pounds for the trachea, and about 66 pounds for the vertebral arteries.[77]*

*The amount of force required to compress neck structures has been determined experimentally: jugular vein, 2 kg (4.5 lb); carotid artery, 5 kg (11 lb); trachea, 9 kg (20 lb); and vertebral artery, 30 kg (66 lb).[78]*

*The following weights have been observed to compress or damage neck structures: Jugular vein 2 kg (4.4 lb) Carotid artery 2.5 to 10 kg (5.5 to 22 lb) Airway (level of thyrohyoid membrane) 10 kg (22 lb) Trachea 15 kg (33 lb) Vertebral artery 8.2 to 30 kg (18 to 66 lb) Fractures: Thyroid cartilage lamina 14.3 kg (31.5 lb) Cricoid cartilage 18.8 kg (41 lb)[79]*

*Studies of fresh human larynges show that thyroid and cricoid cartilage fractures occur with the application of static forces averaging 15.8 and 20.8 kg (34.8 and 45.8 lb), respectively. Dynamic forces (velocities up to 11 mph or 18 km/h) cause fractures at forces averaging 30% more. Imminent structural collapse and severe fatal airway compromise occurred when the force averaged 55 kg (121 lb).[80]*

*…the strong cartilages of the larynx will resist all but the most extreme compression. … [T]he force needed to close the trachea was of the order 15 kg, far more than that required to occlude the blood vessels.[81]*

The formation of petechial bleeds requires an at least temporarily functional circulatory system.

*Cephalic petechiae imply incomplete or intermittent neck compression. Their absence, in the context of neck compression, means complete reduction of arterial and venous blood flow to the head.… [C]arotid sinus stimulation by neck compression leads to sudden death from vagal-induced cardiac arrest. In this scenario, cephalic petechiae are absent.[82]*

Loss of consciousness follows shortly after cessation of carotid artery blood flow.

*Experimental studies and witnessed (sometimes videotaped) events of neck compression (hanging and strangulation) indicate very rapid loss of consciousness after carotid artery compression.[83]*

Physiologically, the stress from the physical altercation would have impacted the subject's response and his potential survivability. Stress is cumulative in that a physically taxing state (such as with a physical altercation) physiologically results in higher oxygen consumption with exertion and simultaneously higher oxygen need.

> *The pathogenesis of excited delirium deaths is likely multifactorial and includes positional asphyxia, hyperthermia, drug toxicity, and/or catecholamine-induced fatal arrhythmias. …[T]hese deaths are secondary to stress cardiomyopathy…. This syndrome develops secondary to the toxic effects of high levels of catecholamines on either cardiac myocytes or on the coronary microvasculature.[84]*
>
> *Other factors may contribute to restraint-related death in people with excited delirium….[85]*
>
> *…[T]he greater oxygen requirement of people with excited delirium predisposes them to rapid anoxic death if they are restrained.[86]*
>
> *Since subjects with excited delirium require increased oxygen consumption, and since restraints may limit respiratory movements, … restraints in people with excited delirium predispose the subjects to rapid anoxic death by positional asphyxia.[87]*

**My above stated opinions are based on my review of the case materials, relevant literature, my medical training, and my 30+ years in forensic medical practice.**

**I hold my opinions in this case to a reasonable degree of medical and scientific certainty.**

**My opinions may be further supplemented by additional activities not yet completed in this matter, including but not limited to direct examination of material(s) from the case including but not necessarily limited to autopsy materials, scene materials, additional medical records of the decedent, case photographs and/or video, other studies & materials, testimony, investigative report(s), relevant literature, and other case data.**

**B. Facts or data considered in forming the above opinions:**

In addition to my background, training, education, and experience, the above opinions
are based upon facts and data contained within the following materials received for
review in this case:
    1. Higgins autopsy
        a. Autopsy report
        b. ME report
        c. Photos (144 files)
    2. Osborne discovery responses
        a. Employment file
        b. Higgins autopsy & toxicology
        c. Higgins incident report
        d. Responses to discovery requests
    3. Defendant's discovery responses
        a. Brogglin
        b. Obion County
        c. Obion County to entity's def.
        d. Sanford
        e. Spaulding
    4. Defendants' documents produced
        a. Employment files
            1) Brogglin
            2) Sanford
            3) Spaulding
        b. Policies and procedures
            1) Contingency plans
            2) Jail policy
        c. Training materials
            1) All training materials
            2) Brogglin & Spaulding 2019 training
            3) Brogglin training history
            4) Sanford training history
            5) Spaulding training history
        d. 1 Obion County Inspections
        e. Floor plan
        f. Public records request 1
        g. Use of force incident reports
    5. Higgins
        a. Documents: Higgins autopsy
        b. TBI Investigative file
        c. Pleadings: First amended complaint
        d. Videos – edited
            1) Close up of officer restraining sterling Higgins
            2) Close up of Higgins being transferred to restraint chair
            3) Slow motion of Higgins being transferred to restraint chair
        e. Videos – original
            1) 1 – arriving at jail – outside

         2) 2 – sally port
         3) 3 – hallway showing restraint, transfer to restraint chair, placement in cell, & medical response
         4) 4 – hallway showing restraint, transfer to restraint chair, placement in cell, & medical response
         5) 5 – cell
         6) 6 – outside – arrival of medical personnel
         7) Officer body cams
              a) a – Pocket's market
              b) b – Pocket's market
              c) c – Pocket's market
              d) d – Pocket's market
              e) e – Pocket's market
              f) f – Pocket's market

6. Conor McCourt Video materials
    a. Enhancements
    b. Extracted video still images

7. Depositions
    **a. Jail Officers**
        **1) Spaulding**
        **2) Brogglin**
        **3) Sanford**
        **4) Travis**
    **b. Union City Police**
        **1) Officer Orsborne**
        **2) Sergeant Simmons**

**C. Fee Schedule**

    See attached.

**D. Prior testimony**

    See attached.

**E. References**

    See attached.

**J.C. Upshaw Downs, M.D.**
ABP-AP/CP/FP, FCAP, FASCP
F-AAFS, F-NAME, D-ABMDI

**REFERENCES**

[1] *Autopsy report #2019-0508 WTRFC*
[2] *Autopsy report #2019-0508 WTRFC*
[3] *Photo 719file128*
[4] *Autopsy report #2019-0508 WTRFC*
[5] *Photo 719file53*
[6] *Photo 719file56*
[7] *Photo 719file55*
[8] *Photo 719file59*
[9] *Autopsy report #2019-0508 WTRFC*
[10] *Autopsy report #2019-0508 WTRFC*
[11] *Autopsy report #2019-0508 WTRFC*
[12] *Autopsy report #2019-0508 WTRFC*
[13] *Autopsy report #2019-0508 WTRFC*
[14] *NMS LABS report workorder 19089562 Higgins, Sterling*
[15] *https://www.ocme.dhhs.nc.gov/toxicology/index.shtml*
[16] *https://www.ocme.dhhs.nc.gov/toxicology/index.shtml*
[17] *NMS LABS report workorder 19089562 Higgins, Sterling*
[18] *https://www.ocme.dhhs.nc.gov/toxicology/index.shtml*
[19] *Photos 719file metadata*
[20] *Autopsy report #2019-0508 WTRFC*
[21] *Photos 719file metadata*
[22] *Photo 719file42*
[23] *Photo 719file45*
[24] *Photo 719file132*
[25] *Report of Investigation by County Medical Examiner MEC2019-0508*
[26] *Autopsy report #2019-0508 WTRFC*
[27] *Autopsy report #2019-0508 WTRFC*
[28] *Dolinak D, et al. Forensic Pathology Principles and Practice.*
[29] *Dolinak D, et al. Forensic Pathology Principles and Practice.*
[30] *Dolinak D, et al. Forensic Pathology Principles and Practice.*
[31] *Dolinak D, et al. Forensic Pathology Principles and Practice.*
[32] *Dolinak D, et al. Forensic Pathology Principles and Practice.*
[33] *Prahlow J. Forensic Pathology for Police, Death Investigators, Attorneys, and Forensic Scientists. Humana Press Inc., Totowa, NJ*
[34] *Prahlow J. Forensic Pathology for Police, Death Investigators, Attorneys, and Forensic Scientists. Humana Press Inc., Totowa, NJ*
[35] *Prahlow J. Forensic Pathology for Police, Death Investigators, Attorneys, and Forensic Scientists. Humana Press Inc., Totowa, NJ*
[36] *https://www.thename.org/assets/docs/NAME%20e-book%202016%20final%2006-14-16.pdf*
[37] *Prahlow J. Forensic Pathology for Police, Death Investigators, Attorneys, and Forensic Scientists. Humana Press Inc., Totowa, NJ*
[38] *Death Investigation: A Guide for the Scene Investigator, https://www.ncjrs.gov/pdffiles1/nij/234457.pdf*
[39] *White Paper Report on Excited Delirium Syndrome. ACEP Excited Delirium Task Force. September 10, 2009*
[40] *Dolinak D, et al. Forensic Pathology Principles and Practice.*
[41] *Diagnosis of delirium and confusional states - UpToDate*
[42] *Diagnosis of delirium and confusional states - UpToDate*
[43] *Diagnosis of delirium and confusional states - UpToDate*
[44] *Dolinak D, et al. Forensic Pathology Principles and Practice.*
[45] *Prahlow J. Forensic Pathology for Police, Death Investigators, Attorneys, and Forensic Scientists. Humana Press Inc., Totowa, NJ*
[46] *Diagnosis of delirium and confusional states - UpToDate*
[47] *Diagnosis of delirium and confusional states - UpToDate*
[48] *Mash DC. Excited Delirium and Sudden Death: A syndromal Disorder at the Extreme End of the Neuropsychiatric Continuum. Front. Physiol. (2016) 7:435.*
[49] *White Paper Report on Excited Delirium Syndrome. ACEP Excited Delirium Task Force. September 10, 2009*
[50] *White Paper Report on Excited Delirium Syndrome. ACEP Excited Delirium Task Force. September 10, 2009*
[51] *Assessment and emergency management of the acutely agitated or violent adult - UpToDate*
[52] *Dolinak D, et al. Forensic Pathology Principles and Practice.*
[53] *Prahlow J. Forensic Pathology for Police, Death Investigators, Attorneys, and Forensic Scientists. Humana Press Inc., Totowa, NJ*
[54] *Dolinak D, et al. Forensic Pathology Principles and Practice.*
[55] *https://emedicine.medscape.com/article/1988699*
[56] *Takeuchi A, et al. Excited Delirium. West J Emerg Med. 2011;12(1):77-83.*
[57] *TBI investigative file*
[58] *TBI investigative file*
[59] *Sgt Simmons*
[60] *White Paper Report on Excited Delirium Syndrome. ACEP Excited Delirium Task Force. September 10, 2009*

[61] *Special Panel Review of Excited Delirium. Less-Lethal Devices Technology Working Group. NIJ Weapons and Protective Systems Technologies Center. Institute for Non-Lethal Defense Technologies. Applied Research Laboratory. The Pennsylvania State University.*

[62] *White Paper Report on Excited Delirium Syndrome. ACEP Excited Delirium Task Force. September 10, 2009*

[63] *White Paper Report on Excited Delirium Syndrome. ACEP Excited Delirium Task Force. September 10, 2009*

[64] *Kutcher S, et al. Panel of Mental Health and Medical Experts Review of Excited Delirium. Nova Scotia Department of Justice Public Safety. https://novascotia.ca/just/public_safety/_docs/Excited%20Delirium%20Report.pdf*

[65] *Video 3 Hallway showing restraint, transfer to restraint chair, placement in cell, and medical response*

[66] *Video 5 - cell*

[67] *Video 3 Hallway showing restraint, transfer to restraint chair, placement in cell, and medical response*

[68] *DiMaio DJ & DiMaio VJM. Forensic Pathology, Second Edition. 2001. CRC*

[69] *Sauvageau A, et al. Agonal Sequences in Eight Filmed Hangings: Analysis of Respiratory and Movement Responses to Asphyxia by Hanging. J Forensic Sci, September 2010, Vol. 55, No. 5 doi: 10.1111/j.1556-4029.2010.01434.x*

[70] *Sakko P & Knight B, editors. Forensic Pathology, Third Edition, 2004. Arnold – Headline Group, LONDON*

[71] *Video 3 Hallway showing restraint, transfer to restraint chair, placement in cell, and medical response*

[72] *Shkrum MJ & Ramsay DA. Forensic Science and Medicine: Forensic Pathology of Trauma: Common Problems for the Pathologist. Humana Press Inc., Totowa, NJ*

[73] *http://www.melissaturk.com/_poplarge.asp?imgid={A31FE406-ED28-450D-9259-A9E71F2567BF}*

[74] *Shkrum MJ & Ramsay DA. Forensic Science and Medicine: Forensic Pathology of Trauma: Common Problems for the Pathologist. Humana Press Inc., Totowa, NJ*

[75] *Sakko P & Knight B, editors. Forensic Pathology, Third Edition, 2004. Arnold – Headline Group, LONDON*

[76] *DiMaio DJ & DiMaio VJM. Forensic Pathology, Second Edition. 2001. CRC*

[77] *Prahlow J. Forensic Pathology for Police, Death Investigators, Attorneys, and Forensic Scientists. Humana Press Inc., Totowa, NJ*

[78] *Shkrum MJ & Ramsay DA. Forensic Science and Medicine: Forensic Pathology of Trauma: Common Problems for the Pathologist. Humana Press Inc., Totowa, NJ*

[79] *Shkrum MJ & Ramsay DA. Forensic Science and Medicine: Forensic Pathology of Trauma: Common Problems for the Pathologist. Humana Press Inc., Totowa, NJ*

[80] *Shkrum MJ & Ramsay DA. Forensic Science and Medicine: Forensic Pathology of Trauma: Common Problems for the Pathologist. Humana Press Inc., Totowa, NJ*

[81] *Sakko P & Knight B, editors. Forensic Pathology, Third Edition, 2004. Arnold – Headline Group, LONDON*

[82] *Shkrum MJ & Ramsay DA. Forensic Science and Medicine: Forensic Pathology of Trauma: Common Problems for the Pathologist. Humana Press Inc., Totowa, NJ*

[83] *https://emedicine.medscape.ca/article/1988699*

[84] *Otahbachi M, et al. Excited Delirium, Restraints, and Unexpected Death A Review of Pathogenesis. Am J Forensic Med Pathol. Volume 31, Number 2, June 2010. 107-12*

[85] *Pollanen MS, et al. Unexpected death related to restraint for excited delirium: a retrospective study of deaths in police custody and in the community. CMAJ. JUNE 16, 1998; 158 (12) 1603-7.*

[86] *Pollanen MS, et al. Unexpected death related to restraint for excited delirium: a retrospective study of deaths in police custody and in the community. CMAJ. JUNE 16, 1998; 158 (12) 1603-7.*

[87] *Otahbachi M, et al. Excited Delirium, Restraints, and Unexpected Death A Review of Pathogenesis. Am J Forensic Med Pathol. Volume 31, Number 2, June 2010. 107-12*



**forensX, LLC**

*"To strive, to seek, to find – and not to yield."*

**Medicolegal Consultants**
**Forensic Pathology & Lab Services**
**Courtroom Illustrations & Exhibits**
**Training & Continuing Education**

**forensX@comcast.net**
**www.forensXpert.com**
**912-507-1008**

*BIOGRAPHY*

*29 September 2020*

James Claude Upshaw ("Jamie") Downs MD (ABP-AP/CP/FP, F-CAP, F-ASCP, F-AAFS, F-NAME, D-ABMDI) has been a Medicolegal Consultant & practicing Forensic Pathologist/Medical Examiner for over 31 years. His medical practice includes serving as the Medical Director of the Physician Assistant Program at Charleston Southern University. Dr. Downs also serves as Associate Medical Examiner for Gwinnett County Georgia. His service work includes the Cold Case foundation, examining unresolved complex cases. He routinely consults in clinical and postmortem cases, including those involving traumatic force & the vulnerable. Dr. Downs was Director of the Alabama Department of Forensic Sciences, leading Alabama's statewide forensic laboratory system while also serving as the state's first Chief Medical Examiner. Downs was graduated from the University of Georgia (*magna cum laude* & *Phi Beta Kappa*). He received his Doctor of Medicine degree, Medical Residency training in Anatomic & Clinical Pathology, & Fellowship in Forensic Pathology from the Medical University of South Carolina (in his hometown of Charleston). The latter included a rotation at the Metropolitan Dade County Florida (Miami) Medical Examiner Department. Dr. Downs completed Peace Officers Standards & Training at the Southwest Alabama Police Academy, receiving distinction as class president, top academic student, & best defensive driver. Downs has been a Medical Examiner for Charleston County South Carolina/the Medical University of South Carolina, the state of Alabama, & the Georgia Bureau of Investigation. He completed an internship at the Behavioral Sciences Unit, FBI Academy in Quantico, Virginia & was named as a Consultant for the FBI Behavioral Sciences Unit, for whom he authored "the Forensic Investigator's Trauma Atlas." Downs was senior editor & author for "Ethics in Forensic Science" – the preeminent treatise on the subject. He has appeared in numerous national television broadcasts (multiple televised trials, *Secrets of the Morgue*, National Geographic, C-SPAN, *The New Detectives: Case Studies in Forensic Science*, *Forensic Files*, *Street Stories*, *Dateline*, & *48 Hours*) & consulted on forensic movies, television (*Rosewood*), & books (including best-selling author Patricia Cornwell). Significant cases have included the Georgia tristate Crematory case (where he personally identified over 330 sets of decomposed remains) & the *H.L. Hunley* autopsies (the first successful combat submarine in world history). Dr. Downs was the Pathologist on South Carolina's first ever capital murder DNA trial. His professional activities have included service on numerous professional boards & committees. For over a decade, Dr. Downs taught Forensic Autopsy Pathology for the Mercer University School of Medicine & South University (Savannah), the latter for whom he also taught the Clinical Pathology course. Downs also serves as a Clinical Laboratory Director. He is widely regarded for his ability to convey complex medicolegal findings & concepts, via both testimony & courtroom illustrations. Dr. Downs has worked extensively on national forensic political issues, including directly with former US Senator & US Attorney General Jeff Sessions to create & pass the *Paul Coverdell Forensic Science Improvement Act*. At the then Senator's request, Downs testified in support of the bill before Congress. He testified (twice) before the US National Academy of Sciences Committee on Science, Technology, & the Law's Forensic Science Committee regarding medicolegal death investigation & forensics in what became their groundbreaking report: *Strengthening Forensic Science in the United States: A Path Forward* (2009) & before the National Commission on Forensic Science. Dr. Downs has lectured hundreds of times & has presented at numerous national & international meetings in the fields of Forensic Pathology & scene interpretation/reconstruction, including at the National Forensic Academy & at the FBI's National Academy. His audiences have included law enforcement, social services, attorneys (prosecution & defense), judges, university undergraduate & pre-professional students, medical personnel, & graduate medical audiences. His areas of special interest include ethics, asphyxiation, child/elder abuse/neglect, the vulnerable, & police use of force. He has testified hundreds of times, including before state & federal courts, the US Military Justice system, committees of both the US Senate & House of Representatives, & the National Commission on Forensic Sciences. He has been qualified as an expert in numerous areas, including forensic pathology & scene reconstruction.

**1 Diamond Causeway, Suite 21 - 299, Savannah, Georgia 31406**

# CURRICULUM VITAE

29 September 2020

**NAME: James Claude Upshaw "Jamie" Downs, M.D.**

**ABP-AP/CP/FP, F-CAP, F-ASCP, F-AAFS, F-NAME, D-ABMDI**

**OFFICE:**  **forensX, LLC**  **www.forensXpert.com**
**Medicolegal Consultants**
**Forensic Pathology & Lab Services**
**Courtroom Illustrations & Exhibits**
**Training & Continuing Education**

**1 Diamond Causeway**
**Suite 21-29**
**Savannah, Georgia 31406**  **PHONE: 912-507-1008**
**FAX: 912-454-6006**
**forensX@comcast.net**

**EDUCATION:**

| | |
|---|---|
| **1966-1979 Elementary - High School** | **Porter-Gaud School** |
| | **Charleston, South Carolina** |
| **1979-1983 Bachelor of Science** | **University of Georgia** |
| | **Athens, Georgia** |
| | *Biochemistry (major)/French (minor)* |
| | (*magna cum laude, Phi Beta Kappa*) |
| **1983-1988 Doctor of Medicine** | **Medical University of South Carolina** |
| | **Charleston, South Carolina** |
| **1988-1991 Anatomic Pathology (Residency)** | |
| | **Medical University of South Carolina** |
| | **Charleston, South Carolina** |
| **1991-1992 Forensic Pathology (Fellowship)** | |
| | **Medical University of South Carolina** |
| | **Charleston, South Carolina** |
| | *(Metro Dade Medical Examiner Department* |
| | *Miami, Florida, March, 1992)* |
| **1992-1994 Clinical Pathology (Residency)** | |
| | **Medical University of South Carolina** |
| | **Charleston, South Carolina** |
| **1992 Working Internship** | **Behavioral Science Unit** |
| | (*Overkill – behavioral analysis*) |
| | **FBI Academy, Quantico, VA** |
| **1996 Peace Officer Standards and Training (POST) certification** | |
| | **Southwest Alabama Police Academy** |
| | **Class 123** |
| | **Bay Minette, Alabama** |
| **2016-2017** | **Education for Ministry** |
| | **St. Thomas Episcopal Church** |
| | **Isle of Hope, Georgia** |
| | **(University of the South, Sewanee, Tennessee)** |

*Curriculum Vitae – JCU Downs, MD*

**SPECIALTY CERTIFICATION:**
**National Board of Medical Examiners – 1991**
**American Board of Pathology**
         **Anatomic Pathology – 1994**
         **Clinical Pathology – 1994**
         **Forensic Pathology – 1995**

**OTHER:**
    **ABMDI-D (American Board of Medicolegal Investigators) – 2014**
    **POST (Peace Officer Standards & Training) – 1996**

**MEDICAL LICENSURE:**
    **South Carolina #15063**
    **Alabama #17880**
    **Georgia #051874**

**MAJOR PROJECTS:**
**State of Alabama - Forensic Science Bond issue (1998-2002)**
    **$17.5 million bond issue for the construction of two new forensics laboratories**
        **Birmingham – $10 million facility**
        **Montgomery –$7.5 million facility**
    **Planning and site selection**
**State of Alabama – Forensic Science Annex**
    **Planning and construction of annex to State Crime Lab section**
        **Statewide DNA Database laboratory**
        **Forensic Biology laboratory**
        **Medical Examiner Administrative space**
        **Conference facility**
**State of Alabama – Implied Consent (Breath Analysis Program)**
    **Planning and construction statewide service facility**
**State of Alabama – Crime Laboratory Certification (ASCLD/LAB)**
    **Planning & implementation of accreditation state-wide process**
    **Preparatory pre-inspection process (through NFSTC)**
**State of Georgia – Coastal Regional Medical Examiner Office**
    **Final design/implementation and staffing new combined use laboratory**
        **Medical Examiner and Administrative Offices**
        **Toxicology Laboratory and Administrative Offices**
        **Conference facility**
**State of Georgia – Medical Examiner Statewide Accreditation**
    **Preparatory phase consultation**
        **Pre-inspection Operations Manual preparation**
        **Operational timeline**
        **Pre-accreditation facilities/operations documentation**
**State of Georgia – Operation Noble Cause ("Tri-State Crematory incident")**
    **Final identification multiple (>330) variably decomposed/skeletonized remains**

*Curriculum Vitae – JCU Downs, MD*

State of South Carolina – *H.L. Hunley* Project (135 year-old scene)
>Sole Forensic Pathologist consultant
>>Examination/processing eight sets co-mingled remains (historical context)
>>Assemble/coordinate interdisciplinary forensic/archeology expert team

Research consultant to Patricia Cornwell (author)
National Academies of Science
>Identifying the Needs of the Forensic Science Community
>Views of Major Forensic Science Organizations:
>>Issues & Challenges - NAME (1/25/07)
>>Medical Examiner/Coroner System – NAME (6/5/07)

Medical Examiner Forensic Training
>("Crime Lab 101 for Forensic Pathology Fellows")
>National Forensic Science Technology Center, Largo, Florida, 10/13-17/08
>>Curriculum planning & development
>>Instructor – Courtroom Testimony

Medicolegal Death Investigation Training Program
>(Forensic Pathology Fellows & Medicolegal Death Investigators)
>National Forensic Science Technology Center, Largo, FL, 2010-2011 (4 sessions)
>>Curriculum planning & development
>>Instructor – Applied Toxicology & Medicolegal Improving Death

Standards and Protocols Interagency Working Group
>Investigation Systems Advisory Member (2010-2011)
>National Science and Technology Council, Subcommittee on Forensic Science
>Reports & Testimony Subcommittee
>Executive Office of the President of the United States

Grant Reviewer
>National Institute of Justice/Bureau of Justice Assistance

National Association of Medical Examiners – Annual Meeting 2007
>Savannah, Georgia
>Scientific Program & host

Harvard Associates in Police Science – Annual Meeting 2007
>Savannah, Georgia
>Scientific Program & host

Investigation for Identification – Annual Meeting 2012
>Savannah, Georgia
>Scientific Program & host

Vulnerable Victims: From Cradle to Cane – Medicolegal Seminar 2017
>Charleston, SC
>Scientific Program, Presenter, & host

2abc1b6b56534f3c

*Curriculum Vitae – JCU Downs, MD*

**PROFESSIONAL ORGANIZATIONS - MEMBERSHIP:**

| | |
|---|---|
| **1990-1994** | **Lowcountry Pathology Society** |
| **1990-present** | **College of American Pathologists, Fellow** |
| **1991-present** | **National Association of Medical Examiners, Fellow** |
| **1992-present** | **American Society of Clinical Pathologists, Fellow** |
| **1993-present** | **American Academy of Forensic Sciences, Fellow** |
| **1994-2002** | **Alabama State Association of Forensic Sciences** |
| **1995-present** | **American Association for the Advancement of Science** |
| **1995-present** | **US and Canadian Academy of Pathology** |
| **1998-present** | **Harvard Associates of Police Science** |
| **1998-2000** | **International Wound Ballistics Association** |
| **1999-2002** | **Alabama Peace Officers' Association** |
| **1999-2016** | **Homicide Research Working Group** |
| **2000-2002** | **Alabama Chiefs of Police Association** |
| **2000-2002** | **American Society of Crime Lab Directors** |
| **2001-2002** | **Alabama State Employees Association** |
| **2001-present** | **American Association of Clinical Chemistry** |
| **2003-2017** | **International Association of Chiefs of Police** |
| | **Forensic Subcommittee** |
| **2003-2013** | **Consortium of Forensic Science Organizations** |
| | **Vice Chair 2007-2013** |
| **2011-present** | **Ray. E. Helfer Society** |
| | ***"A society of physicians dedicated to ending child maltreatment*** |
| 2020-present | The Cold Case Foundation |
| | Consulting Forensic Pathologist |

*Curriculum Vitae – JCU Downs, MD*

## ADMINISTRTIVE APPOINTMENTS:

| | |
|---|---|
| 1992-present | Consultant Forensic Pathologist, Forensic Examiners/forensX, LLC |
| 1990-1994 | Deputy Medical Examiner, Charleston County, South Carolina |
| 1994-2002 | State Medical Examiner |
| | State of Alabama, Department of Forensic Sciences |
| 1994-2002 | Clinical Assistant Professor, Pathology, University of South Alabama |
| 1994-1998 | Morgue Safety Officer |
| | Department of Forensic Sciences, Mobile, AL |
| 1996 | Chair, Citizens' Support Group for Forensic Sciences Study Committee |
| 1996-1997 | Supervisor, Autopsy Technicians |
| | Department of Forensic Sciences, Mobile |
| 1996-1997 | Chief, Autopsy Service, Department of Forensic Sciences, Mobile, AL |
| 1997-1998 | Chief, Investigative Services, Department Forensic Sciences, Mobile, AL |
| 1998-present | Consultant, Behavioral Sciences Unit, FBI Academy, Quantico, Virginia |
| 1998-2002 | Director, State of Alabama, Department of Forensic Sciences |
| 1998-present | Visiting Instructor, National Forensic Academy, University of Tennessee |
| 1998-2018 | Board of Advisors, Law Enforcement Innovation Center, Univ. of Tenn. |
| 2000-2002 | Chief Medical Examiner, State of Alabama |
| | Department of Forensic Sciences |
| 2000-2005 | Major, Civil Air Patrol, USAir Force Auxiliary, Legislative Wing |
| 2000-present | Forensic Pathology Consultant, C.S.S. *H.L. Hunley* Project, |
| | The Hunley Commission, Charleston, South Carolina |
| 2001-2007 | Board of Directors, National Association of Medical Examiners |
| 2002-2016 | Coastal Regional Medical Examiner, Georgia Bureau of Investigation |
| 2002-2012 | Coastal Regional Death Investigation Section |
| | Supervising Medical Examiner |
| 2003-2017 | Forensic Committee of the International Association of Chiefs of Police |
| 2002-2003 | Identification of all Remains – "Tri-Sate Crematory case" |
| | Operation Noble Cause, Walker County, GA |
| 2003-2017 | Clinical Instructor – Anatomic & Clinical Pathology |
| | Physician Assistant Program |
| | South University, Savannah, Georgia |
| 2003-2017 | Clinical Instructor – Toxicology |
| | Pharmacy Program, South University, Savannah, Georgia |
| 2004 | NIJ Technical Working Group for |
| | Education & Training in Forensic Science |
| 2007-2019 | Advisory Council, American Board of Medicolegal Death Investigation |
| 2007-2013 | Board of Directors, National Forensic Science Technology Center |
| 2009-present | Medical/Investigational Advisory Board |
| | Sudden Unexplained Death in Childhood Program |
| 2009-2010 | Clinical Instructor – Pathology |
| | Mercer Univ. School of Medicine, Savannah |
| 2009-2010 | Steering Committee (Chair) |
| | NIJ inaugural Forensic Death Investigation Symposium |
| 2010 | Keynote Address |
| | NIJ inaugural Forensic Death Investigation Symposium |

*Curriculum Vitae – JCU Downs, MD*

| | |
|---|---|
| **2010-2012** | **R.O.C.K. (Raising Our Children Kindly) Group Board** |
| **2010-2017** | **Clinical Assistant Professor, Pathology & Director, Autopsy Program** |
| | **Mercer Univ. School of Medicine, Savannah** |
| **2011-2014** | **Board of Editors, Academic Forensic Pathology** |
| | **(Journal of the National Association of Medical Examiners)** |
| **2013-2014** | **NIJ Forensics Training Task Force** |
| **2017-present** | **Medical Director, Physician Assistant Program** |
| | **Charleston Southern University, Charleston, South Carolina** |
| **2017-present** | **Associate Medical Examiner, Gwinnett County, Georgia** |

**American Academy of Forensic Sciences**
- **2012-13 Pathology-Biology Program Chair**
- **2013-14 Pathology-Biology Section Secretary**
- **2014-15 Pathology-Biology Section Chair**
- **2018     Plenary Session Co-Chair**
- **2019     Plenary Session Chair**
- **Other:**
  - **Educational Sessions – breakfast presenter**
  - **Educational Sessions – luncheon presenter**
  - **Workshops – coordinator & presenter**
  - **Session Moderator**
  - **Student Academy**
    - **(high school student introductory forensic training program)**
  - **Ethics Committee**
  - **Young Forensic Scientists Forum – seminar speaker**
  - **Forensic Science Foundation Board**
    - **Education Committee (chair)**
  - Bring Your Own Slides (Co-moderator)

*Curriculum Vitae – JCU Downs, MD*

**BIBLIOGRAPHY:**

**Downs JCU and Kerns J**
*Anatomy Dissection Manual* **(working title) (manuscript in planning)**

**Downs JCU**
*Medicolegal Forensic Investigator's Trauma Atlas* **(manuscript in preparation)**

**Downs JCU & Barsley R**
    *Ethical issues in Forensic Science & Odontology*
    in *Forensic Odontology: Principles and Practice*
    **Thomas J. David, Jim Lewis, Academic Press**

**Capital Litigation Initiative: Crime Scene to Courtroom Forensics Training**
    **Webinar 3: Forensic Pathology Essentials, Thursday, October 13, 2016**
    *http://www.ncstl.org/education/Capital-Litigation-2016-Webinar-3-Forensic-Pathology-Essentials*

*The A–Z of Death and Dying Social, Medical, and Cultural Aspects*
    **Michael Brennan, Editor**
    **ABC-Clio, 2014**
        **Coroner**
        **Causes of Death**
        **Death Certification**

**Downs JCU & Swienton A, Editors**
    *Ethics in Forensic Science (2012)* **Elsevier Publishing**
        **Willoughby W, Thompson E, & Downs JCU**
            *Religion: The Forensic Practitioner's Quest for Truth*
        **Downs JCU & Swienton A**
            *Ethical Codes in Other Organizations – Authority & Enforcement*
        **Stephens FE & Downs JCU**
            *Ethics in Law Enforcement; Defining the Thin Blue Line*
        **Bono J, Swienton A, & Downs JCU**
            *Testimony*
        **Downs JCU**
            *Whistleblowers*
        **Swienton A & Downs JCU**
            *Media*

**Downs, JCU**
    *Forensic Medicine*
    **McGraw Hill Encyclopedia of Science & Technology, 2011**

**Downs JCU**
    *Death Investigation*
    **Crime Scene Investigation, Second Edition**
    **Jacqueline T. Fish, Larry S. Miller, and Michael C. Braswell**

*The Encyclopedia of Death and the Human Experience*
Bryant CD and Peck DL, Eds., Sage Publishing, 2009
Downs JCU
*Homicide*
Downs JCU
*Sexual Homicide*
Downs JCU
*Medical Examiner*

Lori Frasier L, Alexander R, Parrish R, & Downs JCU
*Abusive Head Trauma in Infants and Children:*
*A Medical, Legal & Forensic Reference*
GW Medical, 2007

Lori Frasier L, Alexander R, Parrish R, & Downs JCU
*Abusive Head Trauma in Infants and Children:*
*A Medical, Legal & Forensic Reference – Supplementary CD-ROM*
GW Medical, 2007

JCU Downs & Bill Harris
*The Role of Coroners*
In Alexander R & Case ME
*Child Fatality Review - An Interdisciplinary Guide & Photographic Reference*
GW Medical, 2007

Downs JCU
*The Role of Medical Examiners in Law Enforcement*
Police Chief Magazine, International Association of Chiefs of Police, November 2007

Downs JCU
*Carbon Monoxide Poisoning: Incidence and findings at post-mortem*
The Encyclopedia of Forensic Medicine, 2004 & 2015

Downs JCU
*Pattern Injuries*
The Encyclopedia of Forensic Medicine, 2015

Downs JCU
Forensic Science Education and Mentorship: Our Path Forward
Pathology/Biology: The Mentor/Mentee Relationship
Academy News, American Academy of Forensic Sciences, May 2013

Withrow AG, Sikorsky J, Downs JCU, Fenger T
*Extraction & Analysis of Human Nuclear & Mitochondrial DNA*
*from Electron Beam Irradiated Envelopes*
Journal of Forensic Sciences 2003 Nov;48(6):1302-8

**Downs JCU**
> *The Autopsy*
> Handbook of Death & Dying, Bryant, C. Ed., Sage Press, 2003

**Downs JCU**
> *Medical Examiner/Coroner*
> Handbook of Death & Dying, Bryant, C. Ed., Sage Press, 2003

**Downs JCU and Westveer A**
> *Forensic Investigator's Trauma Atlas*
> <u>Managing Death Investigation Volume II,</u> FBI National Academy, U.S.
> Department of Justice, FBI, Arthur E. Westveer, MLA, Ed., 2003

**Cina SJ, Downs JCU and Conradi SE.**
> *Hydrogen peroxide: A source of lethal oxygen embolism.*
> American Journal of Forensic Medicine and Pathology 15(1): 44-50, 1994.

**Downs JCU, Nichols CA, Scala-Barnett D and Lifschultz BD.**
> *Handling and Interpretation of Crossbow Injuries.*
> The Journal of Forensic Sciences 39(2): 42.8-45, 1994.

**Downs JCU, Conradi SE and Nichols CA.**
> *Suicide by Environmental Hypoxia (Forced Depletion of Oxygen).*
> The American Journal of Forensic Medicine & Pathology 15(3:): 216-223, 1994.

**Downs JCU and Nichols CA.**
> *Suicidal Ingestion of Barium Sulfide Containing  Shaving Powder.*
> The American Journal of Forensic Medicine and Pathology 16(1): 56-61, 1995.

**Downs JCU, Riddick L, Nichols CA, Scala-Barnette D, and Lifschultz BD.**
> *Crossbow Injuries - An Unusual Form of Sharp Force Injury.*
> American Society of Clinical Pathologists Check Sample, October 1995.

**Downs JCU**
> *Sexual Homicide* in <u>Managing Death Investigation</u>
> FBI  National Academy, U.S. Department of Justice, FBI,
> Arthur E. Westveer, MLA, Ed., 1998 & 2002

**Downs JCU**
> *Asphyxiation* in <u>Managing Death Investigation</u>
> FBI  National Academy, U.S. Department of Justice, FBI,
> Arthur E. Westveer, MLA, Ed., 1998 & 2002

**Downs JCU**
> *Sharp Force Injury* in <u>Managing Death Investigation,</u>
> FBI  National Academy, U.S. Department of Justice, FBI,
> Arthur E. Westveer, MLA, Ed., 1998 & 2002

**Downs JCU**
*Blunt Force Injury* in <u>Managing Death Investigation</u> FBI   National Academy,
U.S. Department of Justice, FBI,
Arthur E. Westveer, MLA, Ed., 1998 & 2002

**Downs JCU**
*Under Investigation: The World of Forensic Pathology,* <u>MUSC Alumni Today,</u>
Alumni Magazine of the Medical University of South Carolina, Nov 1999

**Downs JCU**
*Date Rape Drugs,* **Alabama Coroners' Association Newsletter, May 2000**

**Hornfeldt CS, Lothridge K, and Downs JCU**
*Forensic Science Update: Gamma-Hydroxybutyrate (GHB)*
**Forensic Science Communications, January 2002**

**Downs JCU and Ostroff D.**
*Videography– A primer* **Alabama Coroners' Association Newsletter, Sept 2000**

**Titford M and Downs JCU**
*Case Histories in Forensic Histotechnology*
**The Journal of Histotechnology, 2001;24(1):23-27**

**Downs JCU**
*Shaken Baby Syndrome – A primer*
**Alabama Coroners' Association Newsletter, 2001**

**Downs JCU**
*Forensic Improvement and Medical Examiners,*
**National Association of Medical Examiners News, Vol. 9, No. 4, August 2001**

**Downs JCU**
*The Paul Coverdell National Forensic Sciences Improvement Act,*
**The American Academy of Forensic Sciences Newsletter, Summer 2002**

**Cheng TC and Downs JCU.**
*Intracellular Acid Phosphatase and Lysozyme Levels*
*in Subpopulations of Oyster,* **Crassostrea virginica,** *Hemocytes*
**Journal of Invertebrate Pathology 52: 163-167, 1988.**

*Curriculum Vitae – JCU Downs, MD*

**LECTURES/SPEAKING:**

**Hundreds of invited presentations at local, regional, national, and international levels on the subjects of Medicolegal Death Investigation, Forensic Pathology, Child abuse/neglect Elder abuse/neglect, Forensic Investigation & the vulnerable, Police Use of Force, and Teamwork, to audiences ranging from pre-graduate to post-doctoral and active practitioner levels. Audiences have included law enforcement, social services, attorneys, judges, university undergraduate & pre-professional students, medical personnel (all levels), and graduate medical personnel.**

**He has testified in numerous state and federal courts, the Military Justice System, as well as before committees of both the United States Senate and the House of Representatives**

**AWARDS/SERVICE:**

**Presidential Iceberg Award, National Association of Medical Examiners, 2004**
**Thomas Park Food Pantry, Savannah, GA, 2006-present**
**Presidential STAR Award, National Association of Medical Examiners, 2007**
**Volunteer of the Year, R.O.C.K. (Raising Our Children Kindly) Group Board 2008**
**President's Award, National Association of Medical Examiners, 2010**
**Board Member of Year, R.O.C.K. (Raising Our Children Kindly) Group Board, 2011**



*forens*X*, LLC*

*"To strive, to seek, to find – and not to yield."*

**Medicolegal Consultants**
**Forensic Pathology & Lab Services**
**Courtroom Illustrations & Exhibits**
**Training & Continuing Education**

**forensX@comcast.net**
**www.forensXpert.com**
**912-507-1008**

*29 September 2020*

Please see my attached case testimony listing.

This dates to approximately 2002, with most recent cases generally first.

This listing includes, to the best of my recollection, all my sworn testimony done in my private (consulting) cases. It does not include cases during my traditional employment for the government but does include cases that originated while serving in such capacity but where testimony occurred later.

**J.C. Upshaw Downs, M.D.**
ABP-AP/CP/FP, FCAP, FASCP
F-AAFS, F-NAME, D-ABMDI

**1 Diamond Causeway, Suite 21 - 299, Savannah, Georgia 31406**

**PRIOR PRIVATE CASE TESTIMONY – J.C. Upshaw Downs, MD (Deposition and Trial)**

| Case | POC | Address | Type | |
|------|-----|---------|------|---|
| United States v Ethan Tucker | LCDR Bryan D. Tiley Trial Services Branch Chief | Legal Service Command, Alameda (LSC-LMJ) Coast Guard Island, Bld. 54A Alameda, CA, 94501 | CR* | FP |
| Georgia V Tammy Poole | C. Ryan Lee, Esq | Lee & Ziegler, LLC 150 North Street, Suite M Canton, Georgia 30114 | O* habeus | D |
| Giusto et al. v. International Pa | Righton J. Lewis Doug Grimsley Steven W. Zoffer | Butler Snow LLP, 1170 Peachtree ST NE, Ste 1900, Atlanta, GA Dickie, McCamey & Chilcote, P.C. Two PPG Place, Suite 400, Pittsburgh, PA 15222 | CV^ | D |
| Cox (Connell) v BRNCE | Christina Clements | 3291 US Highway 280, Suite 200 Birmingham, AL 35243 205.251.1193 | CV^ | D |
| FL v Granville RITCHIE 15-CF-673-A 15-CF-673-A | Jennifer Johnson, Esq. Chief, Sex Offender/Child Abuse Division Assistant State Attorney | State Attorney's Office 3th Judicial Circuit 4, 9 N. Pierce St. Tampa, Florida 33602 (813) 274-1424 | CR^* | SP |
| Georgia v. Toby Wayne Archer | Keenan Parsons, Esq. Chief Assistant Circuit Defender | 280 Constitution Boulevard, Room 1086 Dallas, GA 30132 770-443-3463 | CR* | D |
| Brandy Porter v. St. Thomas Rutherford, Boerner | Phyllis Gillespie, Esq | Gary, Williams, Parenti, Watson, & Gary 221 SE Osceola Street Stuart, Florida 34994 | CV^ | P |
| Georgia v. Kevin Bentley | Matthew Breedon, Esq. | Chatham County DA's Office, P.O. Box 2309 Savannah, GA 31402 912-652-7308 | CR* | SP[1] |
| Georgia v TIMONE HOOPER | Christy Barker, Esq. Assistant District Attorney | Chatham County DA's Office, P.O. Box 2309 Savannah, GA 31402 912-652-7308 | CR* | SP[1] |
| Georgia v Remler | Jennifer Parker, Esq. Assistant District Attorney | Chatham County DA's Office, P.O. Box 2309 Savannah, GA 31402 912-652-7308 | CR* | SP |
| Dennis William Bryan (decedent) | Jackie L. Johnson, Esq. District Attorney | Brunswick Judicial Circuit Jackiejohnson@pacga.org 912-270-6180 | CR* | SP[1] |
| Georgia vs. Landon Terrell | Aaron Henrickson, Esq. | Hendrickson & Sereebutra, LLC 229 Buchanan Street Dallas GA 30132   (770) 505-4405 | CR* | D |
| Georgia Vs Cash & Weathington | Aaron Henrickson, Esq. | Hendrickson & Sereebutra, LLC 229 Buchanan Street Dallas GA 30132 (770) 505-4405 | CR* | D |
| Georgia V Laquan Hasuan Jivens | Maggie Hinchey DeLeon, Esq. Assistant District Attorney | Chatham County DA's Office, P.O. Box 2309 Savannah, GA 31402 912-652-7308 | CR* | SP[1] |
| Georgia V Taurus Green & Gregory Bivin | Christy Barker, Esq. Assistant District Attorney | Chatham County DA's Office, P.O. Box 2309 Savannah, GA 31402 912-652-7308 | CR* | SP[1] |
| Georgia V Karonta Shamon Morrell | Matt Breedon, Esq. | Chatham County DA's Office, P.O. Box 2309 Savannah, GA 31402 912-652-7308 | CR* | SP[1] |

| | | | | |
|---|---|---|---|---|
| Florida<br>V<br>Oscar Marrero | Michelle Medina, Esq | The Baez Law Firm<br>1200 Brickell Ave, Suite 620<br>Miami, FL 33131 | CR^* | D |
| Georgia<br>V<br>Edenfield | | Attorney General's Office | O*<br>Habeus | SP[1] |
| Georgia<br>V<br>Laquan Hasuan Jivens | Maggie Deleon | Chatham County DA's Office, P.O. Box 2309<br>Savannah, GA 31402<br>912-652-7308 | CR* | SP[1] |
| Georgia v<br>Harvey Timothy Lee<br>Tia Trollyne Young | Ryan Fisher, Esq.<br>Stephen. A. Fern, Esq. | Gwinnett Judicial Circuit<br>75 Langley Dr., Lawrenceville, Georgia 30046<br>770-822-8000 | CR* | SP[1] |
| FLORIDA<br>v<br>Cameron Dowden | Dan Wehking, Esq. | Office Criminal Conflict & Civil Regional Counsel, 5th District<br>7165 Murrell Rd #101.  Melbourne, FL 32940<br>(321) 752-3115 | CR^ | D |
| Jimmie Jenkins, et al.<br>vs.<br>Corizon Health, et al. | Gene Brooks, Esq | Brooks Law Firm<br>313 West York Street, P. O. Box 9545, Savannah, GA 31401<br>(912) 233-9696 | CV^ | P |
| Coleman Moore<br>v<br>Nobel Learning Center | Kristina L. Miller, Esq. | A\|C\|K  ANDERSON\|COE\|KING  ATTORNEYS AT LAW<br>7 Saint Paul St., Suite 1600, Baltimore, MD 21202<br>miller@acklaw.com 410-752-1630 | CV^ | D |
| Georgia<br>v K. Smith/J<br>Campbell/R Parrish | Christy Barker<br>Assistant District Attorney | Eastern Judicial Circuit<br>cbarker@chathamcounty.org<br>(912) 652-7308 | CR* | SP[1] |
| Texas<br>v<br>Soto | Bill Helwig, Esq.<br>Yoakum Co. TX Criminal DA | (806) 731-0093    bhelwig@yoakumcounty.org<br>P.O. Box 359, Yoakum Co. Courthouse, 600 Cowboy Way<br>Plains, TX 79355 | CR* | SP |
| Robert L. Davis, dec<br>v.<br>Rose Manor | Edward Weed, Esq | Martin Weed, LLC<br>100 Union Hill Drive, Suite 150<br>Birmingham, AL  209 205-443-6661 | CV^ | P |
| Georgia v<br>Jesus V. Guerrero<br>Toombs Co16CR00103 | Allen W. McCall<br>Chief Investigator | Office of the District Attorney, Middle Judicial Circuit<br>101 N. Main Street, Suite 200, Post Office Drawer 590<br>Swainsboro, Georgia 30401 (478) 237-7846 | CR* | SP[1] |
| Martez WILSON<br>v<br>City of Douglasville GA | Sara E. Brochstein, Esq. | Freeman Mathis & Gary, LLP<br>100 Galleria Parkway I Suite 1600 I Atlanta, Ga. 30339<br>D:770.303.8634 C:404.520.4400 sbrochstein@fmglaw.com | CV^ | D |
| South Carolina<br>v<br>Ka'Vaughn Smith | Jim Bannon, Esq. | The Bannon Law Group, LLC.<br>P.O. Box 3691 / 10 Westbury Parkway unit A<br>Bluffton, SC 29910  P: 843-815-4505 F: 843-277-6803 | CR | D |
| USAF<br>v<br>Wilsey | Cliff McElroy, SrA, USAF<br>Paralegal | Military Justice Section<br>55th WG/JAM DSN 2712358<br>Comm (402) 294 2358 | CR* | FP |
| Georgia<br>v<br>Nathaniel WILKINS | Jerome Rothschild, Esq.<br>Assistant District Attorney | Chatham County DA's Office<br>912-652-7308<br>P.O. Box 2309 Savannah, GA 31402 | CR* | SP[1] |
| Georgia<br>v<br>Karonta MORRELL | Matt Breedon, Esq.<br>Assistant District Attorney | Chatham County DA's Office<br>mabreedon@chathamcounty.org    912-652-7308<br>P.O. Box 2309 Savannah, GA 31402 | CR* | SP[1] |
| Georgia<br>v<br>Dreshaun Martin | Nancy Smith, Esq,<br>Assistant District Attorney | Chatham County DA's Office    912-652-7308<br>P.O. Box 2309 Savannah, GA 31402<br>ngsmith@chathamcounty.org | CR* | SP[1] |

**KEY CR=criminal\|CV=civil\|S=state\|F=federal\|P=plaintiff/prosecution\|D=respondent/defense\|V=victim \|^=depo\|*=trial\|+=Article32\|o=other**
[1] *arose from employment for Government Laboratory*

| | | | | |
|---|---|---|---|---|
| Georgia v<br>Emile Randolph &<br>Quamelius Lee | Bradley Thompson, Esq.<br>Assistant District Attorney | Chatham County DA's Office    912-652-8024<br>P.O. Box 2309 Savannah, GA 31402<br>brthompson@chathamcounty.org | CR* | SP[1] |
| US Army<br>v<br>Seifert | Jason W. Moy, MAJ, JA<br>Special Victim Prosecutor | Fort Stewart, Fort Gordon, and Hunter Army Airfield<br>jason.w.moy.mil@mail.mil    912-767-3920 (office)<br>976 William H. Wilson Ave, Fort Stewart, Georgia 31314 | CR[*] | FP |
| L. Keenan et al. v<br>J Hoffman-Rosenfeld,<br>et al. | Jason R. Corrado, Sr. | Shaub, Ahmuty, Citrin & Spratt, LLP<br>1983 Marcus Avenue, Lake Success, NY 11042<br>516-488-3300 | CV[O] | D |
| Ohio v<br>Brent Houdeshell<br>(Hancock 2016 CR108) | Colleen P. Limerick, Esq.<br>Assistant Prosecutor | Hancock County Prosecutor<br>514 S. Main Street, Suite B Findlay, Ohio 45840<br>(419) 424-7405 cplimerick@co.hancock.oh.us | CR[*] | SP |
| Vernon | Amy Sciuto, Paralegal | The Simon Law Firm<br>800 Market St. Ste 1700 1 St. Louis MO 63101<br>(314) 241-29291 asciuto@simonlawpc.com | CV^ | D |
| Georgia<br>v<br>Hampton | Matthew Breedon, Esq. | Chatham County DA Office Eastern Judicial Circuit<br>P.O. Box 2309 Savannah, GA 31402<br>mabreedon@chathamcounty.org | CR* | SP[1] |
| Florida<br>v<br>Omar Marrero | Sean Landers, Esq. | The Baez Law Firm - Orlando Office<br>23 South Osceola Avenue, Orlando, FL 32801<br>(407) 705-2626 sean@baezlawfirm.com | CR^* | D |
| Georgia<br>v<br>Randall Futch | ADA Abigail Long, Esq. | Atlantic Judicial Circuit District Attorney's Office<br>Liberty/Long County<br>945 E.G. Miles Pkwy, Hinesville, GA 31313 912-876-3952 | CR* | SP[1] |
| Georgia vs.<br>Joseph Heyward &<br>Cierra Leeks | ADA Matt Breedon, Esq. | Chatham County District Attorney's Office<br>Eastern Judicial Circuit    912-652-7308<br>P.O. Box 2309 Savannah, GA 31402 | CR* | SP[1] |
| Schulte<br>v<br>BrightStar | Niki T. Long, Esq. | Franke Schultz & Mullen, P.C.<br>8900 Ward Parkway<br>Kansas City, Missouri 64114 | CV^ | D |
| POLSDORF, et al. v.<br>MANDEL, et al.<br>STCV1601573 | Carlton E. Joyce, Esq. | Bouhan Falligant<br>(816) 268-8618 (direct) (816) 421-7100 (m)<br>Armstrong House, 447 Bull Street, Savannah, GA, 31401 | CV^ | V |
| Georgia v.<br>Tobias DANIELS &<br>Antonio GRIFFIN | ADA Mary Fitzgerald | Chatham County DA's Office Eastern Judicial Circuit<br>912-652-8069 nlong@fsmlawfirm.com<br>P.O. Box 2309 Savannah, GA 31402 | CR* | SP[1] |
| Georgia<br>v<br>Robert Donald Rogers | ADA Jack Johnson, Esq. | Wayne County DA Office, 145 North Brunswick Street<br>Jesup, Georgia 31546<br>(912) 427-6379 | CR** | SP[1] |
| Mornay<br>v<br>SouthEast trans | Matthew P. Lazarus, Esq. | Scrudder, Bass, Quillian, Horlock, Taylor & Lazarus LLP<br>900 Circle 75 Parkway, Suite 850, Atlanta, GA 30339-3053<br>770-612-9200      mlazarus@scrudderbass.com | CV^ | D |
| Georgia v.<br>Terrence Jones<br>(Richard Trantham) | Jack Johnson, Esq. | Wayne County DA Office, 145 North Brunswick Street<br>Jesup, Georgia 31546<br>(912) 427-6379 | CR* | SP[1] |
| Thomas Rogers<br>v<br>Heiges, et al. | Bart Turner, Esq. | SAVAGE TURNER PINKNEY<br>Eighth floor, 102 East Liberty St, Savannah, Ga 31401<br>(912) 231-1140 | CV* | PD |
| | Gregory Hodges, Esq. | OLIVER-MANER<br>218 W. State Street, Savannah, GA 31401<br>(912) 236-3311 | | |

| Weintraub<br>v<br>PTS of America, LLC | Jacob E. Daly, Esq. | Freeman Mathis & Gary, LLP<br>100 Galleria Pkwy, Ste 1600, Atlanta, Ga, 30339<br>(770) 818-1431 | CV^ | D |
|---|---|---|---|---|
| North Carolina<br>v<br>Stephen Maddox | Kurt D. Schmidt, Esq. | Schmidt Law<br>2505-B Nash St., Wilson, NC 27896<br>(252) 281-2149 | CR* | D |
| Michigan<br>v<br>Donald Bebee | Gordon Bloem, Esq. | Public Defender's Office<br>108 South University Avenue, Suite 1<br>Mt. Pleasant, Michigan 48858 | CR* | D |
| Littlejohn v.<br>Intown Suites<br>Piedmont, et al. | Jacob E. Daly, Esq. | Freeman Mathis & Gary, LLP www.fmglaw.com<br>100 Galleria Parkway, Suite 1600, Atlanta, Ga. 30339<br>770.818.1431      JDaly@fmglaw.com | CV^ | D |
| Georgia vs.<br>Tommy Laron Cooper<br>2016-R-178-JS | Assistant DA | District Attorney's Office<br>Tatnall County – Reidsville, Georgia | CR* | SP1 |
| Georgia v.<br>Terrence Jones<br>(Joseph Speight) | Assistant DA | District Attorney's Office<br>Liberty County, Georgia | CR* | SP1 |
| Francois<br>v<br>Univ. of Miami | George Koonce, Esq. | Espirito Santo Plaza<br>1395 Brickell Avenue 14th Floor Miami, Florida 33131<br>(305)789-9200 | CV^ | D |
| Georgia v.<br>Troy SIMMONS<br>(Wendell Lee) | Assistant DA | District Attorney's Office<br>Wayne County, Georgia | CR* | SP1 |
| Kevin Palmer | Christy Barker, Esq.<br>Assistant DA | Chatham County District Attorney's Office<br>Eastern Judicial Circuit    912-652-7308<br>P.O. Box 2309 Savannah, GA 31402 | CR* | SP1 |
| Georgia v<br>WILLIAM MOORE<br>CR15-1131-J1 | Frank Pennington, Esq.<br>Assistant DA | Chatham County District Attorney's Office<br>Eastern Judicial Circuit    912-652-7308<br>P.O. Box 2309 Savannah, GA 31402 | CR* | SP1 |
| Georgia v.<br>Quentin Lee HORTON<br>16CR00022 | Allen W. McCall<br>Chief Investigator | Office of the District Attorney – Candler Co. GA<br>Middle Judicial Circuit<br>200 Courthouse Square, Lyons, Georgia 30436 | CR* | SP1 |
| Gregory Rhynes (dec) | Greg McConnell, Esq. Chief<br>Asst. DA Chatham County | Chatham County District Attorney's Office<br>Eastern Judicial Circuit    912-652-7308<br>P.O. Box 2309 Savannah, GA 31402 | CR* | SP1 |
| Georgia<br>v<br>Eugenia Shell | John B. Johnson, III, Esq.<br>Chief Asst. Deputy DA | Brunswick Judicial Circuit, Wayne County Office<br>145 North Brunswick Street<br>Jesup, Georgia 31546 | CR* | SP1 |
| Georgia<br>v<br>Kyle Mirochna | Kyle Ridgway, Esq.<br>Assistant DA | Liberty/Long County District Attorney<br>Hinesville GA | CR* | SP1 |
| USAF<br>v<br>McCarson | Cynthia A. Scott-Torres,<br>SrA, USAF<br>Military Justice Paralegal | United States Air Force<br>cynthia.scotttorres@us.af.mil<br>Comm 736-3992 | CR* | FP |
| Kevin ALFORD | Edward A. Piasta, Esq.<br><br>Michael Geoffroy, Esq. | 1201 Peachtree Street, N.E., Suite 1700<br>Atlanta, Georgia 30361 (404) 996-1296<br>LaMalva, Geoffroy & Oeland, PC<br>919 Courthouse Street, Conyers, Georgia 30012 | CV^ | V |
| Wanda Miller<br>v<br>Savannah Vascular | Chris Irwin, Esq. | Cook Noell Tolley & Bates LLP Post Office Box 1927<br>Athens, Georgia 30603-1927<br>(706) 549-6111    www.CNTBlaw.com | CV* | P |

| | | | | |
|---|---|---|---|---|
| Adrianna Flowers<br>v<br>Enmark Stations, et al. | Rob Kelly, Esq. | WEINBERG WHEELER HUDGINS GUNN & DIAL 3344 Peachtree Road NE Suite 2400 Atlanta, GA 30326 404-591-9672 www.wwhgd.com<br>Kelly & Kelly, LLP 100 Riverview Drive Suite 202 Savannah, Georgia 31404<br>(912) 234-0411 www.kklegal.com | CV^ | V |
| Wesley Skiles<br>v<br>Lamartek Inc, et al. | | Spangenberg Shibley & Liber LLP<br>1001 Lakeside Avenue East, Suite 1700<br>Cleveland, Ohio 44114 | CV^ | P |
| Alford v.<br>Taylor, et al. | Michael Geoffroy, Esq. | LaMalva, Geofroy & Oeland, PC<br>919 Center Street, Conyers, Georgia 30012<br>hayes@spang w.com | ww.spanglaw | CV^ | V |
| Tinker v.<br>Yankee Freedom | Krista Fowler Acuña, Esq. | The Chartwell Law Offices, LLP<br>200 S Biscayne Blvd, Suite 300 Miami, FL 33131-5322<br>305.372.9044    www.chartwelllaw.com | CV^ | D |
| Yolanda B. Carter<br>Rutledge v.Fairfield<br>Nursing & Rehab. | Patrick Strubel, Esq. | 2801 Highway 280 South, Suite 200<br>Birmingham, AL 35223<br>205.251.1193    www.huielaw.com | CV^ | D |
| Texas v.<br>Jekaris Bryant | Michael Murray, Esq. | District Attorney<br>Brownwood, Texas | CR* | SP |
| Massachusetts v.<br>Aaron Hernandez | Jose Baez, Esq. | The Baez Law Firm<br>40 S.W. 13th St., Suite 901<br>Miami, Florida 33130 www.baezlawfirm.com | CR* | D |
| Rogers v.<br>Orthopedic Center,<br>Tatnall Hospital, et al. | Gregory Hodges, Esq. | OLIVER MANER, LLP<br>218 West State Street, PO Box 10186, Savannah, GA 31412<br>(912)238-2537 | CV^ | P |
| Ga. V Grant Spencer | ADA Daphne Totten, Esq. | Ogeechee Judicial Circuit<br>1 Courtland Street, Statesboro, GA 30458<br>(912) 764-9924 | CRº | PD |
| Schneider v.<br>Biggerstaff | Gregory Hodges, Esq. | OLIVER MANER, LLP<br>218 West State Street, PO Box 10186, Savannah, GA 31412<br>(912)238-2537 | CV* | D |
| Imwold v Frederick<br>Memorial Hospital | Cullen B. Casey, Esq. | A\|C\|K  ANDERSON\|COE\|KING  ATTORNEYS AT LAW<br>7 Saint Paul St., Suite 1600, Baltimore, MD 21202<br>miller@acklaw.com 410-752-1630 | CV^ | D |
| Davis v. Bowens<br>09/23/15 | R.S. Gill, Esq | 638 Howard Avenue<br>Biloxi, MS 39530<br>Tel: 228-432-0007 | CV^ | P |
| Phillips v. Gallo<br>05/07/15 | Scott Salter, Esq. | STARNES DAVIS FLORIE LLP<br>100 Brookwood Place, 7th Floor, Birmingham, AL 35209<br>205-868-1772    fax 205-868-6099 | CV* | D |
| USA v Mayo<br>12/08/14 | Amy A. Foley, CPT, JA<br>Trial Counsel | 4th Infantry Division<br>Office: (719) 526-0057<br>Cell: (323) 244-6646 | CR* | FP |
| Nadene Holliday v.<br>Waccamaw Comm.<br>Hospital et al. | Andrew Gowdown, Esq. | Rosen Hagood<br>151 Meeting Street<br>Suite 400, Charleston SC 29401 | CV^ | P |
| John H.Thomas v.<br>Coastal Neurological<br>Institute Imaging | David A. Strassburg, Jr. | Frazer, Greene, Upchurch & Baker, LLC<br>PO Box 1686, Mobile, AL 36633 | CV^ | D |

| | | | | |
|---|---|---|---|---|
| US Army v Isaac Aguigui 07-02-13 | Jaclyn C. Grieser, MAJ, JA Scott Z. Hughes, MAJ JA Special Victim Prosecutor | Fort Stewart/HAAF, Fort Gordon Office: 912-767-3290 BB: 912-432-0512 Cell: 845-598-1294 | CR+** | FP |
| Burrell    v Fieldale Farms, Terra Renewal, et al | Steve Gilliam, Esq. | Smith, Gilliam, Williams & Miles P.A. 301 Green Street, N.W. 200 Old Coca-Cola Building Gainesville, Georgia 30501   770-536-3381 ext.38 | CV** | D |
| Walker v. Maxim | George M. Koonce, Esq. | Espirito Santo Plaza 1395 Brickell Avenue 14th Floor, Miami, Florida 33131 305.789.9200 | CV^ | D |
| Acree v. Watson, et al | Charles Miller, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
| Plimack,  et al. v. English, et al. | Josh Joseph, Esq. | Shaw, Joseph, & Just, P.A. Executive Plaza III, Suite 1200, 11350 McCormick Road Hunt Valley, MD 21031 Direct: 443.330.9012 | CV* | D |
| Thomas v. Watson, et al. | Charles Miller, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
| Standing  (Bristol) v. Watson 12-05-11 | Charles Miller, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
| Melissa Rodriguez (Parker) v. state of 10-20-11 | Stephanie Lane-Weber, Esq. | Office of the Attorney General, Correctional Litigation, 200 St Paul Place, Baltimore, MD 21202-2021 | CV^ | D |
| Combs v Considine 06-23-11 | Lisa Leasure, Esq. | Faraci Wolanske, LLC 1512 Larimer Street, Suite 1050 Denver, CO 80202 303-630-0507 | CV^ | D |
| Burrell v Fieldale Farms,Terra Renewal, et al        05-24-11 | Steve Gilliam, Esq. Edward Weed, Esq. | Smith, Gilliam, Williams, & Miles, PA (770)536-3381, ext 38 Martin Weed, LLC, 100 Union Hill Drive, Suite 150 Birmingham, AL 35209 (205)443-6661 | CV^ | D |
| Alabama v. Nodine 12-10-10 & 12-13-10 | DA Judy Newcomb | Bay Minette, AL | CR* | SP |
| | Dan Talmadge, Esq. | Dothan, Alabama | CV^ | P |
| Florida v. Ball 12-10 | Russell Edgar, Esq. | Assistant DA | CR^ | SP |
| Phillips v. Alza, et al. 11-23-10 | James Orr, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
| Christensen v. Alza, et al. 08-27-10 | James Orr, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
| Martell,  et al. v. Alza, et al. | Charles Miller, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
| Fusco, et al. v. Alza, et al. | Charles Miller, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |

KEY CR=criminal|CV=civil|S=state|F=federal|P=plaintiff/prosecution|D=respondent/defense|V=victim |^=depo|*=trial|+=Article32|o=other
[1] arose from employment for Government Laboratory
6/8

| Jennings, et al. v. Alsager, et al. | Charles Miller, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
|---|---|---|---|---|
| Auburn v J&J, et al | Charles Miller, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
| Christian, Cardinal, et al. v ALZA | Charles Miller, Esq. | Heygood, Orr, & Pearson 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
| Freeman v Shoals Hospital | Frank Stakely, Esq. | Rushton, Stakely, Johnston, & Garret PO Box 2087, Huntsville, AL 35804 | CV^ | D |
| Wells v J&J | Charles Miller, Esq. | Heygood, Orr, Pearson, & Bartolomei, LLP 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^ | P |
| DiCosolo v ALZA | Charles Miller, Esq. | Heygood, Orr, Reyes, Pearson, & Bartolomei, LLP 2331 W. Northwest Highway, Second Floor, Dallas, TX | CV^* | P |
| California v Jennings | Michael Blake, Esq. | Assistant DA Los Angeles County, Antelope Valley Br. 42011 4th St W #3530, Lancaster, CA, 93534 | CR*** | SP |
| Hendelson v J&J | Ed Angwin, Esq. | Whatley Drake , 2323 Second Avenue North Birmingham, AL 35203 | CV^* | P |
| Iko v Galley | Stephanie Lane-Weber, Esq. | Office of the Attorney General, Correctional Litigation, 200 St Paul Place, Baltimore, MD 21202-2021 | CV^ | D |
| Pinedo | Jason A. Stuckey, Esq. | Gulas & Stuckey, P.C. 2031 2nd Ave North, Birmingham, AL 35203 205-879-1234 | CV^ | P |
| Warren | John Crumrine, Esq. | 147 Wappoo Creek Dr # 303 Charleston, SC 29412 (843) 762-3838 | CV^ | P |
| Roxanne Adams v Romine, et al. | Jennifer D. Segers, Esq | 2801 Highway 280 South, Suite 200 Birmingham, AL 205.251.1193 JSegers@huielaw.com | CV^ | D |
| Clare Westhoven v Brookwood Med | Jane Hall, Esq. | 2101 Highland Ave. S., Suite 700, Birmingham, AL, 35205 | CV^ | D |
| Pearson v Thomas Hospital, et al. | Boyd Reeves, Esq. Win Stuardi, Esq. | 63 South Royal Street, Suite 1300, Mobile, AL, 36602 | CV* | D |
| Gardner, et al. v Barre Drug, et al. | Jack Hinton, Esq. | 904 Regions Tower 60 Commerce Street, Montgomery, AL, 36104 | CV^ | D |
| Pearson v Baptist Hospital | Danny Kepner, Esq. | Ninth Floor – Seville Tower 226 Palafox Place, Pensacola, FL 32502 | CV* | D |
| George Washington v Mobile Infirmary | Christian Hines, III, Esq. | Riverview Plaza, Suite 1106 63 South Royal Street, Mobile, AL, 36602 | CV^ | D |

| | | | | |
|---|---|---|---|---|
| Patterson v. Pennington | Danny Kepner, Esq. | Ninth Floor – Seville Tower, 226 Palafox Place, Pensacola, FL 32502 | CV^* | D |
| Audrey Hughes v. Gadsden Health | Kathryn Harrington, Esq. | 2637 Valleydale Road, Suite 100, Birmingham, AL, 35244 | CV^* | P |
| Jack Warren Williams v Victor | Henry Garrard, III, Esq. | 440 College Ave, Athens, GA, 30603 | CV^ | P |
| Terry Beatty v Gwinnett Hospital | Gary Blasingame, Esq. | 440 College Ave, Athens, GA, 30603 | CV^ | P |
| Gertrude Garrett v Royal Health Care | Kathryn Harrington, Esq. | 2637 Valleydale Road, Suite 100, Birmingham, AL, 35244 | CV | P |
| Ruth Norris (V) | Kathryn Harrington, Esq. | 2637 Valleydale Road, Suite 100, Birmingham, AL, 35244 | CV | P |
| Royall v Naveira & Alamance | Gene Brooks, Esq. | 313 West York St., Savannah, GA, 31419 | CV^* | P |
| Eastham v Mazda | David Chancellor, Esq. | 420 South Lawrence Street, Montgomery, AL, 36104 | CV^* | P |
| Dunlap v Lusk | Todd Sponseller, Esq. | PO Box 1831 Charleston, WV 25327-1831 | CV^ | P |
| Alabama v C. Cofield | Melody Baldwin, Esq. | 5th Judicial Circuit, Chambers Co. Court, Lafayette, AL | CR^ | SP[1] |
| Brandi Hobson (V) | Gary McAliley, Esq. | PO Box 812, Troy, AL, 36081 | CR^ | SP[1] |
| Charles Whatley (V) | DA E. Paul Jones, Esq | Macon County Courthouse, PO 830568, Tuskegee, AL | CR* | SP[1] |

**KEY CR=criminal|CV=civil|S=state|F=federal|P=plaintiff/prosecution|D=respondent/defense| V=victim |^=depo|*=trial|+=Article32|o=other**
**[1] arose from employment for Government Laboratory**

**J.C. Upshaw Downs, M.D.**
ABP-AP/CP/FP, FCAP, FASCP
F-AAFS, F-NAME, D-ABMDI



# forensX, *LLC*

*"To strive, to seek, to find – and not to yield."*

**Medicolegal Consultants**
**Forensic Pathology & Lab Services**
**Courtroom Illustrations & Exhibits**
**Training & Continuing Education**

**forensX@comcast.net**
**www.forensXpert.com**
**912-507-1008**

*29 September 2019*

## 2020-2021 FEE SCHEDULE

**General case overview**
………………………………………………………………………………….………..$1000

**Case consultation**
**All case-related activities** (including research, consultation, travel, & testimony)
…………………………………………………………………..……………$500/hour
*10 hours required in advance ($5000)*
**Full day case-related activities** – capped at
…………………………………………………………………...…………$6000/day

**Complete autopsy examination with record review**
……………………………………………………………………….…$5000
Additional services (histology, toxicology, etc) – negotiable

**Trainings** (as based upon services sought)
………………………………………………………………………….…negotiable

**Expenses**
…………………………………………………………………………….reimbursed

**J.C. Upshaw Downs, M.D.**
ABP-AP/CP/FP, FCAP, FASCP
F-AAFS, F-NAME, D-ABMDI

**1 Diamond Causeway, Suite 21 - 299, Savannah, Georgia 31406**