*Jennifer Louise Jenkins, Administrator ad Litem of the Estate of Sterling L. Higgins*
*v. Obion County, Tennessee, et al.*

No. 20-cv-01056 STA-atc

Declaration of Edwin S. Budge

Exhibit J



EXPERT WITNESS REPORT OF LORI E. ROSCOE, DNP, APRN, ANP-C, CCHP-RN
REGARDING Sterling Higgins

I have been retained to render opinions regarding the policies and practices of staff at the Obion County Detention Center, and the care and treatment of Sterling Higgins on March 25, 2019.  My opinions are based upon my knowledge, education, training and experience, and the records and testimony I reviewed regarding this case.

EXPERIENCE AND QUALIFICATIONS:

I am an Advanced Practice Registered Nurse, certified as an Adult Nurse Practitioner. I have a Bachelor's Degree in Education, a Bachelor's Degree in Nursing, a Master's Degree in Public Administration with a healthcare concentration, a Master's Degree in Nursing, a Doctorate Degree in Healthcare Administration, and a Doctor of Nursing Practice degree.  I am a Certified Correctional Health Professional and a Certified Correctional Health Professional – Registered Nurse certified through the National Commission on Correctional Health Care. I am currently the principal of Correctional HealthCare Consultants LLC and The Correctional Nurse LLC, and I am a clinical nurse practitioner. I began in correctional healthcare in 1995, and have worked in various correctional healthcare roles, including as a correctional facility Health Services Administrator, a Regional Administrator, an Associate Program Director, an Executive Director of Clinical Services, a nurse practitioner, and a clinical Registered Nurse.  I have an active Registered Nurse license in the states of Florida, California, and Georgia. My Florida license is multi-state, which enables me to practice through the Enhanced Nurse Licensure Compact in 34 states, including Tennessee.  In addition, I am licensed as an Autonomous Advanced Practice Registered Nurse (nurse practitioner) in Florida, and an Advanced Practice Registered Nurse (nurse practitioner) in California, Georgia, Virginia, and Kentucky.

1

I have worked for private contractors, such as Correct Care Solutions and CorrectHealth, LLC, and state subcontractors, such as the Medical College of Georgia. In my administrative roles, I was responsible for policy and procedure development, staff supervision, staff education, Continuous Quality Improvement Programs, and fiscal management. I continue to provide these services to correctional health programs through Correctional HealthCare Consultants LLC. I am a certified guest instructor for the Georgia Peace Officer Standards and Training Council in Inmate Medical, HIV Infection Control, Universal Precautions, and Excited Delirium. I am a member of the American Nurses Association's national expert workgroup that reviewed and revised the *Correctional Nursing: Scope and Standards of Practice* previously published in 2007 and 2013; we have completed the third edition which was published in November 2020. I am the Lead Nurse Planner for the Multi-Disciplinary Education Committee of the National Commission on Correctional Health Care. I am a member of the Editorial Board of the Journal of Correctional Health Care, and also a peer reviewer for that publication. A complete listing of my education, training, and experience is set forth in my Curriculum Vitae, a copy of which is attached to this report as Exhibit A.

DOCUMENTATION REVIEWED:

Depositions of Spaulding, Orsborne, Brogglin, Travis, Sanford and Simmons, with exhibits;

First Amended Complaint;

Tennessee Corrections Institute Minimum Standards for Local Adult Correctional Facilities (2018);

National Commission on Correctional Health Care Standards for Healthcare in Jails (2018);

American Correctional Association CORE Standards for Local Adult Correctional Facilities (2010);

Defendant Orsborne, Brogglin, Obion County, Sanford and Spaulding Response to Discovery Requests;

Training materials, including Bates 000081-000179;

Obion County Inspections, Bates 000601-000622;

Floor Plan, Bates 000522;

Public Records Request, Bates 000520-000521;

Use of Force Incident Reports, Bates 000180-000186;

Policies and Procedures, including Contingency Plan and Jail Policy, Bates 000276-000519;

Tennessee Bureau of Investigation records (430 pages); and

Employment files for Brogglin, Sanford and Spaulding, Bates 000187-000275

COMPENSATION AND PRIOR TESTIMONY:

I have attached to this report as Exhibit B a list of all cases in which I have testified by deposition or at trial in the last four years.  I currently receive compensation of $350 per hour for case review and expert report production, with an initial retainer of $5000 for up to 12 hours of work.  I receive $500 per hour compensation for deposition and court testimony with a four-hour daily minimum and travel time reimbursed at $250 per hour as applicable. Travel expenses are charged per actual cost.

CASE SUMMARY:

On March 25, 2019 Mr. Sterling Higgins was arrested and brought to the Obion County Detention Center (OCDC). Officer Orsborne was the arresting officer.  He stated that, prior to the arrest, Mr. Higgins was acting delusional, bizarre and paranoid, but also he was acting childlike and protective of Officer Orsborne. Mr. Higgins was at all times compliant with Officer Orsborne's request. When they arrived at the OCDC, Mr. Higgins at first was compliant, then began to run around the sallyport, stating that he was going to protect Officer Orsborne. At no time was Officer Orsborne concerned for his safety.  As Mr. Higgins entered the building, a physical interaction occurred with Correctional Officer (CO) Brogglin and she pushed him away. Although still handcuffed with hands behind his back, Mr. Higgins was able to briefly grab CO Brogglin's hair. Officer Orsborne responded and Mr. Higgins went to the floor.    Officer Orsborne later stood on Mr. Higgins. CO Spaulding was also involved in the situation, and he held Mr. Higgins down with what he described as pressure "under the chin." According to CO Spaulding's testimony, Mr. Higgins was spitting at him, and his hand, in part, was holding Mr. Higgins' mouth closed so he could not spit at anyone else. Even with Mr.

3

Higgins shackled, CO Spaulding held pressure until Mr. Higgins became unresponsive, at which time Mr. Higgins was carried to a restraint chair and the restraints were applied. Because he heard Mr. Higgins "grunting," CO Spaulding testified that he believed Mr. Higgins was still breathing. The video of the incident played at deposition shows that CO Sanford and Officer Orsborne checked for a pulse, as did CO Spaulding, although he testified that he was never trained how to do so. It is unknown whether a pulse was felt at that time. Mr. Higgins was wheeled into a cell, and the door was closed. Officers later re-entered the cell and attempted to feel for a pulse or heartbeat. Later, the correctional officers decided to use Narcan on Mr. Higgins, which was administered without effect.

Until Sergeant (Sgt) Simmons from the police department arrived and checked Mr. Higgins, and ordered correctional officers to remove Mr. Higgins from the restraint chair, the officers present did nothing for Mr. Higgins while he was unresponsive, restrained in the restraint chair with no visible signs of life. When the Emergency Medical Services (EMS) staff arrive, the correctional officers had still not removed Mr. Higgins' body from the restraint chair. Once Mr. Higgins was unrestrained, cardiopulmonary resuscitation (CPR) was initiated immediately by the EMS staff, but they were unable to revive him. At 0253 hours on March 25, 2019 Mr. Higgins was pronounced dead at Baptist Memorial Hospital.

During his deposition, CO Spaulding testified that he was not CPR certified, nor did he know if any of his shift colleagues were certified. He stated that he had no training in obtaining vital signs or a pulse, and he had "just seen it done before." He further testified that if a diabetic came into the Detention Center, they (officers) would give the person the type and dose of insulin he/she/they reported using, unless they (officers) did not have it, at which time they would call the nurse to find out what medication to give. CO Spaulding testified that patients in withdrawal would be placed in a cell with a mat and a blanket and he would let them sleep. CO Spaulding further testified if a person arrived with a cardiac history or problem, he would "probably call EMS" because that would be "way out of my league."

It is clear from the testimony that correctional officers working at the Obion County Detention

Center would take vital signs; administer medication; conduct blood sugar checks; decide if a person was fit for confinement; and decide which individuals would be placed on suicide watch without being medically trained to do so. According to his training records, CO Spaulding attended four hours of training in *Emergency Situations in Correctional Setting* on November 28, 2018, but in deposition stated that he had no recollection of the training. The same was true for CO Brogglin, who is documented as taking the training on October 11, 2017. There was no training documented for any of the correctional officers regarding the measuring of vital signs and what constituted abnormal findings; evaluation of fitness for confinement; medication administration; identification of risk for withdrawal; when to contact the provider on-call; and CPR and first aid.

The Tennessee Corrections Institute (TCI) conducted annual inspections of Obion County Detention Center to ensure compliance with its standards. The inspection reports for 2018 and 2019 for Obion County Detention Center indicate compliance with the TCI standards, although there is no verification that auditors reviewed the correctional officers' training records and determined that at least one officer per shift was certified in CPR/First Aid per their Medical Standard 1400-01.13. It is clear from the testimony that, at least during the shifts when COs Spaulding, Brogglin, Travis, and Sanford were the only correctional officers on duty, Obion County Detention Center was operating in violation of standard 1400.01.13.

It is also notable that there were conflicting beliefs regarding who was in charge during the shift. In deposition, CO Brogglin and CO Sanford stated CO Brogglin was in charge, and CO Travis and CO Spaulding stated CO Spaulding was in charge.

DISCUSSION

In addition to the Tennessee Corrections Institute, national organizations that address standards for the provision of correctional healthcare include the National Commission on Correctional Health Care (NCCHC) and the American Correctional Association (ACA). While

accreditation from the NCCHC and ACA is not required, adherence to their standards has become accepted as the standard of care. These standards are not considered the "gold standard;" but rather, they are the minimum acceptable standards for the provision of adequate healthcare in a correctional environment.  The TCI standards are in congruence with the ACA Core Jail Standards and the NCCHC Standards for Healthcare in Jails.  The goal of the TCI in promulgating these minimum standards for local jails, lock-ups, workhouses and detention facilities is to maintain safe and acceptable minimum standards for the correctional system in Tennessee.

The TCI Medical Standard 1400-01-.13, requires that at least one (1) person per shift, assigned to work at the facility, is trained in First Aid/CPR, as defined by the American Red Cross or American Heart Association, and CPR, as defined by the American Red Cross or American Heart Association. It also mandates that officers' training shall cover awareness of potential emergency situations; transfer of the individual to an appropriate health care provider; the recognition of symptoms of illness most common to the facility; and the giving of medication to inmates.   In addition, the Medical Standard mandates that the health authority approves policies and procedures that insure that emergency supplies and equipment are readily available and in working order, and that detoxification from alcohol, opiates, hypnotics, and other stimulants is conducted under medical supervision in accordance with local, state, and federal laws. It continues, stating that when detoxification  is performed at the facility, it shall be prescribed in accordance with clinical protocols approved by the health authority, with specific criteria established for referring symptomatic inmates suffering from withdrawal or intoxication for more specialized care at a hospital or detoxification center.

The NCCHC and the ACA also have standards regarding correctional officer training that require correctional officers be trained in the provision of healthcare-related duties and the identification of serious and emergency conditions that may occur in a correctional facility when healthcare staff are not on duty, as well as standards that are congruent regarding policies and procedures, withdrawal/detoxification and training for medication administration

by custody staff.

According to the testimony of the correctional officers involved in Mr. Higgins' care at the Obion County Detention Center, they had no training in even the basic medical skills required to determine if an individual had a health condition requiring further assessment by a healthcare professional.  CO Spaulding testified that he did not know how to obtain vital signs and check a pulse, but did what he thought was correct, like he had "seen done."  Then, when he was not able to find a pulse, he failed to address this grossly abnormal finding.  In fact, all the officers involved did nothing to aid Mr. Higgins while he was unresponsive and not breathing effectively and restrained in the chair, until EMS arrived.  In addition, CO Spaulding stated that he gave insulin, an extremely dangerous drug, to patients without a provider's order, based upon the person's self-report; he only called the nurse when they did not have the insulin that the person stated he/she/they were taking at home.  CO Spaulding also testified that individuals withdrawing were given a mat and a blanket and allowed to sleep; clinical protocols for detoxification typically involve monitoring the patient with an objective scale so that a determination can be made regarding the progress of the withdrawal, and whether a provider should be notified and medications initiated.

These examples of inappropriate, even dangerous care provided by the correctional officers at the Obion County Detention Center are indicative of a lack of training, which placed all incarcerated individuals at the Detention Center at unacceptable risk of injury or death. Because healthcare staff were not on-site twenty-four hours a day, seven days a week, the safety of each incarcerated person at the facility required that the officers were knowledgeable and had the skills necessary to identify serious medical and mental health conditions, including those exhibited by Mr. Higgins, and respond appropriately.  In addition, the TCI standards and the NCCHC and ACA standards mandated this training.

Further, none of the correctional officers onsite during the relevant shift were CPR/First Aid certified, nor had they ever been.  They did not identify Mr. Higgins' compromised state when

he was exhibiting obvious signs of respiratory compromise (grunting respirations), nor did they respond when he became unresponsive and stopped breathing.  Even after this incident, when questioned during deposition, CO Spaulding failed to identify the proper time when EMS should have been activated for Mr. Higgins' critical condition.  No additional/remedial training has been given to the officers involved, although clearly their actions during Mr. Higgins' medical emergency and death required it.

It is notable that Officer Spaulding's training records and CO Brogglin's training records indicate that they attended a four hour class that was titled *Emergency Situations in Correctional Setting* [Spaulding - November 28, 2018;  Brogglin - October 11, 2017] prior to Mr. Higgins' medical emergency, but in deposition, both stated that they had no recollection of the training. While I did not review the curriculum for that training, nor do I know if there was a competency test at the end of the training, it is clear that the training was ineffective, as neither CO Spaulding nor CO Brogglin remembered  anything from it, and they certainly did not respond to Mr. Higgins' medical emergency appropriately.

If a nurse or medically trained correctional officer was present at the Obion County Detention Center on March 24, 2019 when Mr. Higgins arrived in a delusional, bizarre and paranoid mental state, was forced to the ground and held there, and became unresponsive, more likely than not EMS would have been summoned immediately, which would have given Mr. Higgins the benefit of advanced emergency care much sooner.  In addition, a nurse or medically trained correctional officer would have identified the signs of respiratory distress in Mr. Higgins, and would have known that Mr. Higgins needed, at a minimum, supplemental oxygen and respiratory support. They also would have obtained and monitored Mr. Higgins' vital signs while waiting for EMS staff to arrive, and more likely than not, would have identified that Mr. Higgins' critical condition required the initiation of cardiopulmonary resuscitation even prior to his placement in the restraint chair, which they would have had the skill to perform appropriately and effectively.

The aforementioned failures and violations to the standards, and the daily practice of using untrained, non-healthcare correctional officers to provide medically necessary care at the Obion County Detention Center egregiously and foreseeably placed Mr. Higgins, and all incarcerated individuals there, at substantial risk of serious harm, and even death.  This lack of training for the correctional officers prevented Mr. Higgins from timely receiving the life-saving care that his critical condition required.

My opinions and findings are made to a reasonable degree of administrative certainty and are based upon the records reviewed.  I hereby reserve the right to amend, supplement, or withdraw my opinion based upon future discovery and depositions of the relative parties that may be provided to me.

Respectfully Submitted on January 19, 2021.

*Lori E Roscoe*

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

# Curriculum Vitae

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

404-805-9502

---

### PROFILE

An innovative Healthcare Manager, certified as an Advanced Practice Registered Nurse, a Correctional Health Professional, and a Correctional Registered Nurse, with 25 years of experience in Correctional Health Care and 31 years of Registered Nursing experience. An expert on National Commission on Correctional Health Care and American Correctional Association standards, and policy and procedure development and compliance.  An educator of both nurses and correctional officers.  A seasoned Continuous Quality Improvement professional.  An experienced correctional health expert legal witness, including case review, expert report authoring, and deposition/trial testimony.

---

### EDUCATION

**Doctor of Nursing Practice**
University of Alabama, 2017

**Master of Science in Nursing, Adult Nurse Practitioner**
South University, 2014

**Doctor of Health Care Administration**
Madison University, 2006

**Master of Public Administration, Health Care concentration**
University of Hartford, 1994

**Bachelor of Science in Nursing**
University of Connecticut, 1989

**Bachelor of Science in Education, Secondary Education and Sociology majors**
Southern Connecticut State University, 1978

---

### AWARDS

High Honors - South University - 2014

Award for Academic Excellence – University of Hartford 1994

Woodruff Fellow 1992 – 1994 – University of Hartford

---

## EXPERIENCE

---

**Correctional HealthCare Consultants LLC**

January 2007 – present – Managing Member

**Marion County, KY – Jailer J. Barry Brady –** (2018-present) Healthcare program transitional and ongoing consultation services

**Boone County, KY – Jailer Jason Maydak –** (2018-present) Healthcare program development, transition services and consultation services

**Laurel County, KY – Jailer Jamie Mosley –** (2017-present) Healthcare Program Evaluation, ongoing program development, and consultation services

**Preceptor for MSN Nurse Practitioner students from Georgia State University – (**2016 – 2017) Semester of Nurse Practitioner experience in a correctional setting

**CorHealth Solutions, LLC – Dr. D. Brent Cherry** – (2016) - Correctional Health Program Development and contract initiation consultation- Somerset, KY

**National Commission on Correctional Health Care Multi-Disciplinary Education Committee** (2019 – present**) and Nurse Advisory Council** (2016 - present) – Lead Nurse Planner

**Journal of Correctional Health Care,** Editorial Board member and peer reviewer (2019 – present)

**University of Connecticut School of Nursing** (2014 - 2016) – Expert Nurse panelist for a research study regarding the Correctional nurse and stress being conducted by Dr. Denise Panosky.

**American Nurses Association** (2012-present) **–** Member of the Correctional Nursing workgroup responsible for reviewing and editing the *Correctional Nursing*: *Scope and Standards of Practice* – latest version published Spring 2013; currently working on 2019 update.

**The Correctional Nurse Educator** (2010-present) – Developed and maintain an online educational site where nurses can earn continuing education credits in topics specifically related to correctional nursing. Accredited as a Provider by the California, Florida, Georgia, South Carolina and other Boards of Nursing.

**Medical Association of Georgia** (2007-2017) – Accreditation auditor for the Corrections Division.

**Legal casework** (2007-present) - Multiple cases for both Defendants and Plaintiffs.

**American Correctional Health Services Association –** Executive Director
April 2011 – August 2012

**Correct Health, LLC –** DeKalb County Jail (2008-2009) - Operational review, Management staff mentoring, CQI Program expansion and Annual Review, Procedures and Post Order development, nursing staff mentoring and education.

**Comprehensive Nursing Care, Inc.** (2007 - 2009) **–** Development of successful bid proposal for Medical Nursing Services at Hall County Jail – continued association to develop and execute a complete Nursing orientation program, written procedures for staff, Nursing Assessment Protocols, corresponding Nursing Treatment Notes and Blood Borne Pathogen Exposure Plan, CQI Program and ongoing Staff and Management mentoring.


**The Community Health Center, West Palm Beach, FL**

July 2018 – present – Nurse Practitioner

Nurse Practitioner volunteer provider at this Free Clinic – evaluate, diagnose and treat patients presenting to the clinic with a wide range of illnesses and injuries, including chronic illnesses

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

such as diabetes, hypertension, seizure disorder and hyperthyroidism; women's health issues; mental illness; and acute conditions like infections; sprains and minor injuries. Preceptor for Nurse Practitioner, Physician Assistant, Medical and RN students.

**Correct Care Solutions, Nashville, TN**

September 2014 – January 2018 – Nurse Practitioner, Georgia

In collaboration with the Medical Director, provision of the full range of medical services for the patients at the facility, including sick call, urgent/emergent and chronic care.  Interpretation of lab results and diagnostic studies ordered through the facility.

**CorrectHealth LLC, Atlanta, Georgia**

January 2013 – June 2013 – Director of Clinical Support

Responsible for Clinical Services Education, Infection Control, Continuous Quality Improvement, and Accreditation.  Daily clinical practice and staff contact. Exclusively responsible for the clinical education of staff at 33 sites, which included working side-by-side with staff, conducting needs assessments and evaluations, and the research of evidence based practices and guidelines to ensure staff were adhering to nationally approved standards of care.

January 2012- January 2013 – Executive Director of Clinical Services

Responsible for all aspects of Clinical Services, including Education, Infection Control, Continuous Quality Improvement, Health Information and Accreditation.  Policy and Procedure review and development.  Responsible for nursing and ancillary staff.  Visited sites and interacted with clients on a regular basis.

July 2009 – December 2011 – Director of Special Projects

Participated in projects with the Georgia Department of Corrections; Project Coordinator and Lead Surveyor for an audit of all healthcare services for the Maricopa County Jail, Phoenix, Arizona; Developed projects and procured funding for the CorrectHealth Community Development Center (non-profit); Project Manager for a Special Study for the Wyoming Department of Corrections regarding healthcare access, medical cost and potential efficiencies; internal operations auditing and staff development.  Within CorrectHealth, major responsibility for the clinical education of staff, including nurses, providers and ancillary staff. This included working side-by-side with staff, conducting needs assessments and evaluations, and evidence based practices and guidelines research to ensure staff adherence to nationally approved standards of care.

**Correctional Medical Services, St. Louis, Missouri**

2004 - 2006 - Health Service Administrator - DeKalb County Jail (GA)

2004 - Utilization Management Nurse (interim) - New Jersey Department of Corrections contract

2000 - 2002 - Associate Program Director – New Jersey Department of Corrections contract

1996 - 1998 - Associate Program Director – Massachusetts Department of Corrections contract

1995 - 1996 - Health Services Administrator - Framingham Women's Prison (MA)

**Georgia Correctional Health Care, Georgia Department of Corrections**

2006 - 2007 – Staff Nurse/PRN - Georgia Diagnostic and Classification Prison

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

## PRESENTATIONS/LECTURES

**"Patient Advocacy for the Correctional Nurse"** and **"Skin Assessment for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Ft. Lauderdale, FL.  October 2019.

**"Clinical Decision Making in Correctional Nursing"; "Advanced Practice Registered Nurses in Corrections:  Roundtable"** presented at the National Conference of the National Commission on Correctional Health Care in Nashville, TN.  April 2019.

**"Clinical Judgment for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Las Vegas, NV, October 2018.

**"Clinical Judgment for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Atlanta, GA, May 2017.

**"A Seizure Disorder Primer for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in Nashville, TN, April 2016.

**"A Hypertension Primer for the Correctional Nurse"** and **"The Nurse's Role in Chronic Care Management"** presented at the National Conference of the National Commission on Correctional Health Care in Dallas, TX, October 2015.

**"A Diabetic Primer for the Correctional Nurse"** presented at the National Conference of the National Commission on Correctional Health Care in New Orleans, LA, April 2015.

Guest Expert Panelist, American Association of Legal Nurse Consultants webinar **"Civil Rights Litigation"** held nation-wide on October 30, 2014.

**"The Nurse's Role in Chronic Care Management"** presented at the National Conference of the National Commission on Correctional Health Care in Atlanta, GA, April 2014.

Guest Expert panelist, Omnisure webinar **"The Unscheduled Encounter: Reducing Liability and Risk"**, held nation-wide on December 4, 2013**.**

**"The New ANA Scope and Standards of Practice for Correctional Nurses: Implementation Standard", "The New ANA Scope and Standards of Practice for Correctional Nurses: Communication Standard"** and **"The Essentials of Nursing Leadership: Capstone Presentation"** presented at the National Conference of the National Commission on Correctional Health Care in Nashville, TN, October 2013.

**"Unscheduled Encounters:  Managing the Nursing Curbside Consult"** and **"The New ANA Scope and Standards of Practice for Correctional Nurses: Implementation Standard"** presented at the National Conference of the National Commission on Correctional Health Care in Denver, CO, April 2013.

**"Unscheduled Encounters:  Managing the Nursing Curbside Consult"** presented at the National Conference of the National Commission on Correctional Health Care in Las Vegas, NV, October 2012.

**"Children and Prescription Drug Abuse"** – CHAMPS Instructor School, Georgia Sheriff's Association, June 2012.

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

**"Con Games: Inmate Manipulation"** presented at the Nursing Forum, American Correctional Health Services Association's National Conference in San Antonio, TX, April 2012.

**"HIV Awareness"**, **"Universal Precautions"** and **"Inmate Medical Services"** at the DeKalb County Sheriff's Office 111th Jail Academy, February 2011 through the 124th Jail Academy, August 2014.

**"Crisis Intervention Training"** co-presenter at the American Correctional Health Services Association Georgia Conference, Savannah, Georgia, November 2009.

**"Nursing Forum: Legal Parameters and Best Practice"** at the American Correctional Health Services Association National Conference, Orlando, Florida, March 2009.

**"Dilemmas in Correctional Nursing"** at the American Correctional Health Services Association National Conference, Reno, NV, June 2007.

---

## LICENSES AND CERTIFICATIONS

Advanced Practice Registered Nurse/Nurse Practitioner – Florida (APRN9485060), California (95006810), Georgia (RN179490), Kentucky (3012955) and Virginia (0024178346).

Certified Adult Nurse Practitioner – American Academy of Nurse Practitioners National Certification Board (A0614010 – expiration June 2024)

Registered Nurse licensure  - Multi-state and individual below

      Active – Florida, California, Georgia, Virginia, Tennessee, South Carolina

Certified Correctional Health Provider – Certified Correctional Registered Nurse –

      National Commission on Correctional Health Care

Certified Provider of Continuing Education – California Board of Registered Nursing

Certified Guest Instructor - Georgia Peace Officer Standards and Training Council

BLS Healthcare Provider

---

## MEMBERSHIPS

Founding Member and Member-at-Large Board Member - American Correctional Nurses Association

Member – American Association of Nurse Practitioners

Member – American Nurses Association

Member – American College of Correctional Physicians

Member – South East American Correctional Health Services Association

Member – Academy of Correctional Health Professionals

Member – American Correctional Association

Member- American Jail Association

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN

# Legal Cases-Depositions/Trial

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2016 - 2020**

**C. Scott Johnson, Esquire,** Spears, Moore, Rebman & Williams, P.C.
**Chattanooga, TN**
>    *Eden, et al vs. Bradley County, TN, et al.*
>    *Plaintiff - **ongoing litigation***

**Matthew Garmon, Esquire,** Morris Haynes, Attorneys at Law
**Birmingham, AL**
>    *Hunter vs. Advance Correctional Healthcare, et al.*
>    *Plaintiff - **ongoing litigation***

**Paul Dunphy, Esquire, and Michael Cerjak, Esquire,** Canon & Dunphy, S.C.
**Brookfield, WI**
>    *Madden vs. Milwaukee County, et al.*
>    *Plaintiff - **ongoing litigation***

**Vincent Colianni II, Esquire,** Colianni & Colianni LLC
**Christiansted, VI**
>    *William James, Jr., et al., vs. St. Francois County Sheriff's Department, et al.*
>    *Plaintiff - **ongoing litigation***

**Charles Tatum, Esquire and Seth Diamond, Esquire**
>    **Jasper, AL**
>    *Lashunna Wilson, as Administrator and personal representative of the Estate of William Henry Harris, Jr., deceased*
>    *Plaintiff - **ongoing litigation***

**Laura Landenwich,** Adams, Landenwich, Walton, PLLC
>    **Louisville, KY**
>    *Janice Sweet, As Personal Representative and Administrator of the Estate of Christopher R. Sweet, et al, Plaintiffs, vs. Sheriff Jamey Noel, Clark County Sheriff's Dept., Charlestown Primary Care, LLC, William Hoke, M.D., et al.*
>    *Plaintiff - **settled 2020***

**William Bird,** Bird Law Firm and **Michelle Carpenter,** Kranitz, Sadoun & Carpenter, PC
>    **St. Joseph, MO**
>    *Ashten Haylee Surritte, et al. vs. Advanced Correctional Healthcare Inc, et al.*
>    *Plaintiff - **settled 2020***

# Legal Cases-Depositions/Trial

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2016 - 2020**

**William Bird,** Bird Law Firm **and Michelle Carpenter,** Kranitz, Sadoun & Carpenter, PC
> **St. Joseph, MO**
> *Amanda Thomas, et al. vs. Advanced Correctional Healthcare,Inc, et al.*
> *Plaintiff - settled 2020*

**S. Luke Largess,** Tin, Fulton, Walker & Owen, PLLC
> **Charlotte, NC**
> Mary McNeilly, Administrator of the estate of Archie K. McNeilly, Jr., Plaintiff v. Southern
> Health Partners, Inc., et. al, Defendants
> *Plaintiff - settled 2020*

**Derek Franseen,** Walsh and Franseen
> **Edmond, OK**
> Craig Shipp, Plaintiff vs CorrectCare Solutions, LLC, Dr. Lorene Lomax, Dr. Mimo
> Lemdja, Kimberly Hoffman, Lenora Philson, Kindall Smith, Diane Cunningham, Melissa
> Stoner, Steve Arnold, Defendents
> *Plaintiff - closed 2020*

**Hank Balson and Edwin Budge,** Budge & Heipt, PLLC
> **Seattle, WA**
> THE ESTATE OF MARC A. MORENO, by and through its personal representative,
> Miguel Angel Moreno; MIGUEL  ANGEL MORENO, individually;   and ALICIA MAGA—A
> MENDEZ  individually,  Plaintiffs,  vs. CORRECTIONAL HEALTHCARE  COMPANIES,
> INC.; CORRECT CARE SOLUTIONS, LLC.; OUR  LADY OF LOURDES HOSPITAL AT
> PASCO, INC., a Washington  Non-Profit Corporation d/b/a  OUR LADY OF LOURDES
> HOSPITAL  and LOURDES COUNSELING CENTER; ASHLEY CASTANEDA,
> individually; and ANITA VALLEE, individually  Defendants.
> *Plaintiff - settled 2020*

**Michael Fairhurst,** Killmer, Lane & Newman, LLP
> **Denver, CO**
> Estate of Marciano Briones;  Marc Briones, et al, Plaintiffs, vs. Adams County;
> Correct Care Solutions, Correctional Healthcare Companies, et. al, Defendants
> *Plaintiff - settled 2020*

**Daniel R. Shaffer,** Matthew S. Martin
> **Grand Junction and Glendale, CO**
> *Estate of Daniel Allard, Aanda Slocum, as Personal Representative of the Estate of*
> *Daniel Allard, deceased, vs Corizon Health, Inc., Sarah Richardson, LPN, in her*
> *individual capacity; and Deborah Kinder, in her individual capacity, Defendants.*
> *Plaintiff - ongoing litigation*

# Legal Cases-Depositions/Trial

## Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
### 2016 - 2020

**J. Timothy Smith, Elliott and Smith**
> **Fayetteville, AK**
> *Kathy Jordan, as guardian of the Person and the Estate of Lindsey B. Jordan, an incapacitated person* Plaintiff vs. Southern Health Partners, Inc.; Leah Branyan, RN; Tyranny D. Ray, LPN; Benton County, Arkansas, et al., Defendants.
> *Plaintiff - settled 2020*

**Andrew McNulty, Killmer, Lane & Newman, LLP**
> **Denver, CO**
> *Estate of Tomas Beauford, Tiffany Marsh, personally and as a representative of the Estate of Tomas Beauford, Deceased, Plaintiffs, vs. Mesa County, Colorado, a Government Entity; et al., Defendants.*
> *Plaintiff - ongoing litigation*

**William Bird, Bird Law Firm and Michelle Carpenter, Kranitz, Sadoun & Carpenter, PC**
> **St. Joseph, MO**
> *Brenda Davis, et al. vs. Buchanan County, et al.*
> *Plaintiff - ongoing litigation*

**Anna Holland-Edwards, Erica Grossman, Holland, Holland-Edwards & Grossman**
> **Denver, CO**
> *Estate of Jeffrey Scott Lillis, et al. vs. CorrectCare Solutions, LLC, et al.*
> *Plaintiff - settled 2019*

**Erik Heipt and Edwin Budge, Budge & Heipt, PLLC**
> **Seattle, WA**
> TERESA SABBIE, individually, as personal representative of the ESTATE OF MICHAEL SABBIE, et al, Plaintiffs v. SOUTHWESTERN CORRECTIONAL, LLC d/b/a LASALLE CORRECTIONS, LLC and LASALLE SOUTHWEST CORRECTIONS, et al. Defendants
> *Plaintiff - settled 2019*

**Francis "Brink" Hinson IV, FINKEL LAW FIRM LLC**
> **Columbia, SC**
> *Robert Kenneth Hilliard, Plaintiff v. Southern Health Partners, Inc, Charles A. Bush, M.D., and Marlboro County, Defendants*
> *Plaintiff - trial June 2019*

# Legal Cases-Depositions/Trial

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2016 - 2020**

**Reid Allison, Darold Killmer,** Killmer, Lane & Newman, LLP
   **Denver, CO**
**Roy A. Jacobson,** Jacobson Law Offices
   **Jackson, WY**
   *Steven M. MIllward and Riley J. Millward v. Teton County Board of Commissioners, et al.*
   *Plaintiff -* ***settled 2020***

**Anthony Marchetti, Jr.,** Marchetti Law, PC
   **Cherry Hill, NJ**
   *Webster v. State of New Jersey, et al.*
   *Plaintiff -* ***settled 2019***

**Cherie Wade, ADA; Tony Lawrence, DA,** State of Mississippi
   **19th District Court**
   *State of Mississippi v. Carmon Sue Brannan*
   State of Mississippi - ***trial 2018***

**Alan Lassetter**, Shuttlesworth Lassetter, LLC
   **Birmingham, AL**
   *TIMOTHY HAYS, as the personal representative of the Estate of BRANDON*
   *LEE HAYS, Plaintiff, vs. SHELBY COUNTY, Alabama, et al.,*
   *Plaintiff -* ***settled 2018***

**Vincent DeSalvo,** The Law Offices of Vincent DeSalvo
   **Baton Rouge, LA**
   Brandie Melton, et al v. East Baton Rouge Sheriff's Office.
   *Plaintiff -* ***settled 2020***

**David Damick,** Law Offices of David N. Damick
   **St. Louis, MO**
   Jacob Benoit and Zachary Benoit, Plaintiffs v. Lindell Riffle, et al.
   Plaintiff - ***settled 2018***

**Trent Lowry,** Griffith, Lowry & Meherg, LLC
   **Cullman, AL**
   Steven C. Smith, as conservator for Brandon Jeffries v. Travis Turner, et al,
   Plaintiff - ***settled 2018***

# Legal Cases-Depositions/Trial

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2016 - 2020**

**S. Layne Lee,** Lee Law Firm.
  Baton Rouge, LA
  *O'Quin v. Sid J. Gautreaux, III, et al.*
   Plaintiff - ***settled 2018***

**Cameron Kuhlman,** The Claiborne Firm, PC
**Troy Rafferty and William Cash III**, Levin, Papantonio Thomas, Mitchell Rafferty and Proctor, P. A.
**Mark O'Mara**, O'Mara Law Group
   *SOLOMAN OLUDAMISI AJIBADE and ADENIKE HANNAH AJIBADE, as natural parents of Mathew Ajibade, and THE ESTATE OF MATHEW AJIBADE and CHRIS OLADAPO, its Executor, Plaintiffs, vs. JOHN WILCHER, in his official capacity as Chatham County Sheriff, et al., Defendants*
   Plaintiff - ***settled 2019***

**Anne Findling,** Robbins & Curtin, PLLC
  Phoenix, AZ
  *Price v. State of AZ, AZ Department of Corrections, and Corizon, INC*
  Plaintiff - ***settled 2018***

**Dan Haltiwanger,** Richardson, Patrick, Westbrook & Brickman, LLC
  Barnwell, SC
  *Massey vs. Orangeberg County Detention Center, SC Department of Public Safety et al -*
  Plaintiff Massey - ***settled 2017***

**Katherine L. McArthur,** McArthur Law Firm
  Macon, GA
  *Donna Kay Stubbs Ward v. Mousa Alwawi, MD, Comprehensive Care Medical, LLC, Southern Health Partners, Inc. and Elbert H. Brown, MD -*
  Plaintiff - ***settled 2017***

**Doug Adams,** The Mitchell Firm
  Ridgeland, MS
**Monty Tynes,** Tynes Law Firm, PA
  Pascagoula, MS
  *Dorothy Lee & John Morris Lee, III v. Jackson County Mississippi, et al.*
  Plaintiff - ***trial 2017***

Exhibit B                                        Page 5 of 6

# Legal Cases-Depositions/Trial

Lori E. Roscoe, DNP, APRN, ANP-C, CCHP-RN
**2016 - 2020**

**Adam King, Sam Nicholson, Nicholson Revell LLP**
    **Augusta, GA**
    *Massey vs. TransformRX et al*
    Plaintiff Massey - ***closed 2017***

**Steven Gonzales, Resnick & Louis, PC**
    **Albuquerque, NM**
    *Bevan vs. Santa Fe County et al*
    Defendant Archuletta - ***trial/dismissed 2018***