IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JENNIFER LOUISE JENKINS,<br>Administrator *ad Litem* of the ESTATE OF<br>STERLING L. HIGGINS,<br><br>   Plaintiff,<br><br>v.<br><br>OBION COUNTY SHERIFF'S<br>DEPARTMENT; OBION COUNTY,<br>TENNESSEE; ROBERT THOMAS<br>ORSBORNE, Individually; MARY<br>BROGLIN, Individually; WAYLON<br>SPAULDING, Individually; and BRENON<br>SANFORD, Individually,<br><br>   Defendants. | No. 1:20-cv-01056-STA-atc |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS TO EXCLUDE EXPERT OPINION**

Before the Court are two motions, both filed on December 1, 2021. The first is Defendant Robert Orsborne's Motion to Exclude Michael Leonesio's Expert Opinions. (ECF No. 123.) The second is Defendants Obion County, Tennessee; Mary Brogglin;[1] Waylon Spaulding; and Brendan Sanford's (the "Obion Defendants") *Daubert* Motion to Exclude Plaintiff's Proposed Expert, which also addresses Leonesio's expert report and opinions. (ECF No. 125.) Plaintiff filed a combined response to both motions on December 15, 2021. (ECF No. 127.) Chief Judge Thomas S. Anderson referred both motions to the undersigned for

---

[1] Though Brogglin was identified as "Broglin" in the original complaint (and thus in the caption) (ECF No. 1), the amended complaint and her own filings spell her name Brogglin (*see, e.g.*, ECF No. 37, 40).

determination. (ECF No. 124; ECF No. 126.) For the reasons outlined below, the motions are GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

As set forth in Plaintiff's First Amended Complaint, this civil rights action was brought by the estate of Sterling L. Higgins, who died March 25, 2019, after being detained at the Obion County Jail in Union City, Tennessee. (*See* ECF No. 37.) Higgins was in custody due to his arrest by Orsborne, an officer with the Union City Police Department, for misdemeanor criminal trespass following in incident at a convenience store in which Higgins was arguing with a woman and then hid in a cooler. (*Id.* ¶¶ 14–22.)

As Higgins was being escorted into the jail by Orsborne, with Officers Brogglin, Spaulding, and Sanford present as well, Higgins got into a physical altercation with the officers. (*Id.* ¶¶ 26–29.) The parties dispute the details of what occurred next, particularly those related to the restraint techniques used on Higgins and his medical condition throughout the encounter, which form the crux of Plaintiff's claims. Plaintiff alleges that Higgins was taken down to the jail floor and restrained by Defendants with handcuffs and leg shackles, with Orsborne standing on top of him and Spaulding gripping his throat, and that Higgins lost consciousness. (*Id.* ¶ 29–35.) After several minutes on the hallway floor, Higgins was lifted and fastened into a mobile restraint chair and was wheeled into a jail cell. (*Id.* ¶¶ 33, 36–38.)

Eventually, a sergeant with the Union City Police Department entered the jail cell and inspected the unconscious Higgins. (*Id.* ¶ 42.) A few minutes later, EMS personnel arrived, entered Higgins's jail cell, removed him from the restraint chair, laid him in the jail hallway, and began administering medical treatment to him, including CPR. (*Id.* ¶ 47.) Higgins was

eventually taken to Baptist Memorial Hospital in Union City, where he was pronounced dead. (*Id.* ¶ 55.)

Plaintiff asserted causes of action under 42 U.S.C. § 1983 against the municipalities and individual Defendants, state law claims against the individual Defendants, and claims under the Americans with Disabilities Act and/or the Rehabilitation Act against Orsborne and Union City. (*Id.* ¶¶ 68–83.)

On February 11, 2021, Plaintiff disclosed Michael Leonesio as an expert witness and produced his expert report (the "Report"). (ECF No. 123-1, at 1; ECF No. 125-1, at 2; ECF No. 125-2; ECF No. 127, at 5.) The Report contains the following seven opinions:

> Opinion 1: Union City officers' arrest of Mr. Higgins was reasonable and lawful based on the facts and circumstances known to them at the time of their contact.
>
> Opinion 2: Officer Orsborne's trampling of Mr. Higgins' lower torso and standing on his shackled lower extremities constituted excessive force and served no legitimate law enforcement purpose.
>
> Opinion 3: Correctional Officer Spaulding's improper use of his hands to hold Mr. Higgins' jaw resulted in compression of Mr. Higgins' neck, causing prolonged blood flow constriction to and from Mr. Higgins' brain.
>
> Opinion 4: The use of the restraint chair upon the unconscious and apneic Mr. Higgins by Obion County Correctional Officers Brogglin, Spaulding, and Sanford constitutes excessive force, violated agency and TCI standards, and substantially delayed life-saving measures.
>
> Opinion 5: The failure of Obion County correctional personnel to render timely and appropriate medical assistance to the obviously unconscious and apneic Mr. Higgins represents a gross dereliction of duty, violates agency policy, and disregards established industry standards and guidelines.
>
> Opinion 6: The Obion County Sheriff's Department failed to adequately train COs Spaulding, Brogglin, and Sanford in core job tasks.
>
> Opinion 7: Officers failed to intervene while observing Constitutional rights violations against Mr. Higgins on four occasions during this incident. These occasions were as follows:

1. COs Spaulding, Brogglin, and Sanford failed to intervene when they observed Officer Orsborne trample and stand upon Mr. Higgins' legs. See opinion 2.
2. Officer Orsborne, CO Brogglin, and CO Sanford failed to intervene when they observed CO Spaulding using excessive and unnecessary force upon Mr. Higgins. See opinion 3.
3. Officer Orsborne had an affirmative duty to intervene when he observed COs Spaulding, Brogglin, and Sanford strapping the unconscious and apneic Mr. Higgins into the emergency restraint chair. See opinion 4.
4. Officer Orsborne, CO Spaulding, CO Brogglin, and CO Sanford all had affirmative duties to intervene to secure timely and appropriate emergency medical assistance to the dying Mr. Higgins. See opinion 5.

(ECF NO. 125-2, at 7–28.)

Both motions seek to exclude Leonesio's opinions pursuant to Federal Rule of Evidence 702. Orsborne seeks to exclude "Leonesio's legal opinions, statements of the law, and statements assessing credibility and weighing evidence as stated in the Second Opinion, Third Opinion, Fourth Opinion, Fifth Opinion, and Seventh Opinion and in his deposition." (ECF No. 123-1, at 11.)[2] He further seeks to "exclude Leonesio's medical observations and opinions and prohibit Leonesio from testifying to these observations and opinions at trial because Leonesio is not qualified to render such medical observations or opinions." (*Id.*) The Obion Defendants seek to exclude Leonesio's testimony in its entirety, based on many of the same reasons Orsborne offers.

## **LEGAL STANDARD**

Federal Rule of Evidence 702 governs testimony by expert witnesses. It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[2] Orsborne acknowledges some of Leonesio's opinions that he seeks to exclude may relate more directly to his co-Defendants, but he "nonetheless moves to exclude all of Leonesio's opinions that constitute legal conclusions because of the risk of prejudice to Orsborne." (*Id.* at 8 n.1.)

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In determining the admissibility of expert testimony, courts evaluate whether it satisfies three requirements. "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702).

The Court serves a gatekeeping role in conducting this analysis. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note (2000)) (quotation marks omitted). To that end, "rejection of expert testimony is the exception, rather than the rule." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 316 (6th Cir. 2019) (quoting *Scrap Metal*, 527 F.3d at 530). Reliable and relevant expert testimony is admissible, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Although Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue," courts are careful to prevent expert witnesses from usurping the court's role of providing the contours of the law. *Henry v. Allstate Prop. & Cas. Ins. Co.*, No. 2:08-cv-02346-SHM-cgc, 2009 WL 10665236, at *2 (W.D. Tenn.

Oct. 14, 2009) ("It is the province of the Court, not an expert witness, to inform jurors of the law they are to apply in a particular case.") (citing *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 191 (6th Cir. 1991); *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986)). "An expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case." *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) (citing *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150–51 (6th Cir. 1985)). "The problem with testimony containing a legal conclusion is in conveying the witness's unexpressed, and perhaps erroneous, legal standards to the jury. This invades the province of the court to determine the applicable law and to instruct the jury as to that law." *United States v. Nixon*, 694 F.3d 623, 631 (6th Cir. 2012) (quoting *Torres*, 758 F.2d at 150).

Nevertheless, courts "have generally excluded expert testimony for stating a 'legal conclusion' *only* when the witness explicitly testifies, in 'specialized' legal terminology, that a defendant violated (or did not violate) the law." *Babb*, 942 F.3d at 317 (citations omitted). "To ascertain whether a witness's testimony contains a legal conclusion, we must 'determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" *Nixon*, 694 F.3d at 631 (quoting *Torres*, 758 F.2d at 151). A distinction exists between an expert impermissibly "opining on the ultimate question of liability" and permissibly "stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue." *Babb*, 942 F.3d at 317 (alterations omitted). However, "[a]lthough an expert's opinion may 'embrace an ultimate issue to be decided by the trier of fact,' the issue embraced must be a factual one." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (quoting Fed. R. Evid. 704(a)). Thus, a fingerprint expert in a criminal case may not offer the legal conclusion that a

6

defendant is guilty, but the expert may opine that the defendant's fingerprint was the only one on the murder weapon (a fact). *Babb*, 942 F.3d. at 317 (citing *Berry*, 25 F.3d at 1353).

## ANALYSIS

Defendants lodge two overarching objections to the admission of Leonesio's opinions: that he seeks to opine on the ultimate legal issues in the case and that he seeks to provide medical opinions beyond his expertise. The Court will address each objection generally and then apply its determinations to the specific opinions offered by Leonesio.

### I.     Admissibility of Legal Opinions

Defendants' first challenge is to the relevance of Leonesio's testimony, based on their contention that he seeks to draw legal conclusions, provide legal analysis of the issues, and opine on the ultimate issue in this case. Plaintiff concedes that Leonesio "should not be able to render ultimate legal conclusions at trial." (ECF No. 127, at 1.) She nevertheless asserts that the remedy under the Rules of Evidence and Sixth Circuit law is not to altogether exclude Leonesio's testimony and Report, but instead "to use a scalpel rather than a sledgehammer" and "preclude[e] him from uttering conclusions of law but permit[] him to offer his opinions using nonlegal, industry-accepted terminology." (*Id.* at 1–2.) Plaintiff argues that the proper course is to "allow him to offer opinions about prevailing law enforcement industry standards and whether the officers' conduct was consistent with those standards." (*Id.* at 11.)[3]

Both sides are correct. Leonesio's proffered opinions frequently include impermissible legal conclusions as to an ultimate issue. In deciding excessive force cases like this one, courts apply an "objective reasonableness" standard that "turns on the 'facts and circumstances of each

---

[3] Plaintiff also argues that "Defendant Orsborne's own police practices expert, Thom Corley, submitted a report that is replete with legal analysis." (*Id.* at 7 n.2.) The question of whether Corley's opinions should be excluded is not before this Court.

7

particular case.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).[4] The ultimate question to be answered in this case as to Plaintiff's excessive force claims is whether Defendants' actions were objectively reasonable.

Leonesio speaks to precisely this legal standard and uses specialized legal terminology to arrive at the conclusion that Defendants did not act objectively reasonably and thus used excessive force. "The Sixth Circuit has held that an expert opinion stating that an officer's conduct in utilizing deadly force was 'objectively unreasonable' was inadmissible because it impermissibly expressed a legal conclusion." *Askew v. City of Memphis*, No. 2:14-cv-02080-STA-tmp, 2016 WL 4536447, at *10 (W.D. Tenn. Mar. 7, 2016), *aff'd*, 2016 WL 1695056 (W.D. Tenn. Apr. 27, 2016) (citing *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426 (6th Cir. 2006)). Leonesio's analysis of the *Graham* factors and his conclusions that contemplate the reasonableness of Defendants' actions invade the realm of the factfinder in this case and are impermissible.

Leonesio will be allowed to testify, however, to the prevailing law enforcement industry standards that may have informed his ultimate conclusions. *See, e.g.*, *Gerling v. City of Hermann, Mo.*, No. 4:17-CV-02702 JAR, 2019 WL 7048972, at *15 (E.D. Mo. Dec. 20, 2019), *aff'd in part, rev'd in part and remanded*, 2 F.4th 737 (8th Cir. 2021) (allowing Leonesio's testimony "as to the general prevailing standards and policies in the field of law enforcement for

---

[4] The Sixth Circuit Court of Appeals has explained that claims of excessive force turn on "whether the officer's actions were 'objectively reasonable in light of the facts and circumstances confronting them.'" *Palma v. Johns*, 27 F.4th 419, 428 (6th Cir. 2022) (quoting *Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017)). In engaging in this objective, totality-of-the-circumstances inquiry, courts consider the so-called "*Graham* factors": "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Hill*, 490 U.S. at 396).

8

using force under the circumstances of this case," but excluding his testimony to the extent he "offer[s] legal conclusions that touch upon the ultimate legal issues in this case"); *Lombardo v. Saint Louis City*, No. 4:16-CV-01637-NCC, 2019 WL 414773, at *15 (E.D. Mo. Feb. 1, 2019) (ruling that Leonesio "may testify regarding the generally recognized standards and practices for using force under the circumstances of this case," but prohibiting him from "offer[ing] opinions or conclusions that touch upon the ultimate legal issues in this case, including whether Defendants' actions were excessive, unnecessary, or otherwise unreasonable under the totality of the circumstances and in light of Fourth Amendment standards"). "The role of such an expert is to contextualize the evidence the jury will hear about the use of force by the defendant against the plaintiff, in light of the standards practiced by officers throughout the country." *Lombardo*, 2019 WL 414773, at *10 (quotations omitted). Though Leonesio's knowledge of police policies and standards may be informed by constitutional and other legal considerations (*see* ECF No. 127, at 7 n.2), his opinions on such legal considerations will not assist the jury. His testimony is therefore limited to prevailing police standards and whether Defendants acted consistently with those standards.

## II.     Admissibility of Medical Opinions

Defendants' second challenge is to Leonesio's qualifications—that he seeks to offer medical observations and opinions that he is not qualified to offer. Plaintiff again concedes that Leonesio "should not be permitted to render true medical opinions regarding the cause of Mr. Higgins's death." (*Id.* at 2.) She nevertheless asserts that Leonesio's opinions are not "true medical opinions," but instead are assessments of the restraint used on Higgins "from the lens of a reasonable officer and use of force expert" and are thus admissible. (*Id.*) Plaintiff asserts that law enforcement officers are required by industry standards to understand dangers associated

9

with restraining detainees, must be able to recognize emergency conditions, and must know how to secure care for detainees experiencing medical events related to that restraint. (*Id.* at 13.) To that end, she argues that Leonesio should be able to address this subject matter—which necessarily incorporates some use of medical terminology—"from a law enforcement perspective." (*Id.*) Relatedly, to the extent Defendants seek to exclude Leonesio's testimony that Higgins was unconscious, unresponsive, and lifeless, Plaintiff asserts that it is appropriate for Leonesio to address in his testimony—again from the perspective of a law enforcement expert—Higgins's physical condition when force was being used and medical care was not being summoned. (*Id.* at 15–16.) Plaintiff asserts that any challenge to that testimony goes not to its admissibility, but to its weight, and Defendants are free to challenge it on cross examination. (*Id.* at 15–16.)

Leonesio's qualifications are not in dispute: he is an expert on police practices, training, and the use of force, and he is not a medical expert. "[A] court should exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." *Jones v. Wiseman*, No. 2:18-cv-02197-SHL-dkv, 2019 WL 12758125, at *4 (W.D. Tenn. June 4, 2019) (quoting *Walter v. Auto-Owners Mut. Ins. Co.*, No. 3:15-CV-535-TAV-DCP, 2018 WL 3650284, at *11 (E.D. Tenn. Aug. 1, 2018)). Although "nothing in the Rules of Evidence requires a witness to have a medical degree in order to serve as a medical expert," *Davis v. United States*, No. CIV. 08-184-ART, 2012 WL 424887, at *6 (E.D. Ky. Feb. 9, 2012), Leonesio does not contend, and his qualifications do not suggest, that he is "qualified by knowledge, skill, experience, training, or education" to offer medical opinions consistent with Federal Rule of Evidence 702. Although Leonesio formerly worked as an EMT, his EMT certification lapsed "somewhere between 2005 and 2010" (ECF No. 125-1, at 2 (quoting Leonesio Dep. 25:14–24)),

and he "has not worked in any 'medical context' since 2001" (ECF No. 123-1, at 14 (quoting Leonesio Dep. 26:14–16)).  Another court has found that, though Leonesio has expert qualifications on the use of force, he "[w]ithout a doubt . . . is not qualified to offer opinions" that rely on medical expertise.  *Taylor v. Taser Int'l, Inc.*, No. CV H-17-673, 2019 WL 1434213, at *10 (S.D. Tex. Mar. 29, 2019).  The same conclusion applies here, as "a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue."  *Bastone v. Cath. Diocese of Knoxville*, No. 3:19-CV-232-HBG, 2021 WL 5052034, at *2 (E.D. Tenn. Sept. 22, 2021) (quoting *In re Diet Drugs*, No. MDL 1203, 2001 WL 454586, at *7 (E.D. Pa. Feb. 1, 2001)).  Leonesio's expertise in law enforcement does not equate to medical expertise, and he shall not be permitted to offer opinions that rely on scientific, technical, or other specialized knowledge in the medical field.

### III.     Admissibility of Leonesio's Opinions

In light of the above determinations, the admissibility of each opinion identified in Leonesio's Report is discussed below.[5]

   A.     Opinion 1

- "Union City officers' arrest of Mr. Higgins was reasonable and lawful based on the facts and circumstances known to them at the time of their contact."  (Report 7.)  This opinion is a legal conclusion and thus inadmissible.

- "My analysis of the circumstances surrounding the arrest of Mr. Higgins by UCPD officers found their actions reasonable, given the circumstances, and consistent with

---

[5] The portions of Leonesio's Report not discussed herein are either background information or recitations of the facts he relied on in forming his opinions.

11

generally accepted policy, practice, training, and legal mandates trained to officers for application in field operations." (*Id.* at 7–8.) Leonesio may not testify as to whether the officers acted reasonably, as that opinion is a legal conclusion. He may testify as to whether the officers' actions were consistent with policy, practice, and training.

    B.    <u>Opinion 2</u>

- "Officer Orsborne's trampling of Mr. Higgins' lower torso and standing on his shackled lower extremities constituted excessive force and served no legitimate law enforcement purpose." (*Id.* at 8.) This opinion is a legal conclusion and thus inadmissible.

- Leonesio's discussion of *Graham*, the application of its criteria, and the Fourth Amendment (*id.* at 8–9) is a legal conclusion and thus inadmissible.

- "CO Spaulding is on top of Higgins, his gloved hands grasping Mr. Higgins' jaw in an unorthodox and unrecognized but firm hold." (*Id.* at 9.) Leonesio's opinion regarding the "unorthodox and unrecognized" nature of Spaulding's hold on Higgins is within his realm of expertise and thus admissible.

- "CO Spaulding's testimony calls Officer Orsborne's explanation further into question . . . . These facts are significant because they speak to the gratuitous nature of Officer Orsborne's unnecessary use of force and the dishonesty of his explanation." (*Id.*) Here Leonesio opines that Orsborne's explanation of his use of force should not be believed. "Expert witnesses are generally not permitted to base their conclusions on an evaluation of a witness's credibility, because credibility determinations are not an appropriate subject for expert testimony." *Esch v. Cnty. of Kent*, 699 F. App'x 509, 517 (6th Cir. 2017) (citations omitted). In opining that Orsborne's use of force on Higgins was "unnecessary" and "gratuitous," Leonesio acknowledges that Orsborne testified it was "necessary" for him to stand on Higgins to "gain control" of him.

(Report 9.) But Leonesio discounts that testimony, noting that Spaulding testified Higgins was "under control" before Orsborne stood on him, and opines that Spaulding's testimony calls Orsborne's testimony "into question." (*Id.*) Leonesio shall not be permitted to opine on the credibility of Orsborne's or any witness's testimony and shall not offer any opinion that one witness is to be believed over another.

- "There simply was no immediate threat to officers or others at the time of Officer Orsborne's use of force upon Mr. Higgins that would justify his actions." (Report 10.) Whether Orsborne's use of force was justified is the ultimate issue, and thus this opinion is inadmissible.

- "This resistance, such as it was, presented no immediate threat to officers or others that would justify Officer Orsborne's actions." (*Id.*) Whether Orsborne's actions were justified is the ultimate issue, and thus this opinion is inadmissible.

- "Mr. Higgins was being strangled and compressionally asphyxiated by Spaulding and was fighting for breath." (*Id.*) This medical opinion is beyond the scope of Leonesio's expertise and is thus inadmissible.

- "There was no credible flight risk." (*Id.*) Whether any risk of flight assessed by the officers was credible is a legal conclusion, and thus this opinion is inadmissible.

- "Given this evidence and looking at the totality of the circumstances as analyzed above, it is clear that Officer Orsborne's actions against Mr. Higgins were excessive, unnecessary, and utterly inconsistent with generally accepted policy, practice, training, and legal mandates trained to officers for application in field operations." (*Id.*) This opinion goes to the ultimate issue and is inadmissible.

    C.    <u>Opinion 3</u>

- "Correctional Officer Spaulding's improper use of his hands to hold Mr. Higgins' jaw resulted in compression of Mr. Higgins' neck, causing prolonged blood flow constriction to and from Mr. Higgins' brain." (*Id.* at 11.) Whether compression of Higgins's neck caused blood flow constriction is a medical opinion beyond the scope of Leonesio's expertise and is thus inadmissible. Leonesio may testify as to whether Spaulding's use of his hands to hold Higgins's jaw was "improper" in light of police policy.

- Leonesio's discussion of *Kingsley* and *Graham* (*id.* at 11–12) is a legal conclusion and thus inadmissible.

- "CO Spaulding, after separating Mr. Higgins from CO Brogglin, used an improper and unjustified technique in an alleged attempt to gain *compliance* of an already *controlled* and restrained Mr. Higgins." (*Id.* at 12.) The opinion that the technique was "unjustified" goes to the ultimate issue and is inadmissible. Leonesio may testify as to whether the technique was "improper," based on his expertise in police policy and practice, under the circumstances.

- Leonesio's discussion and opinions regarding the effect of Spaulding's hand positioning on the blood flow in Higgins's neck, the resulting impact on his blood pressure, and the consequences of unconsciousness and being unable to recover (*id.* at 12) are medical opinions beyond the scope of Leonesio's expertise and thus inadmissible.

- Leonesio may testify on pressure point compliance techniques, control techniques, and mechanical restraints, their relative usefulness, and the training officers receive regarding them (*id.* at 11–12), as these facts and opinions are within his area of expertise. He may not testify, however, that the effectiveness of those techniques is "due to the location of

14

these sensitive areas on the body and their relationship to body regulating chemical and pressure receptions, major vessels, and nerve plexi" (*id.* at 11), which is medical information beyond Leonesio's expertise.

- Leonesio may testify regarding his opinion that the officers were "grossly underqualified and dangerously underskilled" or "demonstrated no understanding" of use-of-force concepts. (*Id.* at 13–14.)

- "But the evidence reasonably points to the conclusion that Higgins' 'resistance' was an attempt to breathe and remain conscious as CO Spaulding compressed his torso with his body weight and constricted the blood flow to his brain with his hands, and not an effort to fight or escape." (*Id.* at 14.) This opinion is beyond Leonesio's expertise, and what the evidence reasonably points to is a question for the jury. The opinion is thus inadmissible.

- Leonesio may testify to the failure to practice "suitable grooming habits" and the "officer-safety deficiencies" he observed. (*Id.* at 14.) The remainder of his "*Graham* analysis" and his discussion of *Kingsley* and what it requires (*id.* at 14–17) are inadmissible as legal conclusions and beyond his expertise.

- Leonesio's evaluation of the Obion County Use of Force policy and his opinions related to it are admissible as within his expertise in police practices and training. (*Id.* at 17.)

D.  Opinion 4

- "The use of the restraint chair upon the unconscious and apneic Mr. Higgins by Obion County Correctional Officers Brogglin, Spaulding, and Sanford constitutes excessive force, violated agency and TCI standards, and substantially delayed life-saving measures." (*Id.* at 18.) Leonesio may not testify as to whether the use of the restraint chair was excessive force

15

or delayed life-saving measures, as those opinions are ultimate issues in this case. He may testify whether such use "violated agency and TCI standards."

- Leonesio may not provide the proffered medical opinions that Higgins's body was "lifeless;" that he was "unconscious," "unresponsive," and "not breathing;" that his injuries were "clear" and "he was in the process of dying;" or that he "was incapable of active resistance." (*Id.* at 18–19.)

- The remainder of his "*Graham* analysis" and his discussion of *Kingsley* (*id.* at 18–19) are inadmissible as legal conclusions and beyond his expertise.

- Leonesio's evaluation of the Obion County Emergency Restraint Chair policy and his opinions related to it are admissible as within his expertise in police practices and training. (*Id.* at 19–20.)

  E. <u>Opinion 5</u>

- "The failure of Obion County correctional personnel to render timely and appropriate medical assistance to the obviously unconscious and apneic Mr. Higgins represents a gross dereliction of duty, violates agency policy, and disregards established industry standards and guidelines." (*Id.* at 20.) Leonesio may not offer the medical opinion that Higgins was "obviously unconscious and apneic." The remainder of this opinion is within his area of expertise and is admissible.

- "Law enforcement and corrections agencies are responsible for providing reasonable medical care to prisoners in their custody. This care includes competent application of state and department mandated CPR, first aid, and other required medical training." (*Id.*) This opinion is within Leonesio's expertise and thus admissible.

16

- Leonesio's references to Higgins's condition throughout Opinion 5—for example, the "signs and symptoms of Mr. Higgins' life-threatening condition," his "lifeless body," "his unresponsive condition," "agonal respirations," and the "clear indication that Higgins' breathing attempts had ceased" (*id.* at 21–24)—are medical opinions and thus inadmissible.

- His commentary and speculation about the incident—"presumably searching for a carotid pulse," "it appears COs Spaulding and Sanford have run out of ideas," his discussion of why the officers administered Narcan (*id.* at 21, 23)—are unhelpful to the jury and thus inadmissible.

- "Based on the objective evidence, it is abundantly clear that CO's Spaulding, Brogglin, and Sanford knew, or reasonably should have known, that Mr. Higgins was in medical distress." (*Id.* at 24.)  This opinion is inadmissible as containing both medical and legal conclusions.

- Leonesio's evaluation of the Obion County Detention Center Policy & Procedure Manual and TCI standards and his opinions related to it are admissible as within his expertise in police practices and training.  (*Id.* at 24–25.)

- "It is clear that Union City Policy Officer Orsborne—the only CPR trained officer on-scene at the time of this incident—should have been aware of Mr. Higgins' medical emergency—given Higgins' objective signs and symptoms—and should have intervened to assist Mr. Higgins based on his specialized training."  (*Id.* at 25.)  This opinion is beyond Leonesio's expertise and thus inadmissible.  Leonesio may testify, however, to his opinion that Orsborne's actions "disregarded established industry standards and guidelines."  (*Id.* at 26.)

17

F.  <u>Opinion 6</u>

- "The Obion County Sheriff's Department failed to adequately train COs Spaulding, Brogglin, and Sanford in core job tasks." (*Id.*)  Whether the Obion County Sheriff's Department had practices and policies in place to adequately train their employees in their core job tasks is within Leonesio's area of expertise, and his opinions on that subject are admissible. However, to the extent that Leonesio attempts to place these conclusions within the context of legal decisions, including, but not limited to, *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), such legal discussion is inadmissible.

G.  <u>Opinion 7</u>

- Opinion 7 is entirely composed of legal conclusions that go to the ultimate issues in this case (*id.* at 27–28), and it is thus inadmissible.

## **CONCLUSION**

For the foregoing reasons, Orsborne's and the Obion Defendants' motions are GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED this 1st day of April, 2022.

s/Annie T. Christoff  
ANNIE T. CHRISTOFF  
UNITED STATES MAGISTRATE
